## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                   Case No. 1:20-cr-142

       v.                          JUDGE DOUGLAS R. COLE

ALEXANDER SITTENFELD,

       Defendant.

### OPINION AND ORDER

This cause comes before the Court on Defendant Alexander Sittenfeld's Sealed Motion for Leave to Communicate with Jurors (Doc. 210) and Motion for Leave to Conduct Forensic Examination of Relevant Devices of Juror X (Sealed Version-Doc. 221, Redacted Version- Doc. 222). As discussed in more detail below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Sittenfeld's Sealed Motion for Leave to Communicate with Jurors (Doc. 210). Sittenfeld may select two additional jurors for questioning. The Court then will allow the parties to inquire of the selected jurors, *in camera*, on topics consistent with the requirements of Rule 606(b). The Court **DENIES** Sittenfeld's Motion for Leave to Conduct Forensic Examination of Relevant Devices of Juror X (Sealed Version-Doc. 221, Redacted Version- Doc. 222).

As also described more fully below, the Court **ORDERS** that this Opinion and Order will be **TEMPORARILY SEALED**, until the juror interviews contemplated herein are completed.

**THE INSTANT MOTION[1]**

Sittenfeld is a former Cincinnati City Council member. On November 18, 2020, the government indicted Sittenfeld on two counts each of honest services wire fraud, bribery, and attempted extortion under color of official right in connection with the Council's approval of a real estate development project. (*See* Doc. 3). The matter proceeded to trial on June 21, 2022. On July 8, 2022, the jury found Sittenfeld guilty of two of the six counts.

Shortly before the jury informed the Court that it had arrived at a verdict, a court employee informed the Court that one of the jurors ("Juror X") had been posting on Facebook about her jury service. The posts were visible only to Juror X's Facebook friends, of whom the court employee was one. The Court obtained and reviewed the posts, none of which discussed any facts relating to the case. However, Juror X's posts did include a few comments by Juror X about some of the other jurors. Most relevant for present purposes, one of Juror X's posts suggested that another juror ("Juror Y") might harbor a general bias against politicians. Two other comments that Juror X's Facebook friends posted in response to Juror X's comments also bear noting. First, on a comment posted on June 21, 2022 (the day trial commenced), one commenter linked to a news article published that morning about the case. Second, on June 23, 2022, another commenter opined that jurors have a right to nullify (i.e., to find a defendant not guilty if the juror disagrees with the law under which the defendant is charged).

---

[1] The Court has already extensively summarized the factual and procedural background of this case in its March 1, 2021, Opinion and Order (Doc. 53) denying Sittenfeld's Amended Motion to Dismiss (Doc. 25). Accordingly, the Court limits its background discussion here to the issue raised by the instant Motions.

Immediately after the Court learned of this information, it scheduled an *in camera* hearing to discuss it with the parties. Before that hearing could occur, however, the jury informed the Court that it had reached a verdict. The Court nonetheless held the *in camera* hearing. There, the Court informed the parties of the information that it had collected from Facebook by that time, told the parties that the jury had a verdict, and sought the parties' views on whether the Court should take that verdict. The parties requested a brief recess so that they could each consider their views on the appropriate path forward.

When the Court reconvened the *in camera* hearing, Sittenfeld orally moved for a mistrial based on Juror X's Facebook posts. The Court denied that motion without prejudice to Sittenfeld's ability to raise the issue in post-verdict motions (if the verdict went against him). The Court then assembled the jury in the courtroom and accepted the jury's verdict. As noted above, the jury found Sittenfeld guilty on two of the six counts.

Following the verdict, the Court conducted another *in camera* hearing. There, it allowed the parties to question Juror X regarding the Facebook posts, and also allowed the parties to question Juror Y regarding Juror X's allegations of bias. Pursuant to Federal Rule of Evidence 606(b), the Court did not allow counsel to inquire regarding what took place during jury deliberations, except that counsel could and did ask whether the deliberations had included reference to any extraneous prejudicial information or other outside influences upon the jury. Moreover, out of an

3

abundance of caution, the Court did allow Sittenfeld's counsel to inquire of Juror Y as to whether Juror Y was biased regarding Sittenfeld or politicians in general.

In response to questions from Sittenfeld's counsel, Juror X testified that Juror X did not click on the link to the news article contained in one of the comments to one of the Facebook posts. Juror X also provided Juror X's cell phone to Sittenfeld's counsel during the course of the examination so that Sittenfeld's counsel could look at the comments to the Facebook posts (including the full content of the comments that the Court at that point had only partially collected) and discuss them with the juror. Both jurors who testified stated unequivocally that no juror raised any external information during deliberations. Juror Y also repeatedly and categorically denied any bias against politicians or against Sittenfeld (indeed, the testimony was that Juror Y had not even heard of him in advance of the trial). The Court obtained and provided to the parties complete screenshots of Juror X's posts and comments the following day.

On July 12, 2022, Sittenfeld filed a Sealed Motion for Leave to Communicate with Jurors (Doc. 210). Sittenfeld argues that Juror X's Facebook posts raise concerns that require further juror questioning. (*See id.* at #3280–81). Sittenfeld also argues that Southern District of Ohio Local Rule 47.1, which requires attorneys to seek leave of the Court before contacting jurors, is an unconstitutional prior restraint of speech under the First Amendment. (*Id.* at #3281).

On July 20, 2022, the government their Sealed Opposition (Doc. 220). The government argues that the testimony at the *in camera* hearing following the verdict

4

does not suggest that the jury verdict was tainted by any extraneous information so as to require further outreach to jurors. (*See id.* at #3570–72). The government also argues that Local Rule 47.1 is a constitutionally permissible limitation on the free speech of litigants. (*See id.* at #3575–78).

On July 22, 2022, Sittenfeld also moved (Sealed Version-Doc. 221, Redacted Version- Doc. 222) to conduct a forensic examination of Juror X's electronic devices. Sittenfeld argues that such an examination is necessary to uncover whether the juror accessed news articles about the case, in part because the credibility of her denials of exposure to such articles is questionable. (*See* Doc. 221, #3615–19).

The government responded in opposition (Sealed Version-Doc. 226, Redacted Version- Doc. 227) to Sittenfeld's Motion on July 27, 2022. Sittenfeld replied in support (Sealed Version-Doc. 231, Redacted Version- Doc. 230) on July 28, 2022. Both Motions are now fully briefed and before the Court.

## LAW AND ANALYSIS

The Sixth Amendment to the United States Constitution guarantees a right to trial by an impartial jury. "The presence of even a single biased juror deprives a defendant of his right to an impartial jury." *Williams v. Bagley*, 380 F.3d 932, 944 (6th Cir. 2004). "In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial…." *Remmer v. United States*, 347 U.S. 227, 229 (1954). Under *Remmer*, "a colorable claim of extraneous influence" gives rise to a "duty to investigate and to determine whether there may

have been a violation" of the defendant's Sixth Amendment rights. *United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999) (quoting *United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998) and *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir. 1985)). Typically, this includes conducting a *Remmer* hearing in which the defendant has an opportunity to demonstrate juror bias. *See United States v. Lanier*, 988 F.3d 284, 294–95 (6th Cir. 2021).

Federal Rule of Evidence 606(b) applies to any "inquiry into the validity of a verdict or indictment," including on Sixth Amendment grounds. Rule 606(b) precludes any evidence of a juror's statement, including a juror's testimony or affidavit, "about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." There are three exceptions to this general rule: "[a] juror may testify about whether: (A) extraneous prejudicial information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the verdict form." *Id.*[2]

---

[2] The Supreme Court has held that another exception exists under the Fourteenth Amendment's Equal Protection Clause where there are allegations that racial or ethnic biases tainted jury deliberations. *See Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017). Presumably that same exception would apply in federal court proceedings under the equal protection component of the Fifth Amendment. *See Ctr. for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("The Fifth Amendment, of course, does not itself contain a guarantee of equal protection, but instead incorporates, as against the federal government, the Equal Protection Clause of the Fourteenth Amendment."). The group "politicians," though, is not a protected class for equal-protection purposes. Thus, the Court does not address that exception further in this Opinion.

Here, even after the post-verdict hearing with the two jurors, Sittenfeld has thus far failed to establish a prima facie case that any juror bias resulted in a violation of his Sixth Amendment rights. So far, the only evidence of possible "extraneous" information consists in the two comments on Juror X's Facebook posts discussed above. The first contains a link to a news article about the case, and the second expresses the view that juries have a right to nullify. As to the former, Juror X denies ever clicking on the link, and the Court finds that testimony credible. Based on Juror X's testimony, Juror X claims to have understood the Court's admonition only to prevent the jurors from posting factual information about the case, or doing outside research about it. Consistent with that understanding, for example, Juror X acknowledged posting about Juror X's experience as a juror, but noted that none of the posts commented on any facts relating to the trial. Indeed, Juror X declined in the Facebook posts responding to commenters even to confirm who the defendant was. Juror X's claim of not clicking the link to the news article is likewise consistent with that understanding. Thus, while Juror X violated the plain language of the Court's instruction in engaging in any back and forth at all—even an ambiguous back and forth—the Court nonetheless concludes that the testimony that Juror X did not click on the link is credible.

Perhaps more importantly, even if Juror X did click on the link, or reviewed and considered the responsive comment regarding jury nullification, neither item was prejudicial to Sittenfeld. The link was to a general news article published before trial began that did not discuss the allegations at issue in the trial, nor provide any

meaningful external information about those allegations. And the comment about jury nullification, if anything, would have been prejudicial to the government, not Sittenfeld; it encouraged jurors to consider declining to convict defendants under laws the jurors consider unjust. Moreover, as a general matter, it appears that, if anything, Juror X *favored* Sittenfeld. After all, Juror X's complaint about Juror Y was the latter's alleged bias *against* politicians, suggesting that, if anything, Juror X was leaning in Sittenfeld's direction, or at least was neutral toward him. Because the Court finds that there is no basis to believe that Juror X was prejudiced against Sittenfeld by any extraneous information, the Court concludes that no basis exists to order a forensic examination of Juror X's cell phone.

That is particularly true given the significant privacy concerns that would arise were the Court to order such an examination. The Supreme Court has noted the strong privacy interests that citizens have in their cell phones. *See Riley v. California*, 573 U.S. 373, 393 (2014). Accordingly, the Court concludes that Sittenfeld would be required to make a substantial showing to overcome that privacy interest and have the Court order Juror X to provide access to the device. As noted, Sittenfeld has not done so here. To the contrary, as things stand, even armed with the Facebook posts and his inquiry of the two jurors, Sittenfeld has failed to present even a prima facie case of prejudice to his right to a fair trial.

That said, out of an abundance of caution, the Court will allow Sittenfeld to designate two other jurors for further questioning, consistent with the limitations of Rule 606(b), to be conducted in an *in camera* hearing. The Court acknowledges that

8

the previous *in camera* hearing that occurred immediately after the verdict necessarily allowed counsel to question only the two jurors who were implicated in the Facebook posts that raised the Court's concerns (i.e., Juror X, who made the posts, and Juror Y, who Juror X claimed was biased). Other jurors might be able to provide a different, potentially more dispassionate, perspective as to whether any of Juror X's Facebook posts (or anything else) led to the jury improperly considering extraneous prejudicial information. This strikes the Court as a reasonable step in investigating "whether there may have been a violation" of Sittenfeld's constitutional rights. *See Davis*, 177 F.3d at 557.

In granting Sittenfeld leave to identify two jurors for further questioning, however, the Court rejects Sittenfeld's argument that Local Rule 47.1 violates the First Amendment as an unconstitutional prior restraint of speech. Instead, the Court holds that Local Rule 47.1 is constitutional, based on case law either assuming or deciding that a court may constitutionally forbid parties and attorneys from contacting jurors. *See, e.g., United States v. Franks*, 511 F.2d 25, 38 (6th Cir. 1975) ("[I]t is well established that trial judges exercise their discretion in permitting the post-verdict interrogation of jurors."); *United States v. Griek*, 920 F.2d 840, 843 (11th Cir. 1991) (upholding similar local rule requiring parties and attorneys to obtain leave of court before contacting jurors); *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986) (observing that "a court may broadly proscribe attorney and party contact with former jurors"); *In re Express News Corp.*, 695 F.2d 807, 810 n.3

(5th Cir. 1982) (collecting cases). Sittenfeld cites, and the Court has found, no contrary authority.

In short, the Court concludes that the Constitution does not require that parties have the free-wheeling access to jurors post-verdict that Sittenfeld seeks. But, on the facts here, the Court nonetheless agrees that Sittenfeld should have some additional opportunity to explore his concerns as to whether the jury improperly considered extraneous information. And, of course, if the testimony from the two jurors raises further potential concerns, the Court will at that time consider expanding the scope of the inquiry.

That leaves one remaining issue—whether the Court should seal this Opinion and Order directed at sealed motions. Sealing is a drastic remedy, and the Court concludes that it is not warranted here. The Court does conclude, however, that a *temporary* seal is warranted. In particular, the Court will seal this Opinion pending completion of the juror testimony contemplated herein. The public's interest in access to judicial proceedings must be balanced against preserving the parties' right to a fair process. *See Press-Enter. Co. v. Super. Ct. of Cal., Riverside Cnty.*, 464 U.S. 501, 510 (1984). Here the Court's concern is that making this decision public in advance of the contemplated juror testimony may result in tainting that testimony in some manner. Thus, the Court concludes that a temporary seal, that will last only until such time as the parties are able to obtain the contemplated testimony, is a narrowly tailored solution that will protect the integrity of the process, while inflicting the least damage on the public's right to transparency in criminal proceedings. The Court will

separately consider whether, and to what extent, that juror testimony is subject to a seal, once the *in camera* hearing as to those two jurors has occurred.

## CONCLUSION

For the reasons above, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Sittenfeld's Sealed Motion for Leave to Communicate with Jurors (Doc. 210). The Court **DENIES** Sittenfeld's Motion for Leave to Conduct Forensic Examination of Relevant Devices of Juror X (Sealed Version-Doc. 221, Redacted Version- Doc. 222). Sittenfeld shall contact chambers to identify the two jurors of whom he would like to inquire further, and the Court will arrange an *in camera* hearing to allow him to do so. As noted, the Court further **ORDERS** that this Opinion and Order be filed under **TEMPORARY SEAL** until such time as that hearing occurs.

**SO ORDERED.**

August 3, 2022
**DATE**

 

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

11