**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1-20-cr-142 |
| Plaintiff, | Hon. Douglas R. Cole |
| v. | DEFENDANT'S MOTION FOR A NEW TRIAL |
| ALEXANDER SITTENFELD, a/k/a "P.G. Sittenfeld," | ORAL ARGUMENT REQUESTED |
| Defendant. | |

Now comes Defendant, Alexander "P.G." Sittenfeld, by and through counsel, and pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure respectfully requests the Court grant Defendant a new trial. A memorandum with law and argument in support of Mr. Sittenfeld's motion follows. Mr. Sittenfeld requests oral argument on this motion to address important constitutional questions, including whether the government constructively amended his indictment.

Respectfully submitted,

RITTGERS & RITTGERS

*/s/Neal D. Schuett*
Charles H. Rittgers
Charles M. Rittgers
Neal D. Schuett
Gus J. Lazares
Rittgers & Rittgers
12 East Warren Street
Lebanon, OH 45036
(513) 932-2115
neal@rittgers.com
*Counsel for the Defendant*

**MEMORANDUM**

Introduction

Should the Court decline to dismiss Mr. Sittenfeld's two convictions outright, it should at the least grant him a new trial. That step is justified foremost by the manifest weight of the evidence, which simply does not prove corruption beyond a reasonable doubt. Beyond that, though, there are several issues that necessitate a new trial—the government's divergence from the Indictment, several omissions from the Court's jury instructions, and a clear case of juror misconduct. Each of these issues independently warrants a new trial on the two counts of which Mr. Sittenfeld was convicted.

Background

Mr. Sittenfeld served three terms on the City of Cincinnati Council. On November 18, 2020, a grand jury charged him with two counts of honest services wire fraud, *see* 18 U.S.C. §§ 1343, 1346 (counts one and two); two counts of federal programs bribery, *see id.* § 666(a)(1)(B) (counts three and five); and two counts of attempted Hobbs Act extortion, *see id.* § 1951(a), (b)(2) (counts four and six). *See* ECF 3 at ¶¶ 36–48. Each of these counts involved the allegation that Mr. Sittenfeld accepted payments from undercover government agents in exchange for agreeing to take official action. *See id.*

Mr. Sittenfeld moved to dismiss the Indictment on December 23, 2020. *See* ECF 25. In that motion, he argued the indictment failed to allege an explicit *quid pro quo* agreement, as is necessary for a conviction under the above offenses. *See* ECF 25 at p. 2. He also argued the indictment failed to identify "specific official actions," as defined in *United States v. McDonnell*, 579 U.S. 550 (2016). *See* ECF 25 at p. 2. This Court denied that motion on March 1, 2021. *See* ECF 53. In doing so, however, it emphasized that proving an explicit *quid pro quo* requires establishing that an agreement was "[c]lear in understanding" and neither "obscure" nor

2

"ambiguous, *id.* at p. 26 (citation omitted)—a high bar. The Court also emphasized that a jury would need to determine whether Mr. Sittenfeld "pressured or advised" his colleagues regarding a real estate project, which would qualify as an official action, or "merely expressed support" for that project, which would not. *Id.* at 38 (citation omitted).

The Court held a jury trial in this case beginning on June 21, 2022. The jury ultimately acquitted Mr. Sittenfeld of counts one, two, five, and six, while convicting him on counts three and four. *See* ECF 207. Mr. Sittenfeld now moves for a judgment of acquittal on those remaining counts pursuant to Federal Rule of Criminal Procedure 29 and, in the alternative, a new trial pursuant to Federal Rule 33(a).

Legal Standard

A new trial should be granted when the jury's verdict is against the manifest weight of the evidence. *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). A new trial should also be granted if "the interest of justice so requires." Fed. R. Crim. P. 33(a); *see, e.g., United States v. Francis*, 170 F.3d 546 (6th Cir. 1999); *United States v. Knox*, 17 Fed. App'x 353 (6th Cir. 2001). The decision whether to grant a new trial is within the sound discretion of the trial judge. *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982).

Law and Argument

**A. Mr. Sittenfeld's convictions were against the manifest weight of the evidence.**

Should this Court disagree with Mr. Sittenfeld that there is insufficient evidence to support his convictions as a matter of law, it should nonetheless vacate his convictions as against the manifest weight of the evidence. A reversal on that ground "is proper when the government has presented sufficient evidence to convict, but the judge disagrees with the jury's resolution of conflicting evidence." *United States v. Lutz,* 154 F.3d 581, 589 (6th Cir. 1998) (citation omitted). In assessing that evidence, this Court acts as the "thirteenth juror" and "considers the credibility

3

of the witnesses and the weight of the evidence to ensure that there is not a miscarriage of justice." *Id.* (citation omitted).

The same arguments that support Mr. Sittenfeld's motion for acquittal support this argument for a new trial.[1] To convict Mr. Sittenfeld of counts three and four, the government was required to prove that he entered into an explicit *quid pro quo* agreement. *See McCormick v. United States*, 500 U.S. 257, 272 (1991). That requirement is demanding; ordinary political conduct cannot prove an explicit agreement, and neither can evidence that is "ambiguous," or susceptible to an innocuous explanation. *United States v. Blandford*, 33 F.3d 685, 696 n.13 (6th Cir. 1994) (citation omitted). Here, the government did not identify a single statement or action from Mr. Sittenfeld that evinced a corrupt agreement. Its own evidence instead shows that Mr. Sittenfeld either rejected, *see, e.g.*, Gov't's Ex. 14B (Nov. 2, 2018 transcript) at pp. 3–4, or misunderstood, *see, e.g.*, Gov't's Ex. 15C (Nov. 7, 2018 transcript) at pp. 29–30, every *quid* the government's agents proposed. Mr. Sittenfeld also acted in a manner that is inconsistent with the charges against him. For example, he repeatedly declined noncompliant campaign contributions, *see* Gov't's Ex. 15C at pp. 32–34; repeatedly declined offers to travel to Miami, Las Vegas, and Nashville, *see* ECF 237 (Rob Testimony) at p. 59; declined an open-ended offer from Vinny to provide anything he "c[ould] help out with," Gov't's Ex. 37B at p. 5 (Dec. 9, 2019 transcript); paid or offered to pay for each meal with the undercover agents, *see* ECF 238 (Sittenfeld Testimony) at pp. 133–34; discouraged Rob from donating at a fundraiser because he had been "generous enough," ECF 237 at p. 60; and introduced, or attempted to introduce, Rob to a wide array of civic leaders, including the then-US Attorney for the Southern District of Ohio, *see* ECF 238 at pp. 22–24; Gov't's Ex. 15C at pp. 17–18. For those reasons, and the others detailed in his

---

[1] Mr. Sittenfeld requests that the Court incorporate by reference the arguments that he raised in his motion for acquittal and that concern the sufficiency of the evidence against him.

motion for acquittal, Mr. Sittenfeld's convictions were against the manifest weight of the evidence.

The jury's inconsistent verdict corroborates these evidentiary shortcomings. Counts three and four of the Indictment required the jury find that Mr. Sittenfeld entered an explicit *quid pro quo* agreement between September 2019 and December 2018. *See* ECF 202 (Jury Instructions) at pp. 32–43. Count one similarly required the jury to find that he entered an explicit *quid pro quo* agreement between September 2018 and February 2020. *See id.* at 22–31. There were no material differences between those charges, except that count one gave the jury a longer period from which to draw an agreement. Yet the jury acquitted on that count, while convicting on counts three and four. *See* ECF 207 (Jury Verdict). That verdict is facially inconsistent. And just as twelve jurors rejected the government's evidence with respect to the first count, this Court should not hesitate to do the same with respect to the remaining two.

**B. The government unconstitutionally deviated from the Indictment.**

This Court should also reverse the remaining convictions because the government materially deviated from the Indictment, in violation of the Fifth Amendment. The Indictment charged Mr. Sittenfeld with six public corruption offenses related to payments from the government's undercover agents. *See* ECF 3 (Indictment) ¶¶ 39, 42, 44, 46, 48. At trial, however, the government attempted to persuade the jury that Mr. Sittenfeld committed several other, unrelated crimes. First, the government argued that Mr. Sittenfeld corruptly solicited a bribe from Mr. Ndukwe on October 30, 2018 through his statement: "you don't want me to be like 'hey Chin like love you, but can't.'" Gov't's Ex. 13B at p. 3. And second, the government argued that Mr. Sittenfeld extorted "hedging" donors and received unlawful "straw donations." *See, e.g.*, ECF 197 (J. Kincaid testimony) at pp. 11–13. Both of these clear deviations from the allegations in the Indictment necessitate a new trial.

1. <u>Legal Standards</u>

A constructive amendment "results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Martinez,* 430 F.3d 317, 338 (6th Cir. 2005). Constructive amendments are "per se prejudicial because they infringe upon the Fifth Amendment's grand jury guarantee." *United States v. Hynes,* 467 F.3d 951, 962 (6th Cir. 2006) (internal citations and quotation marks omitted). "Because of the constitutional injury that results from a constructive amendment, when proven, a defendant is entitled to a reversal of his conviction." *United States v. Kuehne,* 547 F.3d 667, 683 (6th Cir. 2008) (citation omitted).

Similarly, a variance "occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Id.* (alteration in original). Although variances are "not per se prejudicial," *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007), they require reversal when they "affect a substantial right of the defendant," *Kuehne*, 547 F.3d at 683 (citing *United States v. Prince,* 214 F.3d 740, 757 (6th Cir. 2000)). A defendant's substantial rights are affected "when the defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *Id.* (citations and quotations omitted).

2. <u>The October 30, 2018 Statement</u>

The government's heavy reliance on the October 30 statement requires a new trial. As noted above, counts three and four of the Indictment alleged that Mr. Sittenfeld accepted unlawful payments from a specific person: "UCE-1" (Rob). ECF 3 ¶¶ 42, 44. Yet the government argued throughout the trial that Mr. Sittenfeld solicited a bribe from Mr. Ndukwe

6

through his statement: "you don't want me to be like '… love you, but can't.'"  Gov't's Ex. 13B at p. 3.   The government further advised the jury—incorrectly—that the above statement satisfied an essential element of the charges, ECF 251 (Closing Arguments), at p. 95.   And despite a pretrial objection from the defense, the Court's jury instructions required only a finding that Mr. Sittenfeld solicited or accepted payment from "another person," *see* ECF 202 at pp. 32, 37—as opposed to the Indictment's *specific referent*, "UCE-1."   For those reasons, a rational juror may well have returned a guilty verdict against Mr. Sittenfeld—not because he believed the Indictment's allegations regarding Rob—but instead because he believed the government's uncharged theory regarding Mr. Ndukwe.  That is a textbook constructive amendment.

The government emphasized the October 30 statement throughout its case in chief.  It first played a recording of the statement for the jury during Special Agent Holbrook's testimony.  *See* ECF 224 at pp. 30–31.  It specifically prompted Mr. Ndukwe to testify that the statement was extortionary.  *See* ECF 196 at p. 41 ("[T]o me that was very that if I donated, he was going to support and be supportive in my efforts, and if I didn't, he wasn't going to be supportive.").  And it challenged Mr. Sittenfeld's explanation that the statement related to his mayoral campaign.  *See* ECF 238 at pp. 67–68 ("[Y]ou mentioned the statement that you made to Ndukwe … but you didn't need to be mayor to help on 435, right?").

The government also emphasized the statement during its closing argument.  It played the statement once more for the jury.  *See* ECF 251 at p. 62.  It cast the statement as a threat to withhold official action.  *Id.* at p. 63 ("The implication is clear … Support him, that's what he wants; but don't support him, love you but can't.").  It argued that the statement was a "direct tie between money and action taken in an official capacity," as well as an "abuse of power."  *Id.* at p. 64.  It returned to the statement in its rebuttal—asking, "if he were assisting with the project, and he was very enthusiastic about it, why would he say to Mr. Ndukwe, 'Love you, Chin, but

7

can't'?" *Id.* at p. 143. And worst of all, the government expressly asked the jury to find that the statement satisfied an element of its charges against Mr. Sittenfeld.

The government's last comment clearly contradicted the Indictment. The prosecutors made this comment amid a discussion of the second element of federal program bribery, which it described as the finding that a defendant "solicited, demanded, accepted, or agreed to accept a thing of value from *another person*." *Id.* at p. 95 (emphasis added). The government initially argued that it satisfied this element through "the four checks in December of 2018, the two checks in September 2019, and the two checks in October 2019," all of which the undercover agents gave to Mr. Sittenfeld. *Id.* But the government then added: "This *also includes potentially* the solicitation [to Mr. Ndukwe] 'love you but can't.'" *Id.* (emphasis added). The government thus *directly asked* the jury—at the very close of trial—to convict Mr. Sittenfeld based on conduct that was not charged in the Indictment.[2]

The Court did not correct the government's error for the jury. To the contrary, the instructions invited the jurors to make the very finding the government urged. Although *counts three and four* of the Indictment alleged that Mr. Sittenfeld received a bribe "from UCE-1," ECF 3 ¶¶ 42, 44, the Court's *instructions* required only that he received or requested a bribe from "another person."[3] ECF 202 at pp. 32, 37. Mr. Ndukwe is "another person." *Id.* Mr. Sittenfeld made the statement within the time period relevant to counts three and four—*i.e.*, between September 21, 2018 and December 17, 2018. *See id.* at pp. 32, 37. And no other language in the instructions prevented the jury from using the October 30 statement precisely as the government

---

[2] Although the government made this request in the course of discussing counts three and five, it also argued that the "evidence [for those counts] is the same" as the evidence for the other counts. ECF 251, at 94.

[3] The defense objected to this phrasing as it appeared in the second element of the Government's proposed jury instructions for count Three. *See* ECF 107 at p. 11 (arguing that the instructions should use "a name or [reference] an identified specific individual"). The Court ultimately adopted the Government's language for that element verbatim. *See* ECF 202 at p. 32.

asked. For those reasons, the jury could have convicted Mr. Sittenfeld on counts three and four based solely on the uncharged theory that he attempted to extort Mr. Ndukwe.

Nor must the Court speculate about what happened—the jury's inconsistent verdict reveals that it made *precisely this error.* Unlike the instructions for counts three and four (the counts on which the jury convicted), the instructions for count one specifically required the government to connect its evidence of an explicit *quid pro quo* agreement to a telephone communication on "November 21, 2018," ECF 202 at p. 23—*i.e.*, a call between Rob and Mr. Sittenfeld, *see* Gov't's Ex. 18D. The government accordingly explained in its closing argument that count one concerned a call "from Mr. Sittenfeld to Rob." *See* ECF 251 at p. 60. The instructions for count one thus made clear precisely what the instructions for counts three and four did not—that convicting Mr. Sittenfeld required a finding that he unlawfully solicited or accepted payment *from Rob.* That difference between the instructions is all that could explain the jury's inconsistent verdict; the jury rejected the Indictment's allegations as to Rob but *accepted* the government's *uncharged theory as to Mr. Ndukwe.* That outcome violated Mr. Sittenfeld's constitutional rights to a grand jury indictment and to properly prepare his defense.

These circumstances require a new trial for the same reasons as in *Stirone v. United States*, 361 U.S. 212 (1960). In that case, an indictment had charged the defendant with violating the Hobbs Act by unlawfully affecting interstate shipments of sand. *See id.* at 213–14. At trial, however, the government introduced evidence that the defendant had interfered with both shipments of sand and shipments of steel. *See id.* at 214–15. The trial court likewise instructed the jury that it could convict the defendant for either course of conduct. *See id.* The jury convicted, an appellate court affirmed, and the Supreme Court reversed. *Id.* at 219. In doing so, the Court explained that no grand jury had indicted the defendant on the second theory of interference. *See id.* at 217. It further emphasized that it "cannot be said *with certainty* that …

[the defendant] was convicted solely on the charge made in the indictment the grand jury returned." *Id.* (emphasis added). So too here. Due to both the government's litigation strategy and the breadth of the jury instructions, Mr. Sittenfeld could have been (and likely was) convicted for uncharged conduct. That "fatal error" requires reversal. *Id.* at 219; *see also United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989) (constructive amendment occurred where a defendant was charged with possessing a firearm on one date, the government offered evidence that he possessed a firearm on three dates, and the jury instructions permitted finding possession on any of those dates); *United States v. Combs*, 369 F.3d 925, 936 (6th Cir. 2004) (same conclusion where a defendant was charged with possessing a firearm in furtherance of a drug trafficking offense but the jury instructions allowed conviction for the separate conduct of using or carrying a firearm in relation to that offense).

     3.     <u>The Hedging and Straw Donor Theories</u>

The government created an additional prejudicial variance by arguing that Mr. Sittenfeld violated the campaign finance laws. As discussed above, the Indictment charged Mr. Sittenfeld with six public corruption offenses that involved interactions with undercover agents. *See* ECF 3 ¶¶ 39, 42, 44, 46, 48. The Indictment did not charge him with extorting any other person, with any violation of the campaign finance laws, or for any conduct before September 2018. Nonetheless, the government argued at trial that Mr. Sittenfeld attempted to extort non-agent donors in 2017 who had "hedged" their campaign contributions, and further that he separately received so-called "straw donations." Because the government's argument and evidence on those issues was prejudicial to Mr. Sittenfeld, a new trial is in the interest of justice.

In its closing argument, the government described the purported hedging as a "plan to threaten," an "abuse of power," and a "direct tie between money and power taken in an official capacity." ECF 251 at 64. The government also argued that Mr. Sittenfeld's request for Rob to

arrange donations from "real [people]" was actually a request for arranging straw donations. *See id.* at 78. The government did not connect these arguments to the charged offenses, including the key question of whether Mr. Sittenfeld intended to enter a corrupt agreement with Rob. And any such connection would have failed. After all, the "hedging" evidence lacked temporal proximity to the dates listed in the Indictment, *see, e.g.*, ECF 196 at pg. 11–13 (statements from 2017); Mr. Gerhardt, the supposed hedgee, lacked a nexus to Rob or the other undercover agents; there is no evidence that Mr. Sittenfeld ever mentioned hedging to the agents; and the only plausible connection between soliciting a straw donation and accepting a *quid pro quo* relies on an improper propensity argument. The government's argument on these campaign finance issues thus served principally to imply an aura of illegality around Mr. Sittenfeld's career.

This Court's instructions did not cure that improper prejudice. Mr. Sittenfeld appreciates the Court's instruction that he was not charged with any campaign finance violation. *See* ECF 202 at pp. 46–47. He also appreciates the Court explaining the distinctions between lawful and unlawful campaign conduct. *See, e.g.*, *id.* at pp. 45–46 (distinguishing bundling from arranging straw donations). But because the government attempted to prove that Mr. Sittenfeld violated the campaign finance laws, the jury may have understood the Court's explanation of those laws to affirmatively invite its speculation on their application. And because the government's case on the charged offenses turned solely on innuendo and circumstantial evidence, that invitation to consider uncharged conduct undermined the "overall fairness of [Mr. Sittenfeld's] trial." *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998). For that reason, too, this Court should order a new trial, in which it limits the government to the charges in its Indictment.

## C. The Court's jury instructions also warrant a new trial.

In the alternative, this Court should order a new trial upon reconsideration of its jury instructions. Jury instructions require a new trial if they are "confusing, misleading, or

11

prejudicial" when "viewed as a whole." *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000). Here, Mr. Sittenfeld challenges the instruction that the government could satisfy the elements of counts three and four with respect to "another person," the omission of a clarifying instruction on "official action," and the omission of a "good faith" instruction.

### 1. The Phrase "Another Person"

For the reasons detailed above, the government constructively amended the Indictment to charge Mr. Sittenfeld with extorting Mr. Ndukwe, and the Court's instructions permitted the jury to convict him of that uncharged conduct. *See supra* Section B(2). Even beyond that, though, the Court's instructions were erroneous on counts three and four. As relevant here, the instructions on those counts directed the jury to consider generically whether Mr. Sittenfeld solicited, demanded, or accepted payment from "another person." ECF 202 at pp. 32, 37. But the Indictment charged Mr. Sittenfeld with soliciting funds from a *specific* person—Rob. *See* ECF 3 ¶¶ 42, 44.

There is good reason to believe this difference between the instructions and the Indictment was prejudicial. Before trial, the government implied that it would introduce evidence regarding solicitations to Mr. Ndukwe, as well as to Rob. *See, e.g.*, *id.* ¶ 13. And at trial, the government did just that: arguing that a statement to Mr. Ndukwe was a "direct tie between money and action taken in an official capacity." ECF 251 at p. 64. In that context, the open-ended phrase "another person" invited the jury to convict Mr. Sittenfeld based on this uncharged conduct. That was error. Indeed, the Third Circuit's model instructions direct district courts to "specify [the] person" from whom a corruption defendant solicited funds, presumably to avoid precisely this situation. Mod. Crim. Jury Instr. 3rd Cir. 6.18.666A1B-1 (2021). Mr. Sittenfeld accordingly objected to the phrase "another person" as impermissibly "vague," ECF 107 at p. 11 (citing the Third Circuit), and no other language in the instructions prevented the

jury from applying them to convict Mr. Sittenfeld based on uncharged conduct involving Mr. Ndukwe. The Court should hold that the phrase "another person" rendered its instructions impermissibly "misleading," *Hisrich*, 226 F.3d at 449, and grant a new trial on that basis, too.

2.     The "Expressing Support" Instruction

Mr. Sittenfeld also challenges the omission of his requested language in the Court's instructions on "official action," *see* ECF 202 at pp. 40–41. The discussion accordingly lacked crucial guidance regarding how *McDonnell v. United States*, 579 U.S. 550 (2016), applies here. Specifically, the instructions did not address—over Mr. Sittenfeld's objection—whether expressing support for a project or policy qualifies as an "official action" under that decision. Because the government cast Mr. Sittenfeld's expressions of support for the 435 Elm project as agreements to perform official action, that omission was prejudicial to Mr. Sittenfeld.

The Sixth Circuit has recognized that merely expressing support for a policy does not qualify as official action. *See Dimora v. United States*, 973 F.3d 496, 505 (6th Cir. 2020). In particular, it endorsed the Third Circuit's distinction between "permissible attempts to express support" and "impermissible attempts to pressure another official." *Id.* (quoting *United States v. Fattah*, 914 F.3d 112, 156 (3d Cir 2019). That distinction traces back to *McDonnell*, which held that "[s]imply expressing support for [a] research study at a meeting, event, or call . . . does not qualify as a decision or action on the study, as long as the public official does not intend to exert pressure on another official or provide advice, knowing or intending such advice to form the basis for an 'official act.'" 579 U.S. at 573. Otherwise, "if every action somehow related to the research study were an "official act," the requirement that the public official make a decision or take an action on that study, or agree to do so, would be meaningless." *Id.*

In this case, the government asked the jury to find that Mr. Sittenfeld's statement that he would "deliver the votes" for the 435 Elm project was a corrupt agreement to provide official

action.  *See, e.g.*, ECF 251 at 72, 96–97.  But putting aside (for now) whether Mr. Sittenfeld was actually corrupt, a reasonable juror could interpret his agreement to "deliver votes" in two ways: Mr. Sittenfeld may have agreed to "deliver" the votes through pressuring his fellow councilmen and providing targeted advice.  Or he may have agreed to "deliver" them—as he explained at trial—by articulating his support for the project, in the expectation that "other people will see the logic, the same logic that [he did]."  ECF 238 at p. 44.  Under *McDonnell* and *Dimora*, the difference between those interpretations is what determines whether he agreed to perform an official act.  And because the jury was not instructed to choose between the interpretations, the government was not required to prove an "official act"—as *McDonnell* defined the term—beyond a reasonable doubt.  That error requires a new trial.

      3.      The "Good Faith" Instruction

The Court similarly erred in declining to give Mr. Sittenfeld's proposed "good faith" instruction, which he drew from the Sixth Circuit's Pattern Instructions.  The Sixth Circuit recently reiterated that those "Instructions are presumptively straightforward." *United States v. Frei*, 995 F.3d 561, 566 (6th Cir. 2021).  The "Use Note" commentary for their wire fraud Instruction specifically states that, "[i]f there is any evidence at all of good faith, the court should refer to Instruction 10.04 Fraud Good Faith Defense."  Pattern Crim. Jury Instr. 6th Cir. 10.02 (2022 ed.) (emphasis added).  The Sixth Circuit's discussion of the "good faith" defense in *United States v. Hills*, 27 F.4th 1155 (6th Cir. 2022), did not delineate or carve out § 1343 from the other charged crimes, which included charges under 18 U.S.C. §§ 666 and 1951.  *Id.* at 1190–91.  And here, a reasonable juror could have found that Mr. Sittenfeld's statements to the undercover agents reflected nothing more than a good faith attempt to help his city's urban core.  The Court should therefore have given the "good faith" instruction.

**D. The Court abused its discretion when it prevented Mr. Sittenfeld from offering *modus operandi* evidence.**

The Court further erred in prohibiting Mr. Sittenfeld from introducing *modus operandi* evidence. Before trial, Mr. Sittenfeld predicted that the government's case against him would rely on innuendo and circumstance. *See* ECF 159 at pp. 4–8. He accordingly argued that he should be permitted to rebut the government's evidence of purportedly "unusual official actions" with "testimony about [his] 'usual' behavior." *Id.* at p. 8. But although the government took the exact approach that Mr. Sittenfeld predicted, *see, e.g.*, ECF 251 at p. 86 (arguing that "Rob and Brian [were] highly unusual and a huge flashing red stop sign"), the Court limited his ability to respond, *see* ECF 190 (Order on Motions in Limine) at pp. 29–30 (permitting testimony on "his demonstrated views on development"). Absent that order, Mr. Sittenfeld would have explained how his communications with the undercover agents fit within his "commonplace political . . . activities," *United States v. Terry*, 707 F.3d 607, 613 (6th Cir. 2013). That testimony would have directly rebutted the government's assertions of "red flag[s]." ECF 251 at p. 85. And it would have been admissible under Rule 404(b) to prove Mr. Sittenfeld's intent during those communications. The Court's exclusion of the testimony was thus an abuse of discretion.

Contrary to the Court's pretrial ruling, *United States v. Dimora*, 750 F.3d 619 (6th Cir. 2014), is inapposite. *Dimora* was a "plus factor" case in which a defendant received express, personal kickbacks—home renovations, expensive dinners, and trips to Las Vegas—in exchange for official actions. *See id.* at 623–24. In that context, the defendant sought to enter "good acts" evidence that he sometimes helped his constituents "without asking for or receiving anything of value." *Id.* at 630. The Sixth Circuit affirmed the exclusion of that evidence because it was not probative of the defendant's intent in taking the kickbacks. *See id.* at 630–31. Here, in contrast, the government lacks any clear or direct evidence of wrongdoing and instead relies entirely on

indirect evidence.  And when the government argues that a defendant acted unusually under the circumstances, *see* ECF 251 at p. 86, the defendant's description of his ordinary conduct is a probative rebuttal.  For those reasons, *Dimora* is neither controlling nor persuasive here.

**E. The Court improperly excluded the testimony of Mr. Sittenfeld's expert witnesses.**

The Court also erred in excluding the expert testimony of Caleb Burns and Edward Fitzgerald, which would have provided critical context for Mr. Sittenfeld's case, confirmed that he followed relevant campaign finance laws, and rebutted prejudicial claims by the Government.

1.      Caleb Burns'  Proposed Testimony

At trial, the government showed that Mr. Sittenfeld controlled his leadership PAC (which did not include his name), accepted donations on its behalf, and accepted donations through bundled LLC checks.  Although these actions were lawful, the case's history illustrates the risk of jurors' confusion on that point.  The following are quotes from FBI Special Agent in Charge Chris Hoffman and then-U.S. Attorney David DeVillers at their announcement of the Indictment:

- "[Mr. Sittenfeld] personally accepted 10 checks, purported to be support and payment into a secret fund that this PAC that was secretly controlled by the defendant."  Exhibit A, p. 1.

- "He asked that the money go to a Political Action Committee, a PAC that he controlled, and that type of action is against federal law."  *Id.* at p. 3.

- "I think the persistence is he met in secret on numerous occasions alone, received the checks personally to his hand. He didn't send a middle middleman."  *Id.* at p. 4.

Each of the above statements either contained or reflected a misunderstanding of federal election law.  And because both the U.S. Attorney and an FBI agent that worked this case went astray on this issue, it is reasonable to expect that lay jurors would reach similarly improper conclusions upon reviewing the same (innocuous) materials.[4]

---

[4] Mr. Singer, Rob, and Special Agent Holbrook also expressed uncertainty about the very campaign finance laws that the government invoked in its case in chief.  *See* ECF 149 (Final Pretrial Conference) at pp. 20–21 ("[I]s there some regulation that discusses whether or not someone can have their name on a PAC and still control it?  I

Mr. Burns' testimony would have provided the jury much-needed context in this area. For example, Mr. Burns would have testified that candidates may not title leadership PACs in their own names; that candidates *must* control those PACs; and that candidates may personally accept donations on their behalf. He also would have fit that testimony into an explanation of our country's privately funded campaign system, in which candidates' ability to raise money directly enables their communication with voters. That testimony would have foreclosed any improper inference regarding Mr. Sittenfeld's use of lawful campaign tools. It would have also rebutted the government's improper attempts to cast such conduct as incriminating or suspicious. *See, e.g.*, ECF 251 at p. 157 (emphasizing, despite the Court's instructions, that Mr. Sittenfeld did not title his leadership PAC in his own name). And finally, it would have supported Mr. Sittenfeld's argument that he fully complied with applicable campaign finance laws, *see, e.g.*, *id.* at pp. 102, 129, which is relevant because rapacious bribe-takers are famously laxer in that area.

Mr. Burns' testimony would also have been consistent with the Federal Rules. Far from providing an opinion on a "mental state" that is an "element of the crime charged," Fed. R. Evid. 704(b), Mr. Burns would have testified that the circumstantial acts from which the Government tried to infer criminal intent actually complied with applicable campaign laws. His "specialized knowledge" would thus have helped "the trier of fact to understand the evidence." Fed. R. Evid. 702(a). And although his testimony would have addressed legal issues, it would have also fit within the practice of allowing limited expert testimony "in cases that involve highly technical legal issues." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (collecting cases).

---

don't know."); ECF 237 at p. 58 ("I don't know campaign finance law enough to make a comment on that."); ECF 195 (Holbrook Testimony), at p. 29 ("I'm not an expert in that area of the PACs, what the PACs can be used for.").

Finally, although Mr. Sittenfeld appreciates that the Court instructed the jury at the close of trial on some relevant points of campaign finance law, *see* ECF 202 at pp. 44–47, its instructions were no substitute for Mr. Burns' testimony. First, the instructions' timing allowed the government to insinuate during the vast majority of the trial that Mr. Sittenfeld had attempted to circumvent the campaign finance laws. Allowing Mr. Burns to address those insinuations earlier in the trial would have diminished their prejudicial effect. The testimony would also have enabled a more direct response to the government's case, connecting the relevant principles of campaign finance law to the specific fact patterns the government raised. The ability to connect those dots was especially important in this case, considering the tendency of even trained FBI agents to misapply campaign finance principles as to Mr. Sittenfeld. *See* Exhibit A. For those reasons, the Court's exclusion of Mr. Burns' testimony was prejudicial to Mr. Sittenfeld.

2.      Edward Fitzgerald's Proposed Testimony

The exclusion of Mr. Fitzgerald's testimony was also an abuse of discretion. This court "regularly allows qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are given, since knowledge of such activity is generally beyond the understanding of the average layman." *United States v. Johnson*, 488 F.3d 690, 698 (6th Cir. 2007) (citation omitted). Mr. Fitzgerald was a Special Agent in the FBI's organized crime and public corruption task force. He also served as a congressional staffer, a city councilman, a mayor, and a gubernatorial candidate. Those experiences qualified him to explain the "innumerable trades and practices . . . devices, feints, and codes" that exist in the investigation of, and participation in, the political process, *Johnson*, 488 F.3d at 698.

In this case, Mr. Fitzgerald would have explained how undercover investigation works, the process for utilizing confidential informants, and the control that agents maintain over confidential informants once they are in the field. He also would have explained the infinite,

varied scenarios in which political candidates interact with prospective donors, and the practical ways in which candidates work to fulfill their legal and ethical obligations. Finally, and most importantly, Mr. Fitzgerald would have served as a rebuttal witness to contextualize, from a real-world perspective, the "red flags" or warnings that the Government alleged Mr. Sittenfeld should have keyed in on. His proposed testimony was thus both relevant and admissible.

## F. The Court cut short its investigation into jurors' exposure to extrinsic evidence.

Finally, the Court improperly limited Mr. Sittenfeld's ability to investigate the jurors' exposure to extrinsic evidence. Before the jury announced its verdict, Mr. Sittenfeld learned that one juror had repeatedly posted about this case on Facebook. *See* ECF 234 (Opinion and Order), at p. 3. The juror later made false representations to the Court, including that she never read the comments to her posts, that she never answered her followers' questions, and that her case assignment was a secret. *See* ECF 212 (Hearing on July 8, 2022), at pp. 19–22; Def.'s Emer. Mot. at 10–12 & Exs. 2–4, Case No. 22-3694 (Aug. 15, 2022). She also deleted the relevant posts, in an arguable attempt to evade further scrutiny. *See* Minute Entry of July 18, 2022. Those evasions undermine the juror's denial of having clicked on a link—which appeared in a comment to her posts—that would have displayed prejudicial external information about Mr. Sittenfeld. *See* Def.'s Emer. Mot. at 2–3, 15–16 & Exs. 9–11. In those circumstances, this Court should have ordered either a forensic examination of the juror's cell phone, as discussed in *United States v. Lanier*, 988 F.3d 284 (6th Cir. 2021), or a mistrial.[5]

This Court should have also permitted additional investigation into whether jurors heard and considered prejudicial comments when preparing to reenter the courtroom. During the latest *Remmer* hearing, a juror testified to hearing "the press in the hallway talking about their

---

[5] Mr. Sittenfeld accepts that a panel of the Sixth Circuit has rejected this argument and that the panel's opinion binds this Court. He raises the argument only to preserve it for possible en banc or Supreme Court review.

interpretation of the witness testimony." ECF 249 (Hearing on Aug. 17, 2022) at p. 21. The juror also testified that "other jurors . . . were in much closer earshot . . . to those conversations," and that this "happened on more than one occasion." *Id.* at pp. 30–31. Although this juror further testified to ignoring those conversations, *see id.* at 23, the Court denied Mr. Sittenfeld's request to speak with any of the seven jurors who were in closer earshot, *see id.* at 53. That decision prevented Mr. Sittenfeld from determining whether the jury heard or relied on extrinsic, prejudicial comments. *See* Ex. B (Affidavit of Samantha Rittgers) at p. 2 (stating that the comments were "overwhelmingly negative" and "unfavorable" to Mr. Sittenfeld); *see also* Ex. C (Affidavit of Cathy Crain). And the absence of that determination was especially prejudicial under Sixth Circuit precedent, which places the burden on defendants to prove jury bias.[6] *See Lanier*, 988 F.3d at 295. A new trial is the appropriate remedy in this circumstance.

### CONCLUSION

For the reasons discussed above, Mr. Sittenfeld's convictions were against the manifest weight of the evidence. Moreover, the weakness of the government's case exacerbated the effects of its constructive amendment and prejudicial variance, increasing the odds that the jury convicted Mr. Sittenfeld for uncharged conduct—precisely as its inconsistent verdict shows it did. That weakness also confirms the prejudicial effect of this Court's failure to give appropriate instructions, which would have clarified the issues before the jury; the Court's exclusion of modus operandi evidence, which would have rebutted the government's purported circumstantial evidence; and the Court's exclusion of relevant expert testimony, which would have had both beneficial effects. Finally, the multiple trial errors raised the stakes of the extrinsic evidence issue, which this Court did not adequately investigate. The Court should order a new trial.

---

[6] "Every other circuit court has held that the burden of proof regarding jury bias falls on the Government." *Lanier*, 988 F.3d at 295 n.13. Mr. Sittenfeld accepts this standard for this motion but preserves a challenge to it for further review, on the ground that it may be dispositive either here or with respect to the juror-misconduct issue.

Respectfully submitted,

*/s/ Neal D. Schuett*
Charles M. Rittgers
Charles H. Rittgers
Neal D. Schuett
Rittgers & Rittgers
12 East Warren Street
Lebanon, OH 45036
(513) 932-2115
charlie@rittgers.com
*Counsel for the Defendant*

Date: September 30, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed with the Court's CM/ECF System provided to on this 30th day of September, 2022, which provides electronic notice to all parties.

*/s/ Neal D. Schuett*
Neal D. Schuett
*Counsel for the Defendant*
