**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO. 1:20-CR-142** |
|  | : |  |
| **v.** | : | **JUDGE COLE** |
|  | : |  |
| **ALEXANDER SITTENFELD,** | : | **RESPONSE IN OPPOSITION TO** |
| a/k/a "P.G. Sittenfeld," | : | **DEFENDANT'S MOTION FOR** |
|  | : | **ACQUITTAL** |
| **Defendant.** | : |  |
|  | : |  |
|  | : |  |

The United States respectfully submits this response in opposition to Defendant

Alexander Sittenfeld's Motion for Acquittal. (Doc. 270 (PageID 6872).) The Court should deny

the defendant's motion for the reasons set forth in the following memorandum.

<div style="margin-left: 50%;">

Respectfully submitted,

KENNETH L. PARKER
United States Attorney


*s/ Matthew C. Singer*
MATTHEW C. SINGER (IL 6297632)
EMILY N. GLATFELTER (0075576)
MEGAN GAFFNEY PAINTER (NY 4849220)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
Email: Matthew.Singer@usdoj.gov
Email: Emily.Glatfelter@usdoj.gov
Email: Megan.Painter@usdoj.gov

</div>

<u>**MEMORANDUM OF LAW**</u>

The jury found Defendant Alexander Sittenfeld guilty of federal funds bribery and attempted extortion under color of official right. The defendant now asks the Court to disregard the jury's verdict and reweigh the trial evidence after crediting his interpretation of the facts. But this is not permissible. The jury rationally assessed the evidence and found the defendant guilty. The defendant's motion to overturn the verdict fails.

## I.  PROCEDURAL BACKGROUND

A grand jury charged the defendant with two counts of honest services wire fraud, 18 U.S.C. §§ 1343, 1346 (Counts 1 and 2); two counts of bribery concerning programs receiving federal funds, 18 U.S.C. § 666(a)(1)(B) (Counts 3 and 5); and two counts of attempted extortion under color of official right, 18 U.S.C. § 1951(a), (b)(2) (Counts 4 and 6). Counts 1 and 2 charged a bribery scheme spanning September 2018 to February 2020; Counts 3 and 4 centered around the November and December 2018 PAC payments in return for votes supporting the 435 Elm St. project; and Counts 5 and 6 involved the September and October 2019 PAC payments in return for furthering the same project. (Doc. 3.) The Indictment included thirteen pages of facts, which extensively quoted recorded meetings and calls involving the defendant.

The defendant moved to dismiss the Indictment, which the Court denied. (Opinion and Order, Doc. 53.) In doing so, the Court found that the evidence in the speaking Indictment, including transcripts of recorded conversations, alleged an explicit *quid pro quo*, as required to sustain a conviction. (*Id*. at PageID 522–34.) The Court also rejected the defendant's "official action" challenge, finding "[a] promise to 'deliver the votes' qualifies under McDonnell's test for an 'official action.'" (*Id*. at PageID 530.) Finally, although remarking that the "skeletal at best" vagueness challenge was "arguably waived," the Court rejected the argument on the merits,

concluding "if there is one thing that everyone knows federal bribery law prohibits, it is agreeing to undertake official action in exchange for campaign contributions." (*Id*. at PageID 535.)

The matter proceeded to trial, and after the government rested, the defendant moved for acquittal under Federal Rule of Criminal Procedure 29. In denying the motion, the Court found that "the government has presented sufficient evidence to go to the jury on all six counts." (Doc. 267, PageID 6582.) The jury returned a guilty verdict as to Counts 3 and 4 and acquitted as to Counts 1, 2, 5, and 6.

The defendant renews his Rule 29 motion. It should be denied.[1]

## II.    LEGAL STANDARD

Rule 29 allows the Court to enter a judgment of acquittal if the evidence presented at trial was "insufficient to sustain a conviction." Fed. R. Crim. P. 29. When reviewing a Rule 29 motion, the court decides "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *United States v. Paulus*, 894 F.3d 267, 275 (6th Cir. 2018) ("like the district court, we only ask whether a rational trier of fact could return a guilty verdict.").

"Under the *Jackson v. Virginia* standard, a reviewing court does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citation omitted). Further, the

---

[1] The defendant requests oral argument without providing any grounds explaining why oral argument is necessary to resolve the motion. *See* S.D. Ohio Loc. Rule 7.1(b)(2) ("The ground(s) for any such request [for oral argument] shall be succinctly explained."). Because oral argument is not necessary to assist the Court in the determination of the motion—the trial evidence and party briefs are sufficient to resolve the motion—the defendant's request for oral argument should be denied. *See, e.g.*, *United States v. Lee*, No. 18-20198, 2019 WL 244789, at *5 (E.D. Mich. Jan. 17, 2019), *aff'd*, 834 F. App'x 160 (6th Cir. 2020); *United States v. Castano*, No. 11-20066, 2018 WL 6616767, at *1 (E.D. Mich. Dec. 18, 2018); *United States v. Huff*, No. 3:10-CR-73, 2012 WL 441197, at *1 n.1 (E.D. Tenn. Feb. 10, 2012).

"evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). "[G]iven that the district court must view the evidence in the light most favorable to the government, a defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Emmons*, 8 F.4th 454, 478 (6th Cir. 2021), *cert. denied sub nom. Lundergan v. United States*, 142 S. Ct. 2676 (2022) (internal quotation marks omitted); *Hughes*, 505 F.3d at 592 (the "standard is a great obstacle to overcome" for a defendant).

## III. ARGUMENT

### A. The Jury Rationally Convicted the Defendant of Counts 3 and 4.

The Court is familiar with the elements of the Counts at issue: federal funds bribery (Count 3) and attempted extortion under color of official right (Count 4). Under the instructions given by the Court, both counts require an explicit *quid pro quo*. (*See* Doc. 202, PageID 3221–25 (instructions for § 666); *id*. at PageID 3226–32 (instructions for § 1951).) The explicit *quid pro quo* element is satisfied under § 1951 if the defendant "obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Evans v. United States*, 504 U.S. 255, 268 (1992); (Jury Instructions, Doc. 202, PageID 3227); Sixth Cir. Patt. Jury Inst. 17.02. The defendant violated § 666 if he corruptly solicited, demanded, accepted or agreed to accept a payment intending to be "influenced or rewarded in connection with specific business, transaction or series of transactions" involving the Cincinnati City Council and the 435 Elm Street Project. 18 U.S.C. § 666; (Jury Instructions, Doc. 202, PageID 3221–24); *United States v. Porter*, 886 F.3d 562, 565 (6th Cir. 2018). The primary difference between these charges, as instructed by the Court, is that Count 4 requires "official action," (Doc. 202, PageID 3228–30), whereas Count 3 does not (*id*. at PageID 3224).

As argued by the parties at trial, the defendant's guilt as to these Counts turned on the jury's assessment of what he knew and intended when he received payment. (Doc. 251, PageID 4997 (Government Closing, Count 4), PageID 5037 (Government Closing, Count 3); *id*. at PageID 5040 (Defense Closing: "Everything in this case comes down to intent. Everything comes down to what P.G. intended.").

"It goes without saying that matters of intent are for the jury to consider." *McCormick v. United States*, 500 U.S. 257, 270 (1991). The jury must assess a defendant's "intent to exchange official acts for contributions . . . based on [the defendant's] words, conduct, acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them." *United States v. Terry*, 707 F.3d 607, 614 (6th Cir. 2013). "[A]s most bribery agreements will be oral and informal, the question is one of inferences taken from what the participants say, mean and do, all matters that juries are fully equipped to assess." *Id*. at 613. "The trier of fact is 'quite capable of deciding the intent with which words were spoken or actions taken as well as the reasonable construction given to them by the official and the payor.'" *Id*.

This is precisely what the jury did here—after evaluating credibility, drawing all reasonable inferences, and weighing the evidence, the jurors found the defendant guilty of Counts 3 and 4. The Court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Fisher*, 648 F.3d at 450. "[T]he court can only ask whether the government presented evidence allowing a reasonable jury" to find the defendant guilty, viewing the evidence in the light most favorable to the government. *Paulus*, 894 F.3d at 277.

The Court has already made this finding. The Indictment included many of the same transcribed conversations that were played for the jury at trial. In denying the motion to dismiss, the Court assessed those facts in the Indictment. This includes a transcription of the November 7, 2018 meeting played for the jury, where Rob offered $20,000 for votes on 435 Elm St. and the defendant promised to "deliver the votes" in response. Based on this exchange *alone*, the Court found that "[a] jury could reasonably infer that Sittenfeld's response constituted his acceptance of an *express* offer to guarantee official action in exchange for $20,000 in campaign contributions." (Opinion and Order, Doc. 53, PageID 524) (emphasis in original).[2] So, given that the jury heard this same recording at trial, the evidence the government presented to the jury was sufficient for a rational jury to convict.

In any case, the government presented additional evidence at trial to support the convictions, including evidence that:

- the defendant solicited $10,000 from Chinedum Ndukwe, knowing that he was in the process of seeking a development agreement with the City for 435 Elm. (Doc. 266, PageID 6242–44.)

- The defendant corruptly solicited Ndukwe on October 30, 2018—the defendant discussed 435 Elm then solicited contributions before threatening, "You don't want me to be like, 'hey Chin like love you but can't' you know like. I, I, I want people to support me," (USA Ex. 13B). This statement made clear "that whether you donate or don't donate, that it's going to have an impact on my advocacy for you." (Doc. 266, PageID 6247).

- The jury heard the defendant's November 2, 2018 call, in which he was told that Rob was prepared to pay the defendant $20,000 but was going to want a "yes vote, you know,

<hr>

[2] As the Court's instructions make clear, an "express" *quid pro quo* is a higher standard than necessary to convict. (Jury Instructions, Doc. 202, PageID 3224 ("the agreement once again need not be express" for § 666), PageID 3231 (same as to § 1951).)

without, without a doubt" on 435 Elm St. when they met the next week. (USA Ex. 14B). The defendant stated nothing could be a *quid pro quo* but that he was "super pro-development and revitalization of especially our urban core"; importantly, 435 Elm was a development project to revitalize the urban core. Despite the expressly corrupt offer, the defendant then stated, "we can discuss that more in person," and proceeded to set up the meeting with Rob, who he now knew was a bribe payor. The defendant stated he wanted to give the bribe payor "the confidence and the comfort" he was investing in a "winning endeavor"—a powerful inference of corrupt intent. *See Blagojevich*, 794 F.3d at 738 ("'Nudge, nudge, wink, wink, you know what I mean'" can amount to bribery).

- The jury heard evidence that the 435 Elm St. project was complicated, and economic development professionals in the City did not support the proposal. (Doc. 262, PageID 5575–76; 5585; 5591.) But when the defendant met with Rob on November 7, 2018—knowing Rob had intended to offer $20,000 for a "yes vote" on 435 Elm—within minutes of discussing the development proposal the defendant agreed to "shepherd the votes" for the agreement, the same *quo* from the November 2 call. (USA Ex. 15C.)

- Later that day, Rob offered the $20,000 to ensure enough votes from the defendant that the development agreement was "Cranley-proof"—"an *express* offer to guarantee official action in exchange for $20,000 in campaign contributions." (Opinion and Order, Doc. 53, PageID 524) (emphasis in original). The defendant agreed to "deliver the votes" in response. (USA Ex. 15C.) They then immediately began discussing how to pay the $20,000 (the *quid*) to the defendant in a way that would keep the UCEs' names off public filings, and the defendant reaffirmed, "we're gonna make [the development agreement] happen" (the *quo*). (*Id.*)

- Following these clearly corrupt interactions, the defendant continued to meet and cultivate a relationship with the UCEs, discussed ways the UCEs could make the contributions without disclosing their names, and re-affirmed in multiple meetings that he intended to ensure the 435 Elm agreement passed through City Council. (USA Ex. 20D (Sittenfeld: "I'm ready to shepherd the votes"); *id*. ((after receiving checks) "my name is not connected to [the PAC] in any way. . . . No one will ever know this"); USA Ex. 21G (Sittenfeld: (after receiving checks) "All, all a big help"; later explaining, "I can always get a vote to my left or a vote to my right."); *see also* USA Ex. 21K (Sittenfeld: "looking forward to a doing what I can to help get 435 across the finish line.").

- After entering the agreement and receiving the checks, the defendant's conduct demonstrated that he attempted to fulfill his end of the corrupt bargain, through discussions with the Mayor and Economic Development. (*See, e.g.*, USA Ex. 22G; USA Ex. 23C.) He also encouraged Rob to take the agreement straight to City Council for a direct vote on the project. (USA Ex. 25B (Sittenfeld: "Let's do it."); USA Ex. 26D (Sittenfeld: "Go the council route. . . . I offered."). The jury heard evidence that the defendant had not helped advance 435 Elm prior to the time Ndukwe started recording calls in late October 2018 (Doc. 266, PageID 6251–52)—circumstantial evidence that the defendant was fulfilling his end of the corrupt bargain. The defendant ultimately voted to transfer 435 Elm to the Port Authority, but not before discussing the transfer with Rob.[3]

After hearing the government's evidence, the Court denied the defendant's Rule 29 motion because "the government has presented sufficient evidence to go to the jury on all six counts." (Doc. 267, PageID 6582.)

---

[3] As the Court is aware, fulfilling the *quid pro quo* is not necessary to convict, (*see, e.g.,* Jury Instructions, Doc. 202, PageID 3229, 3231), but the defendant's subsequent actions are evidence of his intent.

Nothing in the defense case permits a different result.  The jury was free to reject the defendant's explanation for his conduct and find his witnesses not credible.[4]  *See Terry*, 707 F.3d at 615 (affirming conviction because "the jury rejected any legitimate explanation for Russo's contributions"); *United States v. Roberson*, 998 F.3d 1237, 1248 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1109 (2022) (rejecting sufficiency of evidence challenge because "[t]he jury was free to disbelieve Gilbert's testimony and to infer" corrupt solicitation through other evidence); *United States v. Siegelman*, 640 F.3d 1159, 1179 (11th Cir. 2011) (rejecting sufficiency challenge because "evidence need not be wholly inconsistent with every conclusion except that of guilt" and "the jury was free to disregard or disbelieve" the evidence).

The jury thus rationally found the defendant guilty of Counts 3 and 4.

**B.  The Defendant's Challenge to the *Quid Pro Quo* Fails.**

The defendant presents a number of arguments for why he believes he did not enter an explicit *quid pro quo*.  None has merit.

*First*, the defendant's brief includes seven pages explaining the background and reasons for the explicit *quid pro quo* requirement.  (Doc. 270, PageID 6875–81) (citing First Amendment, due process, federalism, "major questions").  He raises these legal arguments without explaining how they are in any way relevant to the Court's task on this Rule 29 motion challenging the sufficiency of the evidence.  *See* Fed. R. Crim. P. 29(a).

For example, he argues "the 'major questions' doctrine reinforces the importance of a strict explicitness requirement."  (Doc. 270, PageID 6878.)  But the Court gave "strict explicitness" instructions to the jury, which the defendant does not—and cannot—contest here.

---

[4] For example, it is not a stretch for the jury to reject testimony from a defense witness who met with the defense ten times before trial and who used verbatim the same words as the defendant to describe the defendant's actions (Doc. 269, PageID 6684, 6693), and another witness who failed to disclose his prior legal representation and friendship with the defendant during direct examination (Doc. 267, PageID 6594).

*See United States v. Williams*, 640 F. App'x 492, 499 (6th Cir. 2016) ("Under [the Rule 29] standard, the Court is 'limited to ascertaining whether, viewing the evidence in the light most favorable to the government, . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000)); *United States v. Moreland*, 622 F.3d 1147, 1166 (9th Cir. 2010) ("[A] Rule 29 motion challenging the sufficiency of the evidence cannot substitute as a timely objection to the jury instructions."); 2A Charles A. Wright, *Federal Practice and Procedure: Criminal* § 466, at 299 (3d ed. 2000) ("There is only one ground for a motion for judgment of acquittal. This is that the evidence is insufficient to sustain a conviction of one or more of the offenses charged in the indictment or information."). The Court also made the defendant's First Amendment rights clear in a jury instruction to which the defendant did not object. (*See* Doc. 202, PageID 3233–36 (campaign contribution jury instruction); Doc. 272, PageID 6938 (Defense counsel: "No objection, Your Honor," to campaign contribution instruction).)

Notably, the explicit *quid pro quo* standard is not as demanding as the defendant claims. *See Terry*, 707 F.3d at 614–16 (receipt of $1,200 in campaign contributions and campaign benefits a year before being asked to take official action sufficient to meet explicit *quid pro quo* standard); *United States v. Pawlowski*, 27 F.4th 897, 908 (3d Cir. 2022) (holding "a reasonable jury could find an explicit *quid pro quo*" where public official discussed awarding contract and receiving campaign contributions in same conversations);[5] *see also United States v. Blagojevich*, 794 F.3d 729, 738 (7th Cir. 2015) (recognizing "nudge, nudge, wink, wink" is enough because "[f]ew politicians say, on or off the record, 'I will exchange official act X for payment Y.'"). Not that this matters here where the defendant "accepted an *express* offer to guarantee official

---

[5] In *Pawlowski*, the Third Circuit affirmed the convictions of seven separate instances in which the defendant engaged in explicit *quid pro quo* bribery, none of which is even close to as clearly explicit as the defendant's conduct here. *See* 27 F.4th at 903–08.

action in exchange for $20,000 in campaign contributions." (Opinion and Order, Doc. 53, PageID 524) (emphasis in original).

But, in the end, the defendant's legal arguments are beside the point—the Court properly instructed the jury, and those instructions required an explicit *quid pro quo*. The jury then rationally found the defendant engaged in explicit *quid pro quo* bribery, as instructed by the Court. This is all the law requires.

*Second*, the defendant argues that the jury "issued an inconsistent verdict" to support his Rule 29 motion because it acquitted in Count 1. (Doc. 270, PageID 6881–82.) But the verdict was not inconsistent. Count 1 required both a "scheme to defraud" encompassing the entire relevant period and a wire transmission "in interstate commerce in furtherance of the scheme." (Doc. 202, PageID 3211–12.) The jury could have found either element was not met beyond a reasonable doubt.

In any event, an inconsistent verdict does not support a Rule 29 motion. *United States v. Clark*, 9 F. App'x 402, 404 (6th Cir. 2001); *United States v. Mithavayani*, 2019 WL 2125833, at *6 (E.D. Ky. May 15, 2019). Rather, courts are clear that inconsistent jury verdicts are permissible. *United States v. Powell*, 469 U.S. 57, 64–65 (1984); *see Dunn v. United States*, 284 U.S. 390, 393 (1932) ("[C]onsistency of a verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment."); *United States v. Miller*, 161 F.3d 977, 985 (6th Cir. 1998) (explaining that the jury is free to render inconsistent verdicts).

*Finally*, the defendant spends nine pages presenting his "plausible alternative interpretation of the uncontested evidence." (Doc. 270, PageID 6890; PageID 6882–90.) His arguments require the Court to make credibility findings and credit his interpretation of recorded statements. (*See, e.g., id*. at PageID 6883, 6884.) But, as established above, this is improper in

10

the context of a Rule 29 motion—the Court must view the evidence in the light most favorable to *the government*, *Jackson*, 443 U.S. at 319; and the "evidence need not remove every reasonable hypothesis except that of guilt," *Hughes*, 505 F.3d at 592.

The defendant's "alternate interpretation" of the evidence is thus irrelevant—indeed, nearly every convicted defendant viewed the evidence different than the jury. *See United States v. Bowens*, 938 F.3d 790, 794 (6th Cir. 2019) ("The defendants' arguments fail because they are at bottom jury arguments—that the evidence is circumstantial and open to multiple interpretations."); *see also United States v. Wallace*, No. 21-6011, -- F.th ----, 2022 WL 6944278, at *3 (6th Cir. Oct. 12, 2022) ("It is the rare trial defendant who does not offer innocent explanations for their conduct. . . . Where the jury rejects the explanations, we generally let the jury make the call when the point is contested with admissible evidence.") (citing *Terry*, 707 F.3d at 615). In fact, the defendant raised these same arguments at trial, and the jury rejected them. (*See, e.g.,* Doc. 269, PageID 6761). And, again, the Court may not reweigh the evidence to override the jury's determination here. *Fisher*, 648 F.3d at 450; *see also Terry*, 707 F.3d at 613 ("juries are fully equipped" to assess intent). What matters is that the jury's assessment of the evidence was rational and, applying the proper standard as set forth above, the jury's verdict was rationally based on the evidence here.

But even the evidence cited by the defendant does not support his motion. For example, contrary to the defendant's claim, and as argued by the government at closing, the jury could have heard the defendant's initial response to the express *quid pro quo* offer during the November 2, 2018 call as willingness to engage in a corrupt exchange rather than rejection of the bribe offer. *See United States v. Lee*, 919 F.3d 340, 357 (6th Cir. 2019) (although defendant stated, "'I'm not trying to influence you . . . I'm trying to make you think,' . . . a juror could

11

easily have heard those words and concluded that they meant the exact opposite"). As set forth above, rather than discontinue the relationship after the expressly corrupt offer on November 2, 2018, the defendant agreed to meet with Rob "in person" so the defendant could give a corrupt bribe payor "the confidence and the comfort" that he was "invest[ing] in a winning endeavor." (USA Ex. 14B.) The defendant then gave that comfort mere minutes into the November 7 lunch, agreeing to "shepherd the votes" for the project—precisely what he knew Rob wanted in return for payment. After lunch, Rob again offered the express *quid pro quo*—money for votes, the same as the November 2 call—and the defendant agreed to "deliver the votes" in response. As the Court has already concluded: "'[n]o subtle winks and nods were needed.' *Terry*, 707 F.3d at 615. A jury could reasonably infer that Sittenfeld's response constituted his acceptance of an express offer to guarantee official action in exchange for $20,000 in campaign contributions." (Doc. 53, PageID 524.) Based on this evidence alone, the jury's verdict was reasonable.

The other evidence cited by the defendant also reasonably supports the jury's verdict. Take his handling of the contributions. The jury could have reasonably concluded that the defendant cared less about "complying with campaign finance law," as the defendant claims (Doc. 270, PageID 6885), and more about finding a way to keep the UCEs contributions from being disclosed publicly at the bribe payor's request. (*See* USA Ex. 15C (Sittenfeld: "I do have a PAC that one, no one's like snooping around in who's giving that there"); USA Ex. 18D ("There is a PAC . . . That my name is not connected to. One, basically no one knows about it and two, my name in no filings and no paperwork and no anything is connected to it."); *id*. ("nothing about it in any way will ever be connected to me and no one will, you know, no one's going to be poking around for it to find your names on it."); USA Ex. 20D ("No one will ever know this"). In other words, the jury could reasonably infer that this showed his corrupt intent to

hide the payments at the bribe-payor's bidding. *See United States v. McNair*, 605 F.3d 1152, 1197 (11th Cir. 2010) ("[T]he extent to which the parties went to conceal their bribes is powerful evidence of their corrupt intent.").

The defendant's claim that he did not enter a corrupt relationship because he treated all "donors" with the same "careful cultivation and personal attention" as he did Rob does not show the jury acted irrationally. (Doc. 270, PageID 6886.) Rather, the fact that the defendant cultivated a friendship with an individual he viewed as "sleazy" (Doc. 267, PageID 6471), who offered him $10,000 in cash during their first meeting to discuss 435 Elm (USA Ex. 15C), and who the defendant knew wanted to exchange money for votes was strong evidence of guilt. Regardless, none of the defendant's actions after November 7, 2018 change the fact that *on that day* the defendant agreed to accept $20,000 "knowing that the payment was made in return for official acts." *Evans*, 504 U.S. at 268; (Jury Instructions, Doc. 202, PageID 3227).

The defendant cites his own testimony as evidence that he lacked corrupt intent. (Doc. 270, PageID 6888.) But, again, the jury was free to find his testimony lacked credibility. *Terry*, 707 F.3d at 615; *Roberson*, 998 F.3d at 1248. And, arguably, his testimony supported the government's case—the defendant admitted during his testimony that, based on the November 2, 2018 call, he knew he was offered an express *quid pro quo* of money for a "yes vote" for 435 Elm (Doc. 269, PageID 6780, 6783); and the defendant still met with Rob on November 7, 2018 despite the illegal offer (*id*. at PageID 6786; 6804–05). The defendant's willingness to meet with a corrupt businessman is evidence of corrupt intent and gave the jury reason to doubt the credibility of his innocent explanations for his conduct. *United States v. Beasley*, No. 12-20030, 2015 WL 1737478, at *12 (E.D. Mich. Apr. 16, 2015), *aff'd*, 700 F. App'x 394 (6th Cir. 2017)

("the jury was free—once again—to reject Beasley's testimony wherein he denied participating in a kickback scheme with Cunningham and use it as substantive evidence of his guilt.").

The defendant also cites his "love you but can't" conversation with Ndukwe on October 30, 2018 as having a "straightforward, innocuous explanation." (Doc. 270, PageID 6889). This, too, illustrates the fundamental flaw with the defendant's motion—he is asking the Court to reweigh the evidence and credit his interpretation, which the Court cannot do. In fact, he presented this same interpretation at trial, and the jury either rejected it or found it unpersuasive.[6] (*See* Doc. 269, PageID 6746.) Certainly, the jury's verdict was not irrational given the defendant's October 30, 2018 recorded statements.

For these reasons, the defendant's challenge to the *quid pro quo* evidence fails.

## C. The Defendant's "Official Action" Argument Has No Merit.

The defendant next argues that the government failed to meet *McDonnell's* official action requirement because "the project was in its infantile stages and there was no concrete 'question, matter, cause, suit, proceeding or controversy' *pending* before city council." (Doc. 270, PageID 6891) (emphasis added).

But a "question or matter" need not be *pending* to be official action. As the Court's jury instructions stated, "the evidence must show a question, matter, cause, suit, proceeding, or controversy that *may at any time* be pending *or may by law be brought before a public official*." (Doc. 202, PageID 3217) (emphasis added). This language mirrors *McDonnell*. 579 U.S. 550, 568 (2016) ("the Government must identify a question, matter, cause, suit, proceeding or controversy that may at any time be pending or may by law be brought before a public official") (internal quotation marks omitted). The jury instructions further stated, "a 'question, matter,

---

[6] In fact, the jury may have credited Ndukwe's testimony that, to him, it "was very clear that if I donated, he was going to support and be supportive in my efforts, and if I didn't, he wasn't going to be supportive." (Doc. 266, PageID 6247.)

cause, suit, proceeding, or controversy' must involve a formal exercise of governmental power, and it must be something specific and focused." (Doc. 202, PageID 3217); *see McDonnell*, 579 U.S. at 574; Sixth Cir. Patt. Jury Inst. 17.02. "It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' at the time of the alleged quid pro quo." *Lee*, 919 F.3d at 356.

Here, the Court has already rejected the defendant's *McDonnell* challenge, and the trial evidence only reinforces the correctness of that conclusion. (*See* Opinion and Order, Doc. 53, PageID 529–32.) The 435 Elm project was a "specific and focused" matter—Ndukwe was seeking a formal agreement with the City starting in 2017, and he was working with the City's Economic Development professionals to enter an agreement with the City to develop 435 Elm at the time of the November 7, 2018 lunch meeting. (Doc. 262, PageID 5574–75; Doc. 266, PageID 6231–32; USA Ex. 15C; *see also* Doc. 53, PageID 532) (435 Elm "is a focused and concrete matter"). A development agreement with the City required a "formal exercise of governmental power," including a determination by the Economic Development Department and, more important, votes from City Council. (Doc. 262, PageID 5547–48; 5569–71). At the time of the *quid pro quo*, the project also satisfied the "may at any time be pending or may be brought before a public official" requirement—it was already being considered within Economic Development in November 2018 and the request was formally filed with the City just two months after the November 7 meeting. (*See, e.g.,* USA Ex. 22A.) The defendant also agreed to "deliver the votes" for the development agreement when it was brought before City Council. (*See* USA Ex. 15C; *see also* USA Ex. 20D (Sittenfeld: "Look I'm ready to shepherd the votes as soon as it gets to us at Council.").)

The jury thus rationally concluded, based on all the facts, that the defendant agreed to exchange official action for contributions. (*See* Opinion and Order, Doc. 53, PageID 530 ("[A] promise to 'deliver the votes' qualifies under *McDonnell's* test for an 'official action.'")).

**D. Section 666 and Section 1951 Were Constitutionally Applied.**

The defendant claims the Constitution "forbids the prosecution of Mr. Sittenfeld for taking lawful campaign contributions while repeating his usual refrain that he is pro-development—both in general and on the merits of 435 Elm." (Doc. 270, PageID 6892.)

This is not the law. *Quid pro quo* bribery does not have a "magic-words requirement." *Blagojevich*, 794 F.3d at 738. Rather, the jury properly assessed "all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them." *Terry*, 707 F.3d at 614. And the jury did so after being instructed on the explicit *quid pro quo* requirement, which addresses specifically the Constitutional concerns raised by the defendant. *See McCormick*, 500 U.S. at 272; *Evans*, 504 U.S. 255; *see also McDonnell*, 579 U.S. 550. In other words, the Court's explicit *quid pro quo* instructions here—which come directly from *McCormick, Evans*, and *McDonnell*, and their progeny—already addressed the concerns raised by the defendant, and the jury rationally applied those instructions to all the facts and circumstances here. The Court also separately instructed the jury as to the defendant's specific First Amendment rights. (Jury Instructions, Doc. 202, PageID 3233.)

The defendant fails to explain how the Constitution "forbids the prosecution" where the jury was given proper *quid pro quo* instructions—this argument is entirely undeveloped. But to the extent he is asserting a constitutional right to promise votes in return for campaign contributions because "he is pro-development," that repackaged argument fails. (Opinion and Order, Doc. 53, PageID 528 ("The Court also disagrees with Sittenfeld's argument that his pre-

existing, pro-development record forecloses an inference that he engaged in a quid pro quo regarding Project 1."); (Opinion and Order, Doc. 61, PageID 691 ("It is black letter law that an official can commit bribery by agreeing to exchange specific official action for something of value, even if he would have taken the action anyway.") (citing *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 378 (1991), Sixth Cir. Pattern Jury Inst. 17.02(2)(c)(3)). And the First Amendment does not save the argument. *See United States v. Jeffries*, 692 F.3d 473, 478 (6th Cir. 2012) ("Words often are the sole means of committing crime—think bribery, perjury, blackmail, fraud. Yet the First Amendment does not disable governments from punishing these language-based crimes.") (citing *United States v. Varani*, 435 F.2d 758, 762 (6th Cir. 1970)); *United States v. Halloran*, 821 F.3d 321, 340 (2d Cir. 2016) ("[*Citizens United*] did not hold that the First Amendment protects bribery—to the contrary, the Court explicitly discussed the government's interest in preventing 'quid pro quo corruption' or the appearance thereof.").

For the same reason, the Court should once again reject the defendant's undeveloped "as applied" vagueness challenge. As the Court previously concluded, "if there is one thing that everyone knows federal bribery law prohibits, it is agreeing to undertake official action in exchange for campaign contributions." (Opinion and Order, Doc. 53, PageID 535.) Contrary to the defendant's claim, like all public officials, he had ample notice that agreeing to deliver votes in exchange for campaign contributions violated the law. *See United States v. Ng Lap Seng*, 934 F.3d 110, 135 (2d Cir. 2019) ("[C]ourts have uniformly rejected vagueness challenges . . . to § 666"); *United States v. Lindberg*, 39 F.4th 151, 175 (4th Cir. 2022) (same); *United States v. Lopez-Martinez,* 2020 WL 5629787, at \*33 (D.P.R. Sept. 21, 2020) ("[C]ourts have rejected void-for-vagueness constitutional challenges to the Hobbs Act'") (listing cases).

In fact, his own words make this clear—when he was offered an express *quid pro quo* of money for his "yes vote" on November 2, 2018, he replied, "nothing can be illegal . . . nothing can be a quid, quid pro quo."  (USA Ex. 14B).   So the defendant immediately identified the offer as an illegal *quid pro quo* at the time it was offered.  Nevertheless, he met with Rob on November 7 in person and accepted the same "express offer."  (Opinion and Order, Doc. 53, PageID 524).  Thus, criminal charges were not "impossible to anticipate"—the defendant knew what a *quid pro quo* was; he knew that it was illegal; and he did it anyway.

## IV.   CONCLUSION

The defendant's motion for acquittal should be denied.

<div align="right">

Respectfully submitted,

KENNETH L. PARKER
United States Attorney


*s/ Matthew C. Singer*
MATTHEW C. SINGER (IL 6297632)
EMILY N. GLATFELTER (0075576)
MEGAN GAFFNEY PAINTER (NY 4849220)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
Email: Matthew.Singer@usdoj.gov
Email: Emily.Glatfelter@usdoj.gov
Email: Megan.Painter@usdoj.gov

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing was filed with the Court's CM/ECF System this 21st day of October 2022, which provides electronic notice to all parties.

<div style="text-align:right">

*s/ Matthew C. Singer*
MATTHEW C. SINGER (IL 6297632)
Assistant United States Attorney

</div>