# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | :   **CASE NO. 20-CR-142** |
| | : |
| | :   **JUDGE DOUGLAS R. COLE** |
| **v.** | : |
| | :   <u>**RESPONSE IN OPPOSITION TO**</u> |
| | :   <u>**MOTION FOR A NEW TRIAL**</u> |
| **ALEXANDER SITTENFELD,** | : |
|   **a/k/a "P.G. Sittenfeld,"** | : |
| | : |
| **Defendant.** | : |

The United States respectfully submits this response in opposition to Defendant Alexander

Sittenfeld's Motion for a New Trial. (Doc. 271, PageID 6895).) The Court should deny the

defendant's motion for the reasons set forth in the following memorandum.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

/s/*Megan Gaffney Painter*
MATTHEW C. SINGER (IL 6297632)
EMILY N. GLATFELTER (0075576)
MEGAN GAFFNEY PAINTER
(NY 4849220)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711

# MEMORANDUM OF LAW

On July 8, 2022, the jury returned its verdict, convicting the defendant on two counts. After four extensions, the defendant filed this instant motion, alleging six grounds for a new trial. The defendant has not met the standard required for a new trial under Federal Rule of Criminal Procedure 33 and his motion should be denied.[1]

## LEGAL STANDARDS

Under Federal Rule of Criminal Procedure 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The grant of a new trial "is an extraordinary remedy for extraordinary circumstances" and "[o]nly when the verdict exceeds the bounds of reasonableness should the district court order a new trial." *United States* v. *VanDemark*, 39 F.4th 318, 322 (6th Cir. 2022) (internal quotation marks and brackets omitted).

Rule 33 "does not define 'interest of justice' and the courts have had little success in trying to generalize its meaning." *United States* v. *Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (brackets omitted). Consensus has formed, however, around two principles. First, a grant of a new trial is authorized "on the ground that the jury's verdict was against the manifest weight of the evidence." *Id*. (internal quotation marks and brackets omitted). Second, "it is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *Id*.[2] The defendant demands a new trial on both grounds.

---

[1] The defendant also requests oral argument without providing any grounds in support. *See* S.D. Ohio Loc. Rule 7.1(b)(2). As set forth in the Rule 29 response, oral argument is unnecessary. (*See* Gov. Resp. to Rule 29 at 2 n.1.)

[2] The Sixth Circuit in *Munoz* also raised the question of whether the "interest of justice" language may authorize a new trial outside of these two categories. *See Munoz*, 605 F.3d at 374 ("Less clear is whether a district court may grant Rule 33 relief where the verdict is not against the substantial weight of the evidence, and where no reversible error or violation of the defendant's substantial rights has occurred, but where the district court nonetheless believes that 'the interest of justice' requires a new trial."). After raising the question, the Sixth Circuit declined to answer it. *See id*. at 376; *see also United States* v. *Arny*, 831 F.3d 725, 731 (6th Cir. 2016) (again finding "it unnecessary to answer the question"). Later Sixth Circuit cases ignore this possible third category. *See, e.g.*, *United States* v. *Wiggins*, 784 F. App'x 919, 926 (6th Cir. 2019) ("We may grant a Rule 33 motion when the jury's verdict was against the manifest weight of the evidence or the interests of justice require it. And we have held that the 'interests of justice' standard is

1

## ANALYSIS

**A. The Manifest Weight of the Evidence Supports Sittenfeld's Convictions.**

"A Rule 33 motion on weight-of-the-evidence grounds may be granted 'only in the extraordinary circumstance where the evidence preponderates heavily against the verdict.'" *United States* v. *Funzie*, 543 F. App'x 545, 549 (6th Cir. 2013) (quoting *United States* v. *Hughes*, 505 F.3d 578, 592-93 (6th Cir. 2007)); *see United States* v. *Bowens*, 938 F.3d 790, 796 (6th Cir. 2019) ("[S]uch motions are disfavored, discretionary, and granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." (internal quotation marks omitted)); *United States* v. *Landesman*, 17 F.4th 298, 330 (2d Cir. 2021) ("It is accordingly only in exceptional circumstances, where there is a real concern that an innocent person may have been convicted, that a court may intrude upon the jury function of credibility assessment and grant a Rule 33 motion." (internal quotation marks omitted)); *United States* v. *Dowty*, 964 F.3d 703, 708 (8th Cir. 2020) ("New-trial motions based on the weight of the evidence are generally disfavored. . . . A court should not grant a motion for a new trial simply because it would have reached a different verdict." (internal quotation marks omitted)).

The Government's response in opposition to the defendant's motion for acquittal outlines the evidence that supports the jury's verdict in this case. (*See* Gov. Resp. to Rule 29 at 5–8.) Based on this evidence, "[a] jury could reasonably infer that Sittenfeld's response constituted his acceptance of an *express* offer to guarantee official action in exchange for $20,000 in campaign contributions." (Doc. 53, PageID 524) (emphasis in original).

---

met where substantial legal error has occurred in the course of the trial." (internal citation to *Munoz* omitted)); *United States* v. *Ewing*, 749 F. App'x 317, 321 (6th Cir. 2018) (Rule 33 "permits a district court to grant a new trial where substantial legal error has occurred. Any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." (internal quotation marks, brackets, and citation to *Munoz* omitted)); *see also United States* v. *Pamatmat*, 756 F. App'x 537, 542-43 (6th Cir. 2018). The Government found no Sixth Circuit case answering the question about the viability of this third potential category. The question can remain unanswered here because the defendant does not argue that this third category is a proper basis for a new trial, let alone that he could meet such a standard. Indeed, the legal errors alleged by the defendant are not errors under any standard.

In support of his motion, the defendant asks the Court to misapply the Rule 33 standard and overturn the jury's verdict. But when assessing the evidence, "the court must respect the role of the jury and ensure that evidence-supported convictions are upheld." *United States v. Burks*, 974 F.3d 622, 625 (6th Cir. 2020). Evidence does not preponderate heavily against the verdict "simply because different inferences could have been drawn or because other results are more reasonable." *Id.*; *accord United States* v. *Crittenden*, 46 F.4th 292, 296–97 (5th Cir. 2022); *United States* v. *Archer*, 977 F.3d 181, 188–89 (2d Cir. 2020). Rather, a new trial is warranted where "the evidence was patently incredible or defied physical realities." *Archer*, 977 F.3d at 188 (internal quotation marks and brackets omitted); *accord Burks*, 974 F.3d at 628. Otherwise, "a district court must defer to the jury's resolution of conflicting evidence." *Archer*, 977 F.3d at 188 (internal quotation marks omitted); *see, e.g.*, *Burks*, 974 F.3d at 625 (reversing where district court ordered new trial because it discredited "contested facts that we generally task juries with resolving"); *Crittenden*, 46 F.4th at 296–98 (same). The Court must defer to the jury's "reasonable" assessment of the evidence.[3]

Like his Rule 29 motion, the defendant argues for a new trial based on "inconsistent verdicts." (Doc. 271, PageID 6899). But, as set forth in the Government's Rule 29 response, the verdict was not inconsistent; and, even if it were, this is insufficient grounds for granting a new trial. *See* Gov. Resp. to Rule 29 at 10 (citing *United States* v. *Powell*, 469 U.S. 57, 64-65 (1984); *United States* v. *Miller*, 161 F.3d 977, 985 (6th Cir. 1998)); *see, e.g., United States* v. *Laho*, No. 12-20606, 2014 WL 3708710, at *6 (E.D. Mich. July 28, 2014).

---

[3] In *Burks*, the Sixth Circuit noted, "We know of one unpublished case in which our court affirmed the grant of a new trial based on the weight of the evidence[,]" and that case involved "numerous discrepancies in a key witness's testimony and the lack of corroborating testimony or evidence." 974 F.3d at 627 (internal quotation marks omitted). That is unlike here, where the evidence (particularly relating to intent) was almost entirely based on the jury's assessment of the defendant's own recorded statements. This case is thus like "virtually every [other Sixth Circuit case] dealing with the weight of the evidence" where the Court affirmed the denial of new trials. *Id.* at 627–28.

**B. The Government Did Not Deviate or Vary from the Indictment.**

The defendant alleges that the Government deviated from the indictment in two ways: first, by arguing that the defendant solicited a bribe from Mr. Ndukwe on October 30, 2018; and second, by arguing that the defendant extorted donors and received straw donations.

Among other things, an indictment serves to protect a defendant's Sixth Amendment right to fair notice of the criminal charges against him and his Fifth Amendment right to protection against double jeopardy. *United States* v. *Hynes*, 467 F.3d 951, 961 (6th Cir. 2006). Deviation from the indictment falls into different categories – "An indictment may be the subject of an actual amendment, a constructive amendment, or a variance." *United States* v. *Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008) (quoting *United States* v. *Budd*, 496 F.3d 517, 521 (6th Cir. 2007)). The defendant argues there was both a constructive amendment and a variance, which "differ with respect to the burden placed upon the defendant and the remedy mandated upon a showing that a constructive amendment or variance has occurred. *Id*.

"A constructive amendment results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *Id*. (internal quotation marks omitted). "A variance occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Id*. (internal quotation marks and brackets omitted). A variance only requires reversal where "the variance affected a substantial right of the defendant." *Id*. (citing *United States* v. *Prince*, 214 F.3d 740, 757 (6th Cir. 2000)).

1. <u>The October 30, 2018 Bribe Solicitation</u>

The defendant contends that the Government relied improperly on his October 30, 2018 bribe solicitation of Mr. Ndukwe to support the convictions on Counts 3 and 4, and thus

constructively amended the indictment. The defendant did not preserve this argument at trial so it should be reviewed for plain error. Fed. R. Crim. P. 51(b), 52(b); *see United States* v. *Cornell*, No. 1:03-CR-431, 2008 WL 2944938, at *8 (N.D. Ohio July 25, 2008); *infra* Part C. The defendant can show no error, let alone plain error.

**Count 3.** The jury instructions for Count 3 mirror the language in the indictment. Count 3 charged the defendant with a violation of § 666(a)(1)(B), detailing that, from September 21, 2018 to December 17, 2018, he "corruptly solicited and demanded for his own benefit, and accepted and agreed to accept a thing of value from a person." (Doc. 3, ¶ 42). When instructing the jury as to the elements of Count 3, the Court required that the jury find, during the same period, "that Mr. Sittenfeld solicited, demanded, accepted, or agreed to accept a thing of value from another person." (Doc. 202, PageID 3221.) "Where the jury instructions do not differ from the crime charged in the indictment, there is no constructive amendment." *United States v. Bradley*, 917 F.3d 493, 503 (6th Cir. 2019). Based on this alone, the defendant's argument fails.

The defendant's reliance on the "to wit" clause of Count 3, which stated that the defendant "corruptly solicited and demanded, and accepted and agreed to accept, payments to PAC for his benefit from UCE-1," is similarly fatal. (Doc. 3, ¶ 42.) The "to wit" clause of an indictment serves to illustrate, not limit. *See United States* v. *Agrawal*, 726 F.3d 235, 260-61 (2d Cir. 2013) ("When the indictment is thus considered as a whole, the 'to wit' clause is properly understood to be illustrative rather than definitional of the core of criminality charged by the grand jury."); *United States* v. *Lopez*, 4 F.4th 706, 726 n.11 (9th Cir. 2021) (the "to wit" clause does not "obligate[] the Government to prove the particular conduct alleged in the illustrative clause."). And the Court must "consider the full scope of the indictment in analyzing whether a variance or constructive amendment occurred, not only the sections that [the defendant] chooses to acknowledge." *Bradley*, 917 F.3d at 503; *see United States v. Berger*, 224 F.3d 107, 117–18 (2d Cir. 2000) (error in "to wit" clause not constructive amendment because the "oversight was addressed elsewhere in

the indictment"); *see also United States v. Rosner*, S3 19-CR-497, 2022 WL 683010, at *4 (S.D.N.Y. Mar. 8, 2022) (the "'to wit' clause must not be strictly interpreted").

Here, Count 3 charged a date range that included the solicitation of Mr. Ndukwe on October 30, 2018. (*See* Doc. 3, ¶¶ 41, 42.) The indictment itself detailed that corrupt overture, under the heading of "2018 Solicitations" with the operative exchange, "you don't want me to like, to be like, 'hey [Cooperating Witness], like, love you, but can't," underlined. (*See id*. at ¶¶ 12–13.) The paragraphs detailing the solicitation of Mr. Ndukwe were then expressly incorporated into Count 3. (*Id.* at ¶¶ 41–42.). The indictment was not "altered by the presentation of evidence and jury instructions," *Kuehne*, 547 F.3d at 683 – the same allegations in the indictment for Count 3 were presented to the jury. *See United States* v. *Khalupsky*, 5 F.4th 279, 293–94 (2d Cir. 2021) (no constructive amendment where allegations were "incorporated by reference into all charged counts"); *Berger*, 224 F.3d at 117-18. The defendant was thus on notice that his October 30th solicitation was part of the charged conduct for Count 3. *See United States* v. *Bastian*, 770 F.3d 212, 220 (2d Cir. 2014) ("So long as the indictment identifies the 'essence of [the] crime' against which the defendant must defend himself, discrepancies in 'the particulars of how a defendant effected the crime' do not constructively amend the indictment.").

In addition, the "to wit" clause reflected the allegations in the indictment and the evidence and instructions at trial because the October 30th solicitation of Mr. Ndukwe and ultimate payment by Rob ("UCE-1") were part of the same story. The October 2018 phone calls in the indictment and played for the jury made clear that Mr. Ndukwe's investors on 435 Elm (*i.e.*, the UCEs) would be the ones making bribe payments to the defendant's PAC—Mr. Ndukwe and Rob were one and the same. (Doc. 3, ¶¶ 12–15.) At the least, the payments made to the PAC were solicited and discussed in conversations between the defendant and Mr. Ndukwe, and thus were "within the charged core of criminality" and intrinsic to the charge. *See Khalupsky*, 5 F.4th at 293–94; *United States* v. *Benson*, 591 F.3d 491, 498 (6th Cir. 2010) (evidence "inextricably intertwined with the

charged offense . . . the telling of which is necessary to complete the story of the charged offense" not constructive amendment); *United States* v. *Beasley*, No. 12-20030, 2015 WL 1737478, at *16 (E.D. Mich. Apr. 16, 2015) ("The 'core of criminality' of an offense . . . involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview.").

The defendant relies on *Stirone* v. *United States*, presenting it as a constructive amendment case turning on the seemingly unimportant difference between shipments of sand and shipments of steel. But that distinction was not trivial – it was critical to the application of the law itself. In *Stirone*, the defendant was charged with Hobbs Act extortion for interfering with the movement of sand into Pennsylvania. 361 U.S. 212, 213 (1960). The victim was a factory owner who imported the sand from various states to make ready mixed concrete. *Id*. Over the objection of the defendant, the court allowed the Government to introduce evidence that the concrete from the victim's factory was intended to be used for constructing a steel mill (which would presumably produce steel that would be exported in the future). *Id*. at 214. The court then instructed the jury (over objection) that the defendant could be convicted if the sand used in the concrete factory had been shipped across state lines (as charged in the indictment) or if the concrete made at the factory were used for constructing a steel mill that would then manufacture steel to be shipped in interstate commerce in the future. *Id*. In evaluating this deviation from the indictment, the Supreme Court noted that it was a "difficult question" whether future exports from a nonexistent mill (as opposed to actual imports from existing suppliers) could meet the statutory requirements. *Id*. at 215. Ultimately, though, the Court decided that the addition of a new theory not in the indictment was a constructive amendment requiring reversal. *See id*. at 217 (noting indictment "cannot fairly be read as charging interference with movements of steel from Pennsylvania to other States"). The deviation from the indictment was "neither trivial, useless, nor innocuous." *Id*.; *cf. United States* v. *D'Amelio*, 683 F.3d 412, 421–23 (2d Cir. 2012).

Unlike *Stirone*, the defendant's corrupt solicitation of Mr. Ndukwe was charged in the indictment, incorporated into Count 3 expressly, and inextricably intertwined with the corrupt agreement and payments made by Rob. There was no constructive amendment or variance.

**Count 4.** Like Count 3, the Count 4 jury instructions are consistent with the allegations in the indictment, and the facts in the indictment relevant to the October 30th call are the same as those offered at trial. The defendant does not even attempt to argue how the corrupt solicitation of Mr. Ndukwe could require a new trial as to Count 4. Unlike Count 3, the jury was instructed that Count 4 required that the defendant "obtained, accepted, agreed to accept, or received" property in exchange for specific official action – solicitation alone was not a basis for conviction under Count 4. (Doc. 202, PageID 3226–27.) As this is the sole ground for his constructive amendment argument, it fails.

2. <u>The Defendant's Punishment of Hedging and Acceptance of Straw Donations</u>

The defendant argues that the Government varied from the indictment by presenting evidence of the defendant violating campaign finance laws, specifically by extorting donors who "hedged" on his candidacy and by accepting straw donations.

"[P]resentation of additional evidence to substantiate charged offenses" does not amount to constructive amendment or a variance. *Bradley*, 917 F.3d at 503; *see, e.g.*, *United States* v. *Rashid*, 274 F.3d 407, 413–15 (6th Cir. 2001). This includes where the evidence is admissible under Rule 404(b) or evidence "intrinsic" to the charges. *See United States* v. *Benson*, 591 F.3d 491, 498 (6th Cir. 2010); *United States* v. *Potts*, 173 F.3d 430, at *9–10 (6th Cir. 1999) (table).

The Government's introduction of the testimony about the defendant extorting donors who "hedged" on his candidacy was admissible both under Rule 404(b) and as evidence intrinsic to the bribery charges as relevant to intent. It was also responsive to the defendant's opening statement, in which the defense opened the door to the evidence by challenging the Government's motivations and predication for the investigation. (Doc. 262, PageID 5500–01; Doc. 265, PageID 5942–43.)

The evidence of straw donations—specifically, the defendant's acceptance of the bribe payments at issue in this case, knowing they would be attributed to names other than Mr. Ndukwe and the UCEs—was not a variance from the indictment, but was, in fact, alleged in the indictment. (*See* Doc. 3, ¶ 34.) The Government did not argue the payments were wrong because they violated some campaign finance law around straw donations to a PAC, but because they were offered in exchange for official action. The defendant's attribution of the payments was relevant to his intent, which is why it was presented and how it was argued by the Government. (Doc. 251, PageID 5016–18). This was consistent with the Court's pretrial order, and with the law, and does not create a variance. (*See* Doc. 265, PageID 5946–47; Doc. 190, PageID 2928 (admitting Rule 404(b) evidence as to intent).)[4]

It was the defense that brought up straw donors, discussing them in opening, introducing them in the cross-examination of Agent Holbrook, and arguing about them in closing. (Doc. 262, PageID 5499; Doc. 264, PageID 5888; Doc. 251, PageID 5067; Doc. 265, PageID 6015-16 ("I'm going to talk about straw donors. . . . You can charge someone for accepting straw donations, correct?").) The Court noted this at trial. (*See* Doc. 266, PageID 6193 ("I mean, you asked the question, you got an answer you don't like, and now you say I want an expert to fix the problem I created"); Doc. 269, PageID 6866 ("[T]he defense is the side that sort of introduced the bundling question.").

But even if this presentation of evidence could be construed as a variance from the indictment, the defendant does not endeavor to explain how evidence of his campaign finance violations—a door the defense opened at trial—affected a substantial right of the defendant. *See United States* v. *Osborne*, 545 F.3d 440, 443 (6th Cir. 2008). He instead speculates that "the jury may have understood the Court's explanation of those [campaign finance] laws to affirmatively invite its speculation on their application." (Doc. 271, PageID 6905.) This is absurd – the Court

---

[4] The defendant does not affirmatively challenge the Court's evidentiary ruling in his Rule 33 motion.

9

repeatedly instructed the jury that the defendant was not charged with violating any campaign finance laws, and even detailed relevant, specific activities that comported with those laws. *See, e.g.*, Doc. 251, PageID 4985-87; Doc. 202; *see also United States* v. *Harvey*, 653 F.3d 388, 396 (6th Cir. 2011) ("Jurors are presumed to follow instructions[.]").  There was no amendment or variance from the indictment.

### C.  The Court's Instructions to the Jury Were Correct.

The defendant attacks three of the jury instructions (having failed to preserve two of them). All his arguments fail on the merits, in any event.

Under Rule 30(d), "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate."  Fed. R. Crim. P. 30(d); *see also* Fed. R. Crim. P. 51.  "Merely proposing a jury instruction is insufficient to preserve an objection." *United States* v. *Semrau*, 693 F.3d 510, 527 (6th Cir. 2012).  Instead, a party must affirmatively object to an instruction at either the charge conference or before the instruction is given to the jury. *Id*. at 527.

If a party fails to object, a subsequent challenge is reviewed only for plain error. *Id*. "In the context of challenges to jury instructions, plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *Id*. at 528.  When a party presents an argument but then knowingly abandons it, the argument is waived and unreviewable at all. *See, e.g.*, *United States* v. *Greebel*, 15-cr-637, 2018 WL 3900496, at *41 (E.D.N.Y. Aug. 14, 2018); *United States* v. *Wilkins*, 1:06-CR-76-02, 2007 WL 896147, at *8 (E.D. Tenn. Mar. 22, 2007).  District courts apply these rules to arguments in post-trial motions. *See, e.g.*, *United States* v. *Stewart*, 839 F. Supp. 2d 914, 929 (E.D. Mich. 2012); *Cornell*, 2008 WL 2944938, at *8; *United States v. Mangano*, 16-CR-540, 2022 WL 65775, at *25–26 (E.D.N.Y. Jan. 6, 2022).

1. <u>The "Another Person" Instruction Was Correct.</u>

The defendant forfeited (and arguably waived) any challenge to the § 666 jury instructions. In his initial submission, the defendant proposed the very language he now challenges. (*See* Doc. 97, PageID 1010, 1012). He then objected to this language in response to the Government's proposed instructions. (Doc. 107, PageID 1181.) But he failed to renew that objection during the charge conference (*see* Doc. 272, PageID 6936 (Defense: "No objection" to Count 3)); and he did not object to the instruction at trial. At most, this challenge is subject to plain error review.

No matter the standard of review, the instruction correctly stated the law. Section 666 criminalizes corrupt solicitation from "any person," 18 U.S.C. 666(a)(1)(B), and the elements of the charge mirror the statutory language, *see United States* v. *Abbey*, 560 F.3d 513, 520 (6th Cir. 2009). Courts routinely use the "another person" instruction for this charge. *See, e.g.*, *United States* v. *Inman*, 39 F.4th 357, 362 (6th Cir. 2022); Fed. Crim. Jury Instr. 7th Cir. 666(a)(1)(B)(1) (2020 ed.). At trial, the Government presented ample evidence to support the instruction, including the corrupt solicitation that led to the agreement and payments. And, for the same reason the constructive amendment claim fails, an instruction that accurately states the law is not improper where the evidence at trial is consistent with the allegations in the speaking indictment. *Agrawal*, 726 F.3d at 257. The defendant cannot show any error, much less plain error. *See United States* v. *Reichert*, 747 F.3d 445, 451 (6th Cir. 2014) ("[A] defendant cannot be improperly prejudiced by a jury instruction that is warranted by the evidence and that accurately states the law.").

2. <u>The Official Action Instruction Was Correct.</u>

The defendant challenges the Court's decision to not include "expressing support" as an example in the "official action" instruction, an objection he preserved. (Doc. 272, PageID 6935, 6937.) The Court rejected this language "for the reason that expressing support, depending on the way in which that support is expressed, or the extent to which that support is pushed, or whether

or not that support crosses the line into being advice, may make the expression of support count as an official act." (*Id*. at PageID 6935.)

The Court's analysis was spot on. The Court's "official action" instruction mirrors the Sixth Circuit Pattern Instruction. *Compare* Sixth Cir. Pattern Instr. 17.02(2)(D) *with* Doc. 202, PageID 3228–30; *see United States* v. *Frei*, 995 F.3d 561, 565 (6th Cir. 2021). The Court's instruction (and the Sixth Circuit Pattern) also mirrors the language in *McDonnell*, which set forth the standard for assessing official action. *See* 579 U.S. 550, 567–74 (2016); *see Frei*, 995 F.3d at 565. As explained in *McDonnell*, "simply expressing support" is not official action, "as long as the public official does not intend to exert pressure on another official or provide advice, knowing or intending such advice to form the basis for an 'official act.'" 579 U.S. at 573. So, like the Court recognized, expressing support is official action when a public official intends to pressure or advice another public official to perform an official act.

The instruction was also consistent with *Dimora* v. *United States*, cited by the defendant. In *Dimora*, the Sixth Circuit explained that *McDonnell* held "three clarifying instructions are needed to prevent a jury from convicting the defendant for lawful conduct." 973 F.3d 496, 503 (6th Cir. 2020). All three of those "clarifying instructions" were included in the Court's instructions here, which accurately stated the law.

Finally, the Government never argued that "simply expressing support" amounted to official action. The Government made clear that the "official action" was his agreement to deliver City Council votes for the 435 Elm Street project. (Doc. 251, PageID 5036 ("And we saw that in the counts relating to the November 7, 2018, deliver the votes. A vote is an official action"); *see also id*. at Page ID 4997–98, 5012.) And the jury correctly determined that promising to deliver votes amounted to official action. (*See* Doc. 53, PageID 530 ("[A] promise to 'deliver the votes' qualifies under *McDonnell's* test for an 'official action.'").)

For these reasons, the Court properly refused the defendant's non-Pattern instruction.

3.   The Good Faith Instruction Was Inapplicable.

After proposing a good faith jury instruction (Doc. 105, PageID 1155), the defendant never articulated how it would apply to this case, despite the Court's invitation to do so.  (Doc. 149, PageID 2589–90.)  As the Court explained at the Final Pretrial Conference, "as I sit here right now, I don't see a basis for a good faith instruction," but requested guidance from the defense:  "what I need you to explain to me, in the context of this case, if you're seeking a good faith instruction . . . I would need to know what statement that good faith is going to attach to."  (*Id*. at PageID 2589.)

The defendant never followed through.  He did not raise the good faith instruction again, not at the charging conference or when the instruction was given.  By raising the instruction, and then abandoning it after the Court's request for additional information, the defendant knowingly waived any challenge to the instruction now.  *See Greebel*, 2018 WL 3900496, at *41 (finding Rule 33 instruction challenge waived because proposal was not renewed at charge conference); *United States* v. *Johnson*, No. 07-20026-STA, 2009 WL 2447978, at *22 (W.D. Tenn. Aug. 6, 2009) (jury instructions objections "waived" where defendant "withdrew without argument based on his agreement with the instructions drafted by the Court").  At the least, the Court must review this under plain error. *See Semrau*, 693 F.3d at 527; *Mangano*, 2022 WL 65775, at *25–26.

The Court's denial was correct under any standard.  The defendant contends that the good faith instruction was warranted because his statements "reflected nothing more than a good faith attempt to help his city's urban core."  (Doc. 271, PageID 6908.)  But he fails to cite a single case to support his claim that good faith is a defense to § 1951 or § 666 bribery charges, because a good faith defense does not apply.

In *United States* v. *Blagojevich*, the Seventh Circuit made this clear.  794 F.3d 729, 738 (7th Cir. 2015).  The court held that because "knowledge of the law" is not an element of § 666 or § 1951, "there's no basis for a good-faith instruction."  *Id*.  The court further explained, "a 'good faith' defense would be either a mistake-of-law defense in disguise or an advice-of-counsel defense

without demonstrating advice of counsel." *Id*. "That a given defendant wants to apply the phrase 'good faith' to the lack of essential knowledge or intent does not imply the need for a separate instruction. . . . These instructions defined the statutes' *mens rea* elements correctly; no more was required." *Id*.; *accord United States* v. *Berroa*, 856 F.3d 141, 161 (1st Cir. 2017); *United States* v. *Johnson*, 874 F.3d 990, 994 (7th Cir. 2017); *United States* v. *Frega,* 179 F.3d 793, 804 (9th Cir. 1999); *United States* v. *Mancuso*, 42 F.3d 836, 847 (4th Cir. 1994); *see also United States* v. *Hills*, 27 F.4th 1155, 1191 (6th Cir. 2022).

This is supported by this Circuit's Pattern Instructions. While Instruction 10.04 provides a good faith defense for fraud, the Committee Commentary elsewhere makes clear that this good faith defense is "to be used in conjunction with the elements instructions for mail, wire and bank fraud only; it does not articulate a general good faith defense." Sixth Patt. Inst 6.08, Comm.; *see also United States* v. *Trevino*, 7 F.4th 414, 424 (6th Cir. 2021) (highlighting "[t]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution" and explaining that the Supreme Court recognizes a limited exception to that rule for "highly technical statutes, such as tax or banking statutes," which "require a 'willful' violation of the law").

This Court already held mistake of law is not a defense to here. (Doc. 190, PageID 2933–34.) And the jury found that the defendant acted with the requisite intent when it found him guilty of Counts 3 and 4. He thus has no basis to argue that a good faith instruction was appropriate.

**D. The Court Did Not Exclude *Modus Operandi* Evidence.**

The defendant contends that this Court "further erred in prohibiting Mr. Sittenfeld from introducing *modus operandi* evidence," maintaining that, absent Court's ruling, "Mr. Sittenfeld would have explained how his communications with the undercover agents fit within his commonplace political activities[.]" (Doc. 271, PageID 6909 (internal quotation marks and ellipses omitted).) The defendant then aims his ire at a published Sixth Circuit case, *United States* v. *Dimora*, that is directly on point.

14

At the outset, the defendant's characterization of the Court's order does not comport with reality. The Court's order expressly allowed the defendant to "introduce evidence on topics such as his demonstrated views on development," forbidding only the introduction of "evidence regarding unrelated good acts generally." (Doc. 190 at PageID 2949-50.) In the Court's view, "[w]hile Sittenfeld's prior good acts are not admissible merely to support a propensity inference, and still less to support jury nullification based on mere sympathy, specific relevant conduct could be admissible as probative of Sittenfeld's state of mind in soliciting and accepting the campaign contributions at issue in this case." (*Id*. at PageID 1948.) The Court further explained the contours of his decision before the defendant presented his case:

> I do think what's different about this case is that the government is suggesting that the jury may be able to draw inferences from certain ways in which Mr. Sittenfeld acted with respect to the particular participants in the 435 Elm project. And the government is arguing that that conduct . . . is suggestive that he may have been acting pursuant to an improper motive. And I think that the defendant should have some ability to rebut that. And so I think what I'm inclined to do – you know, I think what drove *Dimora* was the fact that the Court said situations unrelated to the charges. So what I take from all this is sort of the same line that I tried to draw in my opinion in limine, which is that to the extent the other acts are substantially similar to the acts at issue here, that it may be probative or sufficiently probative with regard to intent to allow the evidence. So what I mean by that is, to the extent Mr. Sittenfeld intends to put on other witnesses who had some kind of major economic development program pending before the city for approval, or that needed some interaction from the city, and in which he then, like in this case, or like the evidence is starting to show in this case, met with the proponents of that economic development project on multiple occasions, said things like, you know, . . . things like "I'd shepherd the votes," or "I'll get this through counsel," . . . and/or reached out to other city officials to push them to act a certain way. If there are other incidents that are substantially similar in that regard, in which the person is going to say, yeah, I wasn't a contributor, or there was never any request for a contribution, I would be inclined to allow that type of testimony. . . . So that's where the Court is. Notwithstanding *Dimora*, I will allow other-acts evidence, both good and bad, but only with regard to substantially similar types of situations.

(Doc. 267 at PageID 6415-17.)

After the Court's order, the defendant noticed multiple defense witnesses he intended to call on this subject. (*See* Doc. 267, PageID 6607-32.) The Court said it would permit testimony on the expansion of the Cincinnati Children's Hospital and a low-income development project.

(*See id*. at PageID 6631.)  For whatever strategic reason, the defendant ultimately did not have the witnesses testify.  (*See id*. at 6608 ("And so like to just present two or three versus the ten, I would probably feel compelled not to present any.").)  That decision is not the Court's error.

Even absent these witnesses, the defendant brought out that he was pro-development and that his interactions with the undercover agents, and with others on behalf of their project, were in keeping with his typical political activities.  (*See, e.g.*, Doc. 269, PageID 6661-62 (Blocher testified the defendant "was, as a general matter, more active than most of his colleagues, during the time that I was there, at least."); *id*. at PageID 6684 (Seelbach: "P.G. absolutely was the pro-development, pro bringing jobs to our city person on council.  That is what he was known for.  He didn't vote against a single development deal in the decade that we were on council together."); *id*. at PageID 6725 (Sittenfeld testimony about homeless veteran housing project and communications with Ms. Brunner about it); *id*. at PageID 6757 (Sittenfeld: "I also – this is kind of a point of pride for me, across nine years at City Hall is I engage with everybody from all walks of life."); *id*. at PageID 6760-61 (Sittenfeld: "[N]o matter what a person's position on supporting my candidacy or not was, if they were doing something that was good for the city, I would always vote with them.").)  Perhaps that is why the defendant does not endeavor to explain what specific witnesses or testimony he would have pursued absent the Court's limitations.

To be clear, those limitations that the Court placed on the evidence were in keeping with the law.  The Sixth Circuit in *Dimora*—a bribery case—upheld the district court's decision to exclude prior good act evidence offered by the defendant.  *See Dimora*, 750 F.3d at 630-31 ("For the same reason that prior 'bad acts' may not be used to show a predisposition to commit crimes, prior 'good acts' generally may not be used to show a predisposition not to commit crimes.").[5] This conclusion was consistent with those reached by multiple other circuits in bribery and

_____

[5] In his motion, the defendant again invokes "plus factors" as some basis for distinguishing *Dimora*.  The concept of "plus factors" originates from an inapposite district court case that has since been reversed by the Sixth Circuit.  *See United States* v. *Inman*, 39 F.4th 357, 367–68 (6th Cir. 2022).

corruption cases. *See, e.g.*, *United States* v. *Dawkins*, 999 F.3d 767, 792-93 (2d Cir. 2021); *United States* v. *Fattah*, 914 F.3d 112, 175-76 (3d Cir. 2019); *United States* v. *Marrero*, 904 F.2d 251, 259-60 (5th Cir. 1990).

The Court allowed the defendant to call witnesses who would allegedly testify to the defendant's prior good acts. That he chose not to does not create error by the Court.

**E. The Court Never Excluded Sittenfeld's Purported Experts.**

The defendant asserts now that this Court erred by excluding the testimony of Caleb Burns and Edward FitzGerald, and therefore he deserves a new trial.

Before trial, the Government filed a Motion to Exclude Expert Testimony to bar Burns and FitzGerald's testimony. The Court "defer[red] ruling . . . until after *voir dire* of the relevant experts." (Doc. 190, PageID 2965). On the first day of trial, the Court reemphasized its willingness to consider the admission of expert testimony. (Doc. 261, PageID 5314 ("And so what I'd like to do is sort of see how it comes in, and then either during the defense case, I can give instructions, or my preliminary inkling would be to have Mr. Burns address whatever we need to in terms of sort of resetting the table on the campaign finance side, if that ends up being an important part of the case.").) The defense presented both experts as witnesses during jury selection. (Doc. 219, PageID 3381.) Nearing close of the Government's case, the Court discussed with the defense whether an expert was needed on the campaign finance. (Doc. 266, PageID 6188-97.) The Court later asked the defense again about Burns. (*Id*. at PageID 6310 ("So when will we need to make a final decision on Mr. Burns here? The government is going to rest tomorrow. Would you need to have him here tomorrow or Thursday?").)

After soliciting the parties for a jury instruction to address the campaign finance issues that the defense witness was supposedly going to speak on, the Court then met with the parties to further craft the instruction that would address concerns about campaign finance law. (*See* Doc. 266, PageID 6389-6402.) Based on testimony elicited the next day, the Court indicated it would

"expand the instruction" on campaign finance. (Doc. 267, PageID 6464-66.) Ultimately, the Court's proposed instruction on campaign finance law was accepted by both the defendant and the Government without objection. (*See* Doc. 272, PageID 6938.)

The defense never produced their witnesses for *voir dire*. Instead, they worked on drafting an instruction to the jury about the campaign finance issue and signed off on the Court's approach. The ruling they now claim was error never happened – instead, they abandoned any effort to bring the witnesses forth. In fact, the Court only ruled on the Government's Motion to Preclude the witnesses weeks after the verdict, denying it as moot. (*See* Notation Order (July 21, 2022).) As with their good act witnesses, they cannot get a new trial on the basis of their strategic decision.

**F. There Was No Extraneous Influence on the Jury.**

After numerous filings about Juror X's Facebook posts, we have finally reached the point at which the defendant must detail the prejudice he alleges resulted from this social media activity. *See In re: Sittenfeld*, 49 F.4th 1061, 1067 (6th Cir. 2022) ("If after the post-verdict *Remmer* hearing, the defendant has carried the burden of proving actual prejudice from an outside influence, the court must vacate the conviction and allow for a new trial. If not, the conviction must stand." (internal citations omitted).). The defendant presents nothing. Instead, he argues that he should have been given a chance to conduct a forensic examination of Juror X's phone – a position that was roundly rejected by the Sixth Circuit. *See id*. There was no prejudice to the defendant from Juror X's Facebook activity, as he concedes.

Now, more than three months after the verdict, the defendant introduces a new extraneous influence on the jury – a reporter's interview of Steve Goodin in the hallway outside of the courtroom on an unspecified day. This new claim is based on an affidavit from an attorney with the defense firm dated more than two weeks after the verdict and an affidavit from another

18

individual known to the defense dated a month after the verdict.[6]  (*See* Doc. 271-1.) This incident was never timely raised before the Court, nor was it even mentioned in the numerous motions filed by the defense demanding hearings and forensic deep-dives on supposed juror misconduct.

Nonetheless, the defense had the opportunity to question two jurors repeatedly about this supposed interference (and any other hallway or bathroom conversation) at the second juror hearing ("*Remmer* II").  (*See, e.g.*, Doc. 249, PageID 4877 ("Do you remember hearing people like the press in the hallway talking about their interpretation of the witness testimony while you were standing the hallway with other jurors?"); *id*. at PageID 4879 ("Without having to go into specific details about what you heard from folks in the hallway who were either talking to each other or on

___

[6] The curious timing of these revelations invites further exploration.  "During the later stages of the trial," when this alleged incident occurred, defense counsel did not raise it with the Court.  On July 8th, when the parties met *in camera* to discuss Juror X's social media posts, defense counsel did not mention it either. On July 12th, the defendant filed a motion for leave to contact the other jurors.  The motion did not disclose the alleged hallway incident, instead claiming that their need to contact jurors was "particularly acute given the previously-disclosed social media posts[.]"  (Doc. 210, PageID 3280).    The Government filed its opposition on July 20th.  On July 22nd, the defendant filed a motion for leave to conduct forensic exams of all of Juror X's devices, again without reference to the hallway incident.  Ms. Rittgers's affidavit was completed on July 26th.  Two days later, on July 28th, the defendant filed his reply to the Government's opposition.  In the reply, the defendant noted that he need only raise a "colorable claim of extraneous influence" to get further examination of jurors, but again failed to mention the hallway incident.  On August 3rd, this Court issued its order permitting the defendant to question two additional jurors at a future hearing. In that order, the Court recounted that "the only evidence of possible 'extraneous' information consists in the two comments on Juror X's Facebook posts discussed above."  (Doc. 234, PageID 4159).  Ms. Crain's affidavit was completed on August 9th.  The second *Remmer* hearing was held on August 18th.  At that hearing, while defense counsel asked numerous questions about hallway and bathroom interference, at no point did counsel detail the specific hallway incident or provide the affidavits that they had in their possession.  Defense counsel only hinted vaguely at the statements.  (*See* Doc. 249, PageID 4880 ("There are a couple of people that have indicated to us that there were actual interviews of pundits, like talking heads, by the press near you all while you were lined up.")).  And defense counsel did not reference them even in his argument at the conclusion of the hearing.  (*See, e.g.*, *id.* at PageID 4908-09 ("At least now we have one juror who doesn't have much of a recollection, although she recognized as people there and talking to the press corps.  Another juror has at least enough of a recollection to know that there were comments about these talking heads' interpretation of what was happening inside the courtroom during the trial and at multiple points during the trial within earshot of jurors and in much closer earshot to many other jurors who we have not spoken with or inquired.  So we would ask to inquire with those other jurors.").  It is only now, months later, that they attach these affidavits for the first time to argue that this Court erred by not allowing further inquiry into an incident they did not previously bring to the Court's attention during the multiple hearings and filings concerning supposed juror misconduct.  Deliberately withholding information from the Court—for gamesmanship or any other reason—cannot create substantial legal error that warrants a new trial.

their cell phones, do you recall that happening almost every day when you all were lined up in the hallway?"); *id*. at PageID at 4896 ("I mean, did you hear them talking when you all were lined up in the hallway about their interpretation of what was going on in the courtroom?"); *id*. at PageID 4897 ("I'm asking about what you heard when you were waiting in the hallway about people's interpretations about what happened in the courtroom.").) Nothing came of it, and both jurors testified that no extraneous influence was brought to bear on deliberations.

Yet the defendant argues now that he deserves a new trial because he was not granted permission to contact "any of the seven[7] jurors who were in closer earshot" to press conversations in the hallway. (Doc. 271, PageID 6910.)

Because their fishing revealed nothing valuable to their efforts to overturn the jury's verdict, the defense now argues that the Court erred by not allowing them to continue to cast their line. *But see United States* v. *Wright*, 506 F.3d 1293, 1303 (10th Cir. 2007) ("District courts have wide discretion to restrict contact with jurors to protect jurors from fishing expeditions by losing attorneys." (internal quotation marks omitted).) As the Sixth Circuit recognized, this issue has truly been exhausted. "Sittenfeld has now interviewed four jurors—fully one-third of the jury— none of whom described any discussion of external sources or information." *In re: Sittenfeld*, 49 F.4th at 1080 (Gibbons, J., concurring). His motion for a new trial on this basis should be denied.

---

[7] Where this number comes from is a mystery. One juror testified she was fifth in line in the hallway. (Doc. 249, PageID 4878).

## Conclusion

The defendant received a fair trial and the jury's guilty verdicts were not against the manifest weight of the evidence. There is no basis to conclude the interest of justice requires a re-do, and the defendant's motion should be denied.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

/s/*Megan Gaffney Painter*
MATTHEW C. SINGER (IL 6297632)
EMILY N. GLATFELTER (0075576)
MEGAN GAFFNEY PAINTER
(NY 4849220)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing Response in Opposition to Motion for a New Trial was filed electronically this 21st of October, 2022, and served upon all counsel of record via the Court's CM/ECF system.

*s/Megan Gaffney Painter*
MEGAN GAFFNEY PAINTER (NY 4849220)
Assistant United States Attorney