## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No.: 1-20-cr-142 |
| v. | Hon. Douglas R. Cole |
| ALEXANDER SITTENFELD, a/k/a "P.G. Sittenfeld," | DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR A NEW TRIAL |
| Defendant. | |

A memorandum in further support of Mr. Sittenfeld's motion pursuant to Federal Rule of

Criminal Procedure 33(a) is attached.

Respectfully submitted,

RITTGERS & RITTGERS

/s/Neal D. Schuett
Charles H. Rittgers
Charles M. Rittgers
Neal D. Schuett
Gus J. Lazares
Rittgers & Rittgers
12 East Warren Street
Lebanon, OH 45036
(513) 932-2115
neal@rittgers.com
*Counsel for the Defendant*

RITTGERS & RITTGERS

## MEMORANDUM

What remains of the Government's case fails for the reasons in Mr. Sittenfeld's pending motion for a judgment of acquittal. But to the extent either of the remaining counts survive dismissal, a new trial is warranted. Mr. Sittenfeld's convictions were (at minimum) against the manifest weight of the evidence, the Government unconstitutionally deviated from the indictment by prosecuting a different case than what the grand jury indicted, and several trial errors prejudiced Mr. Sittenfeld's ability to defend himself. The Government disagrees, but its responses are unpersuasive.

## I. Mr. Sittenfeld's convictions were against the manifest weight of the evidence.

Should this Court find that there is sufficient evidence to support either of Mr. Sittenfeld's remaining convictions as a matter of law, it should nonetheless vacate those convictions in its capacity as the "thirteenth juror," *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998) (citation omitted). The same arguments that demonstrate the legal insufficiency of the Government's proof support vacatur under the manifest weight standard. As the Court knows—and as the Government does not deny—that standard permits the Court to consider the extensive evidence that "preponderates heavily" against Mr. Sittenfeld's convictions. *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007). This includes Mr. Sittenfeld's insistence on compliance with the campaign finance laws, his consistent evasion of invitations to luxury vacations, his repeated efforts to cover meals with the undercover agents, his discouraging Rob from making an additional contribution, his introducing Rob to a various civic leaders, and his rejection of the record's only (arguably) express offer a *quid pro quo*. *See* Def.'s Mot. for a New Trial at pp. 4–5, 9 Dkt. 271 (collecting citations). Finally, although inconsistent verdicts do not *themselves* require reversal, *see United States v. Powell*, 469 U.S. 57, 64–65 (1984), the inconsistency in this verdict certainly *corroborates* the basic flaws in the Government's case, *id.* at 65 (recognizing that inconsistent

verdicts reflect "uncertainty").

The Government's attempts to reconcile the jury's verdicts on counts one, three, and four go nowhere. Mr. Sittenfeld obviously used telephones and other electronics, so it is laughable to suggest, as the Government does, that "a wire transmission 'in interstate commerce in furtherance of the scheme'" is what rationally differentiated the verdicts. Gov't's Opp'n to Mot. for Acquittal at p. 10, Dkt. 276. And the Government's alternate suggestion that the jury acquitted Mr. Sittenfeld of wire fraud because it declined to find a "'scheme to defraud' encompassing the entire relevant period," *id.*, makes no sense either. The Court instructed the jury that count one alleged a "bribery scheme" for which the government needed to prove an "explicit" *quid pro quo*. ECF 202 at pp. 23, 25. That is the *same* requirement that defined counts three and four. *See id.* at pp. 32–35, 37–38, 42. The jury instructions nowhere required that the bribery scheme "encompass[] the entire relevant period," let alone defined what that period might be. *See id.* at p. 22–31. There is simply no rational explanation for the verdict—other than the Government's prejudicial variance, as discussed further below.

Finally, the Government's stock paragraphs on the standard of review for Rule 33(a) motions do not address the extraordinary circumstances in this case, which Mr. Sittenfeld has previously detailed at length. The standard for overturning a jury verdict as against the weight of the evidence is, of course, a high one. But it is amply met in this case, where all of the key interactions were recorded in real time, the jury itself was clearly confused about the charges, and, most importantly, the prosecution is treading upon some of the most fundamental constitutional values in our democratic process.

## II.     The Government Unconstitutionally Deviated From the Indictment.

This Court should additionally reverse Mr. Sittenfeld's convictions because the Government unconstitutionally deviated from the Grand Jury's indictment. The Government did

so in two respects: first, by seeking to convict Mr. Sittenfeld for soliciting a bribe from Mr. Ndukwe (rather than "Rob") and, second, by pressing the arguments that Mr. Sittenfeld hedged donors and received unlawful straw donations. The Government's defense of its conduct fails on both fronts.

**1.** To start, the indictment charges Mr. Sittenfeld with soliciting a bribe from Rob—not Mr. Ndukwe. *See* Gov't's Opp'n at pp. 5–8. This is not unclear or ambiguous. The indictment charges federal programs bribery in three steps. It opens with jurisdictional allegations, which are not at issue here. *See* ECF 3 at p. 16. It next recites the substantive elements of 18 U.S.C. § 666(a)(1)(B), quoting directly from that statute. *See id.* at pp. 16–17. And lastly, after the phrase "to wit," it alleges how the Government will seek to prove those elements in this case. *Id.* Specifically, it alleges that Mr. Sittenfeld "corruptly solicited" payments "from UCE-1" (*i.e.*, Rob and not Mr. Ndukwe). *Id.*

The Government tries to portray the phrase "to wit" as synonymous with "for example," *id.* at 5, but that is wrong textually and nonsensical logically. Textually, the phrase "to wit" — means "[t]hat is to say" or "namely." *To Wit*, Black's Law Dictionary (11th ed. 2019); *see also To Wit*, Oxford English Dictionary (3d ed. 2020) ("that is, namely"); *To Wit*, American Heritage Dictionary of the English Language (3d ed. 1992) ("That is to say; namely"). It thus introduced the specific means by which the grand jury charged Mr. Sittenfeld with a crime and did not merely "illustrate" one of the many ways in which he might have committed a crime. Gov't's Opp'n at p. 5. Logic confirms as much, as the entire point of an indictment's counts is to explicate the specific alleged crime. The counts ensure the grand jury has actually found probable cause to indict and guarantee the defendant proper notice of the charges against him. These purposes would be defeated if the government could secure an indictment via an "illustrative" example of one potential crime and then secure a conviction for something different.

The rest of the indictment confirms as much. Throughout, it distinguishes between the general elements of the charged offenses and specific allegations regarding those elements. *See* ECF 3 at pp. 16–19. In that context, introducing the specific allegations with "to wit" makes sense only as a means of defining the specific charged conduct. And if the contents of the indictment's various "to wit" clauses were purely illustrative, as the Government contends, there would have been no reason for the indictment to specify different bribery victims with respect to different counts. *Compare* ECF 3 at p. 17 ("from UCE-1"), *with id.* at 18 ("from UCEs").

Nor can this Court simply ignore the "to wit" clauses, as the Government alternately urges. *See* Gov't's Opp'n at p. 5. As then-Judge Gorsuch explained in *United States v. Farr*, the "settled" rule is that "language employed by the government in its indictment[] becomes an essential and delimiting part of the charge itself, such that if an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with those particulars." 536 F.3d 1174, 1181 (10th Cir. 2008) (internal quotation marks and brackets omitted); *accord United States v. Miller*, 891 F.3d 1220, 1235 (10th Cir. 2018); *see also United States v. Pierson*, 925 F.3d 913, 920 (7th Cir. 2019), *vacated on other grounds*, 140 S. Ct. 1291 (2020) (similar). Applying that rule, the federal courts of appeals consistently vacate convictions based on constructive amendments of "to wit" clauses. *See, e.g.*, *United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir. 1994) (indictment for using a firearm in relation to a drug trafficking crime, "to wit: the distribution of cocaine," did not permit convicting the defendant in connection with mere possession); *United States v. Leichtnam*, 948 F.2d 370, 379–80 (7th Cir. 1991) (indictment for using "to wit, a Mossberg rifle" did not permit convicting a defendant for using a handgun); *United States v. Weissman*, 899 F.2d 1111, 1115 (11th Cir. 1990) (indictment for activity within a particular criminal enterprise, named in a "to wit" clause, did not permit convicting the defendants for involvement in a different enterprise); *Howard v. Daggett*, 526 F.2d 1388, 1389–90 (9th Cir. 1975)

5

(per curiam) (indictment for inducing two persons, named in "to wit" clause, into prostitution did not permit convicting the defendant with respect to other persons).

The Government's outlier authorities are not persuasive. *See* Gov't's Opp'n at p. 5. None of its published authorities purport to issue a rule about "to wit" clauses generally. *But see United States v. Rosner*, 2022 WL 683010, at *4 (S.D.N.Y. Mar. 8, 2022) (misreading *United States v. Agrawal*, 726 F.3d 235 (2d Cir. 2013), to contain such a rule). Instead, those authorities follow Second Circuit precedent for the proposition that no constructive amendment occurs where the Government varies from the "means" charged in an indictment. *Agrawal*, 726 F.3d at 261; *see also United States v. Berger*, 224 F.3d 107, 118 (2d Cir. 2000); *United States v. Lopez*, 4 F.4th 706, 728–29 (9th Cir. 2021) (relying on *United States v. D'Amelio*, 683 F.3d 412 (2d Cir. 2012)). But granting the Government total freedom in proving the means of a crime is inconsistent with *Stirone v. United States*, 361 U.S. 212 (1960), which found a constructive amendment based on the difference between two means of unlawfully interfering with interstate commerce—to wit, interfering with sand shipments and interfering with steel shipments. *See id.* at 217. Following this handful of out-of-circuit authorities would also be inconsistent with *United States v. Ford*, 872 F.2d 1231 (6th Cir. 1989), which turned on the difference between possessing a firearm in *September* 1987 (charged) and *August* 1987 (uncharged). *See id.* at 1236–37.

The Government likely loses under even its preferred authorities as well, though, since the allegations regarding Mr. Ndukwe turned on a *different* "set of discrete facts" than the allegations regarding Rob. *Agrawal*, 726 F.3d at 260 (citation omitted). Indeed, the allegation that Mr. Sittenfeld entered an explicit *quid pro quo* with Mr. Ndukwe on October 30, 2018 is wholly distinct from the allegation that he entered a *quid pro quo* with "UCE-1" (ECF 3 at p. 17) in the following month. Any difference between the Second Circuit's standard and *Farr*, *Stirone*, and *Ford* is thus ultimately irrelevant.

6

The Government next argues that it did not constructively amend the indictment because "the October 30th solicitation of Mr. Ndukwe and ultimate payment by Rob [] were part of the same story." Gov't's Opp'n at p. 6. But that is beside the point. The Government did not merely introduce the October 30 statement as relevant to Mr. Sittenfeld's *intent* in talking with Rob. Rather, the Government told the jury that this statement *itself* established an element of the charged crimes. *See* ECF 251 at p. 95. The Government thereby argued that the jury could convict Mr. Sittenfeld based solely on his interactions with Mr. Ndukwe and without regard to his interactions with "UCE-1." ECF 3 at p. 17. That was a textbook constructive amendment.

This constructive amendment severely prejudiced Mr. Sittenfeld. The Government litigated the vast majority of the case consistent with the clear terms of the indictment. *See, e.g.*, ECF 267 at p. 217 (representing "the *quid pro quo* for the two main incidents is set forth in the incident on November 7th and the incident on September 24th" in interactions with UCEs); ECF 250 at pp. 8–9, 18–23 (Rule 29 Conference) (declining to contest the defense's argument that the October 30 "statement" to Mr. Ndukwe "can't form the basis for the charges that are set forth in [counts] 4 and 6"); ECF 114 at p. 3 (Gov't's Trial Br.) (explaining that Mr. Ndukwe's "primary role [as of November 2, 2018] was to introduce the defendant to the UCEs for future interactions"). Mr. Sittenfeld thus had no way of knowing—at least not until the end of trial—that the Government was attempting to prosecute him for supposed crimes *beyond* what the indictment actually charged.

There are good reasons, too, for the Government declining to charge an offense involving Mr. Ndukwe. The Government had separately investigated Mr. Ndukwe for "criminal activity involving structured banking transactions, money laundering and aggravated identity theft." Def.'s Ex. 652 (Proffer Agreement). Mr. Ndukwe admitted (at least) to unlawfully structuring transactions. *See* ECF 196 at pp. 70–74. And he accordingly agreed to assist the investigation against Mr. Sittenfeld in the context of "potential plea negotiations" (*id.* at p. 67) that cast further

7

doubt on his credibility. Those considerations explain why the Government initially declined to make Mr. Ndukwe the centerpiece of its case. Having secured an indictment based on that decision, the Fifth Amendment prohibited changing course at trial.

In short, indictments are not "illustrations" of the upcoming criminal proceeding that remain subject to prosecutorial revision throughout. They are *the* critical document in a criminal case—memorializing what the grand jury charged and apprising the defendant of the specific allegations that he must defend against. The Government's eleventh hour redrafting of the grand jury's charges requires—at the very least—a new trial confined to the indictment's actual terms.

**2.** The Government next contends that Mr. Sittenfeld's argument is subject to plain error review. *See* Gov't's Br. at p. 5. But the cases it invokes all concern the requirement to contemporaneously preserve challenges to *jury instructions*. *See id.* at pp. 5, 10. Here, Mr. Sittenfeld's argument turns principally on the text of the indictment and the Government's efforts—especially in its closing argument—to convict him based on the uncharged October 30 exchange. The Government does not argue that Mr. Sittenfeld failed to preserve *those* arguments—or at least it has not made such an argument with the clarity this Court ordinarily requires. *See United States v. Johnson*, 44 0 F.3d 832, 846 (6th Cir. 2006) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). In failing to invoke plain error on this point now, the Government has forfeited its ability to do so going forward. *See United States v. McCarty*, 628 F.3d 284, 289 (6th Cir. 2010).

In any event, the constructive amendment in this case *was* plain error. To show plain error, a defendant must demonstrate "(1) that an error occurred . . . ; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected [his] substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Barnes*, 822 F.3d 914, 924 (6th Cir. 2016). Here, Mr. Sittenfeld has identified a textbook

8

constructive amendment. This error was obvious based on the text of his indictment and settled Fifth Amendment doctrine (including *Stirone*, *Ford*, and *Farr*). Mr. Sittenfeld also made a specific showing of prejudice in his opening brief, demonstrating that the constructive amendment is "all that could explain the jury's inconsistent verdict." Def.'s Mot at p. 9. Because it is now impossible to say "with certainty that … [he] was convicted solely on the charge made in the indictment" is a "fatal error," it is clear that the fairness and integrity of his trial have been undermined. *Stirone*, 361 U.S. at 217. Indeed, the Tenth Circuit recently found that a defendant satisfied plain error in nearly identical circumstances. *See Miller*, 891 F.3d at 1233 (constructive amendment was plain error where a "prosecutor's closing arguments . . . indicated that the jury could find Defendant guilty based on a false statement other than the indicted false statement").

For these reasons, a new trial is required regardless of the standard of review.

**3.** The Government separately argues that Mr. Sittenfeld cannot prove a constructive amendment for count four because the instructions for that count do not expressly mention solicitation. *See* Gov't's Opp'n at p. 8. But those instructions *did* permit convicting Mr. Sittenfeld for "agree[ing]" to accept a bribe. ECF 202 at pp. 37–38. A reasonable juror could have easily understood that phrase to encompass the Government's arguments about Mr. Ndukwe at trial— especially because count four (like counts one and three) turned principally on the existence of an explicit *quid pro quo*. *See id.* at p. 42. The Government itself takes this *exact* view of count four in the context of Mr. Sittenfeld's motion for acquittal, where it argues that the "October 30, 2018 recorded statement" suffices to support "the jury's verdict." Gov't's Opp'n to Mot. for Acquittal at p. 14. The Government cannot credibly oppose an interpretation of the jury's verdict that *it* just offered as a basis to leave it undisturbed.

**4.** The Government's response on the hedging and straw donor issues fares no better. To start, it was *the Government's* decision to place campaign finance issues at the forefront of its case.

*See* Gov't's Opp'n at p. 9. The Government elicited testimony that Mr. Sittenfeld developed target lists of potential donors, including developers with business before the city. *See* ECF 267 at p. 33 (Kamrass testimony). The Government elicited testimony that Mr. Sittenfeld (obviously) did not want those donors to support his electoral rival, *see id.* at p. 38, and also that he "would look more favorably upon those who contributed to him and only him, *id.* at p. 39. The Government elicited an allegation that Mr. Sittenfeld hedged on a specific lobbyist in November 2017—roughly one year before the events described in the indictment. *See* ECF 197 at p. 12 (Kincaid testimony). The Government emphasized that the Progress and Growth PAC did not bear Mr. Sittenfeld's name. *See* ECF 251 at p. 78. The Government elicited testimony that Mr. Sittenfeld received a straw donation from Mr. Ndukwe. *See* ECF 196 at pp. 32–33.

These decisions prompted the Court to note that "it's the government that's making these campaign finance issues somewhat of a focus in this litigation." ECF 267 at p. 55. And the Government's evidence and argument regarding hedging and straw donors was not incidental to that focus. Rather, it furthered the Government's global strategy of tarring Mr. Sittenfeld as corrupt *across-the-board*—guilty of not only the charged offenses but much more besides. That variance undermined the "overall fairness of the trial." *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998).

The Government's principal response is that a (different) disciplined prosecution might have used *some* of this evidence (*e.g.*, the hedging allegations) to illustrate Mr. Sittenfeld's intent in his meetings with Rob. *See* Gov't's Opp'n at pp. 8–9. But that is not how the Government argued *this* case. In its closing argument, the Government argued that the hedging testimony was "a direct tie between money and action taken in an official capacity," ECF 251 at p. 64, without any effort to cabin that argument to Mr. Sittenfeld's intent in November 2018. The Government's closing also accused Mr. Sittenfeld of soliciting straw donations, *see* ECF 251 at p. 78 ("A real

10

person?  That's not what matters.  What matters is if the person is the true source."); argued that using a leadership PAC was incriminating, *see id.* ("[his] name is not connected to [the PAC] in any way"); and argued that accepting donations from LLCs was improper, *see id.* at p. 143 ("Ask yourself, when looking at those PAC documents, how would anyone know that the payment went to Mr. Sittenfeld from Rob and Brian and Vinny? None of their names appear.").

The Government clearly believed that these arguments were prejudicial.  *See* Gov't's Opp'n at pp. 9–10.  That is why it made them in imploring the jury to convict and without regard for this Court's controlling campaign-finance instruction.  The Government's post hoc attempt to fall back on the jury instructions thus rings hollow.  For this reason, too, a new trial is necessary.

## II.     The Government's Remaining Arguments Fail.

This Court is familiar with Mr. Sittenfeld's remaining arguments for a new trial, as he raised and litigated them at earlier stages of this case.  He will accordingly respond only to the issues that the Government has raised for the first time in its opposition.

*First*, Mr. Sittenfeld properly preserved his challenge to the exclusion of *modus operandi* evidence.  *See* Gov't's Opp'n at pp. 15–16.  In a colloquy on June 29, 2022, Mr. Sittenfeld described eleven witnesses whose testimony would establish his "commonplace political . . . activities," *United States v. Terry*, 707 F.3d 607, 613 (6th Cir. 2013), and thereby rebut the Government's reliance on circumstance and innuendo.  *See* ECF 267 at pp. 203–20.  Mr. Sittenfeld also explained that it "would be ill advised of [him] to just put two or three of these people on," *id.* at p. 199, as it would invite the jury to infer that he was relying on isolated good acts, rather than his true *modus operandi*.  The Court ultimately ruled that it would permit testimony from two of the above witnesses but not the others.  *See id.* at pp. 220, 222.  And Mr. Sittenfeld challenged that ruling in the motion at issue, which was his first opportunity to do so.  *See* Def.'s Mot. at pp. 15–16.  Nowhere in that series of events did Mr. Sittenfeld forfeit his *modus operandi* argument,

11

as the Government now claims. *See* Gov't's Opp'n at pp. 15–16.

*Second*, Mr. Sittenfeld properly preserved his request to introduce Mr. Burns' testimony. *See* Gov't's Opp'n at pp. 17–18. The Government argues that Mr. Sittenfeld forfeited the request by failing to renew it after a colloquy on June 28. *See* ECF 266 at p. 127 ("So when will we need to make a final decision on Mr. Burns here?"). But the next day, Mr. Sittenfeld offered further argument in support of calling Mr. Burns. *See id.* at p. 54 ("we just now heard a lot of stuff about straw donor, and FEC, and it's just more reason why we need Caleb Burns"). The Court rejected that argument. *See id.* at p. 54 ("I think the jury instructions should address those concerns."). And Mr. Sittenfeld reasonably understood this exchange—which the Government neglects to mention, *see* Gov't's Opp'n at pp. 17–18—as definitively ruling against his request to call Mr. Burns. He instead understood the Court to hold, consistent with its prior comments, that its jury instruction adequately cured the Government's extensive argument on campaign finance issues, a position with which he respectfully disagrees.

*Finally*, Mr. Sittenfeld did not "introduce[] a new extraneous influence on the jury." Gov't's Opp'n at p. 18. During the *Remmer* hearing on August 17, 2022, one juror testified that "the press in the hallway [were] talking about their interpretation of the witness testimony" and that "other jurors . . . were in much closer earshot . . . to those conversations." ECF 249 at p. 21, 30–31. Mr. Sittenfeld highlighted this testimony in his argument to the Court. *See, e.g.*, *id.* at pp. 52–53 (flagging "talking heads' interpretation[s] of what was happening inside the courtroom . . . within earshot of jurors"). He also requested to speak with the jurors who were in closer earshot, *see id.* at p. 53, on the ground that the above juror's testimony raised a "colorable claim of extraneous influence," *United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999). The Court denied that request. *See* ECF 249 at pp. 53–54. And later, in challenging that denial, Mr. Sittenfeld timely attached two affidavits for the narrow proposition that the press' comments were prejudicial, *see*

Def.'s Mot. at p. 19—a point that he could have similarly proved through attaching news accounts from the local press.  No authority requires Mr. Sittenfeld to have introduced those affidavits at some earlier time.  Nor were the affidavits relevant to his earlier post-trial motions, which focused solely on a different juror's cellphone.  The Government's objection is accordingly baseless.

## **CONCLUSION**

For the reasons above, this Court should grant Mr. Sittenfeld's motion for a new trial.

Respectfully submitted,

*/s/ Neal D. Schuett*
Charles M. Rittgers
Charles H. Rittgers
Neal D. Schuett
Rittgers & Rittgers
12 East Warren Street
Lebanon, OH 45036
(513) 932-2115
charlie@rittgers.com
*Counsel for the Defendant*
Date: November 4, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed with the Court's CM/ECF System provided to on this 4th day of November, 2022, which provides electronic notice to all parties.

*/s/ Neal D. Schuett*
Neal D. Schuett
*Counsel for the Defendant*
