No. 22-3681

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 24, 2023
DEBORAH S. HUNT, Clerk

In re:  CINCINNATI ENQUIRER, a division of )
Gannett GP Media, Inc.,                    )        O R D E R
                                           )
        Petitioner.                        )

Before:  SILER, GIBBONS, and MATHIS, Circuit Judges.

Interested Party The Cincinnati Enquirer ("the Enquirer"), a division of Gannett GP Media, Inc., petitions this court for a writ of mandamus directing the district court to disclose and make available to the public the juror questionnaires completed as part of the *voir dire* process in *United States v. Sittenfeld*, 20-cr-142 (S.D. Ohio).  Defendant Alexander Sittenfeld and the district court respond.

"[T]he writ is one of the most potent weapons in the judicial arsenal," and "only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify [its] invocation."  *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004) (internal quotation marks and citations omitted).  To preserve its use in only "extraordinary causes," a petitioner must satisfy three conditions before the writ will issue.  *Id.* (citation omitted).  First, the petitioner must have no adequate alternative means to obtain the relief they seek—"a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process[.]"  *Id.* at 380–81.  Second, the petitioner must show a "clear and indisputable" right to issuance of the writ.  *Id.* at 381 (citation omitted).  Finally, the petitioner must show that issuing the writ is otherwise "appropriate under the circumstances."  *Id.*

In its petition, the Enquirer asserts that the First Amendment right to open judicial proceedings applies to juror questionnaires. The Enquirer quotes *In re Memphis Publishing Co.*, 887 F.2d 646, 648 (6th Cir. 1989), for the proposition that "there is a strong presumption of open voir dire examinations," meaning that "[c]losure must be justified by the finding of an overriding governmental interest" that is "articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." It further cites *In re Memphis Publishing* to assert that closure must be "narrowly tailored to serve [the governmental] interest." *Id*. Thus, the Enquirer argues, the district court's failure to specifically articulate its reasons for withholding the questionnaires was an abuse of discretion that justifies mandamus relief.

As we recognized in *United States v. Beckham*, 789 F.2d 401, 403 (6th Cir. 1986), however, there are actually two sources for the public right of access to judicial proceedings: the Constitution and the common law. In *Beckham*, we drew a hard line between the two sources, relying on the Supreme Court's decision in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 608 (1978), to distinguish between "the media's and public's constitutional right to attend criminal trials"—i.e. a First Amendment right to be physically present while court is in session—and "the general, common-law right to inspect and copy public records and documents, including judicial records and documents"—i.e. the right to review exhibits, pleadings, and other items involved in the trial. *See* 789 F.2d at 406, 409.

Both rights are justified by important public interests. *See, e.g.*, *Press–Enter. Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 508–09 (1984) (discussing the societal import of confidence in standards of fairness). But the distinction is relevant because the source of the right dictates its scope, as well as the trial court's burden to protect the right. The Enquirer is correct that, when the constitutional right is implicated, closure is justified only "if it is 'essential to preserve higher

values' and is 'narrowly tailored' to serve such ends." *In re Search of Fair Fin.*, 692 F.3d 424, 429 (6th Cir. 2012) (quoting *Press-Enter. Co. v. Super. Ct. of Cal.*, 478 U.S. 1, 9 (1986) (*Press-Enter. II*)). When one must instead rely on the common law right, "the decision as to access is one best left to the sound discretion of the trial court . . . to be exercised in light of the relevant facts and circumstances of the particular case." *Warner Commc'ns*, 435 U.S. at 599. The Enquirer asserts that its public access right is a constitutional one, while the district court asserts that it falls in the latter category.

The Enquirer's reliance on a constitutional public access right is misplaced. It argues that a narrowly tailored closure is required because the juror questionnaires are part of "open voir dire examinations" implicating the First Amendment. *See In re Memphis Publishing Co.*, 887 F.2d at 648. However, that argument ignores a threshold inquiry established in *Press-Enter. II*. Because the First Amendment right of access is not "absolute," *see Press-Enter. II*, 478 U.S. at 9, a court must first make two "complementary considerations" to determine whether there is a "qualified right of access" to the proceedings or documents. *Appl. of Nat'l Broad. Co., Inc.*, 828 F.2d 340, 343–45 (6th Cir. 1987) (citing *Press-Enter. II*, 478 U.S. at 8). If there is a "tradition of accessibility" and if the public access "plays a significant positive role in the functioning of the particular process in question," then a qualified right of access attaches; it must then be weighed against other considerations before assessing the value and tailoring of any restriction. *Id.* at 344. The Enquirer's failure to grapple with the *Press-Enter. II* test undermines its argument that the First Amendment applies to the questionnaires and that the district court failed to meet the constitutional standard for closure. As a result, the Enquirer has not shown a clear and indisputable entitlement to the writ based on this right.

Moreover, *Warner Communications* indicates that the press has no constitutional right to obtain materials "to which the public has never had . . . access." 435 U.S. at 609. Thus—to paraphrase *Beckham*—"[i]f a right to [the questionnaires] in this case exists, it must come from a source other than the Constitution." 789 F.2d at 409; *see also In re Search of Fair Fin.*, 962 F.3d at 431 (applying *Beckham*'s two-source approach). Assuming then that the common-law right to inspect and copy records applies, "the decision as to access is one best left to the sound discretion of the trial court, . . . to be exercised in light of the relevant facts and circumstances of the particular case." *Warner Commc'ns*, 435 U.S. at 599.

When examined under the appropriate, and more deferential, lens for access under the common-law right, the district court's refusal to disclose the juror questionnaires passes muster.[1] The *Beckham* Court guided courts considering the common-law right of access to court documents to "weigh[] the interests advanced by the parties in light of the public interest and the duty of the court"; "exercise an informed discretion as to release of the [documents]"; and maintain "a sensitive appreciation of the circumstances that led to their production." 789 F.2d at 409 (citing *Warner Commc'ns*, 435 U.S. at 602-03). *Beckham* also instructs us to consider "the court's supervisory powers, the amount of benefit to the public from the incremental gain in knowledge that would result from [reading the documents] themselves, the degree of danger to the defendants or persons [discussed in the documents], the "possibility of improper motives on the part of the media such as promoting public scandal or gratifying private spite, and any special circumstances

---

[1] The district court earlier framed this inquiry as a First Amendment issue requiring the "particularized findings" and "narrow tailoring" but it now asserts in its response in this Court that such findings are unnecessary. *See* DE 233, Op. & Order, at Page ID 4147-48. As explained here, we agree.

in the particular case." *Id.* Trial courts must "apply a presumption in favor of access," but we will typically uphold a district court's denial of access unless it was an abuse of discretion. *Id.*

We now turn to the specific public access right that the Enquirer seeks. The Enquirer asserts three apparent interests in obtaining the questionnaires. Citing other courts' reasons for granting access, the Enquirer seeks to (1) provide transparency in the juror-selection process by identifying bias in jury selection, an individual juror's own bias or confusion, or intentional misrepresentation by a juror during *voir dire*; (2) assist in arranging post-verdict interviews that educate the public about the judicial process and could identify misconduct or system-wide problems; and (3) assert the general public interest in transparency as a check on government.

Providing the questionnaires would offer little "incremental gain in knowledge" as to the first or third interest. *Beckham*, 789 F.2d at 409. The district court has already provided demographic information about the jurors and alternates that includes aggregate breakdowns by sex, age, race, occupation, county of residence, and education. The actual *voir dire* was conducted in public, during which time jurors were examined as to nearly everything asked in the questionnaires except their personal identifying information and private information they shared at sidebar—which the Enquirer has previously indicated it would be willing to forego. In addition, the district court has maintained "a sensitive appreciation of the circumstances that led to the[] production" of the juror questionnaires. *Id.* The introductory paragraph at the top of the questionnaire informed the reader that their answers would be shared with the judge and the lawyers but would not be publicly disseminated.

The district court reasonably weighed the Enquirer's final asserted interest in facilitating juror interviews against the jurors' interest in privacy and the risk to ongoing proceedings in the district court surrounding alleged juror misconduct. The district court's additional concerns

regarding future panel members' willingness to serve and the potential for harassment by news media are somewhat less concrete and therefore more difficult to assess, but on balance, the district court "exercised an informed discretion," considering its supervisory powers, the relatively small incremental gain in knowledge to be had, and the assurances it had made to the prospective jurors. *Id.* The district court did not abuse its discretion when it denied the Enquirer's motion in light of the particular circumstances of the case.

Accordingly, the petition for a writ of mandamus is **DENIED**.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk