# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                           Case No. 1:20-cr-142

     v.                       JUDGE DOUGLAS R. COLE

ALEXANDER SITTENFELD,

     Defendant.

## OPINION AND ORDER

Defendant Alexander "P.G." Sittenfeld moves this Court for acquittal (Doc. 270) and for a new trial (Doc. 271) on multiple grounds. Some are a closer call than others. Ultimately, though, the Court concludes that none is meritorious. Accordingly, as explained below, the Court **DENIES** both Motions.

## BACKGROUND[1]

Sittenfeld is a former Cincinnati City Council member. On November 18, 2020, the government indicted him on two counts each of honest services wire fraud, bribery, and attempted extortion under color of official right in connection with political fundraising activities. Generally speaking, the government claimed that Sittenfeld solicited and accepted money in exchange for agreeing to vote for and otherwise support a real estate development project that would later come before the Council. (*See* Doc. 3). The matter went to trial on June 21, 2022. On July 8, a jury

---

[1] The Court has thoroughly summarized the record in this case many times and thus need not do so here. Record cites are included for facts the Court uses to explain its decisions.

found Sittenfeld guilty of two of the six counts. On September 30, Sittenfeld filed the instant motions. (Docs. 270, 271). The Court heard argument on the motions on December 5, 2022.

## LAW AND ANALYSIS

### A.    Motion for Acquittal

Federal Rule of Criminal Procedure 29 permits a court to enter a judgment of acquittal if it finds the evidence "insufficient to sustain a conviction." Fed. R. Crim. P. 29. The Court views the evidence "in the light most favorable to the prosecution," asking only whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Paulus*, 894 F.3d 267, 275 (6th Cir. 2018).

During its review, the Court will "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). And the evidence before the Court need not "remove every reasonable hypothesis except that of guilt." *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004). In short, the Court cannot—and will not—substitute its judgment for the jury's so long as a rational trier of fact could have reached the result that the jury did.

Against that backdrop, Sittenfeld contends the Court should grant his Motion for Acquittal for three main reasons. (*See generally* Doc. 270). First, he believes that the government did not adequately prove the existence of a quid pro quo. (*Id.* at #6875–90). Second, he believes that the government did not legally prove the

existence of an agreed-upon official act. (*Id.* at #6890–91). And third, Sittenfeld believes that if 18 U.S.C. § 666 and § 1951 reach his conduct, each is unconstitutional. (*Id.* at #6891–92). The government, for its part, disagrees with each of Sittenfeld's points. (*See generally* Doc. 276).

### 1. A Rational Jury Could Have Found A Quid Pro Quo.

Start with Sittenfeld's argument that the government did not adequately prove that a quid pro quo existed. (Doc. 270, #6875–78). That requirement attaches to both counts on which the jury convicted him: Count 3 (federal funds bribery, in violation of 18 U.S.C. § 666(a)(1)(B)) and Count 4 (attempted extortion under color of official right, in violation of 18 U.S.C. § 1951). The Court's instructions made this quid pro quo requirement clear. (*See* Doc. 202, #3221–32).

A quid pro quo is adequately shown if Sittenfeld "obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Evans v. United States*, 504 U.S. 255, 268 (1992). That quid pro quo must be "explicit" but need not be express. *McCormick v. United States*, 500 U.S. 257, 273 (1991). Put differently, although the government need not show that the parties exchanged a precise written or oral statement of the deal, Sittenfeld must have "assert[ed] that his official conduct [would] be controlled by the terms of the promise or undertaking." *Id.* The Motion spends several pages reviewing the law on quid pro quos. But neither party disagrees with the law here. As the government notes in its response and as Sittenfeld noted at trial, "[e]verything comes down to what P.G. [Sittenfeld] intended." (Doc. 276, #6974; Doc. 251, #5040). *That* is where the parties disagree.

3

More specifically, the parties disagree about whether an ambiguous statement provides an adequate basis for a jury to find intent. Sittenfeld claims that the explicitness requirement "is a demanding one," (Doc. 270, #6878), and that this means that the agreement "must be *unambiguous*," (*id.* at #6879). According to Sittenfeld, so long as the underlying statements and conduct are even "susceptible to an innocuous explanation," they cannot provide the basis for criminal liability. (*Id.*). The government takes a different view. Starting from the proposition that "matters of intent are for the jury to consider," *McCormick*, 500 U.S. at 270, the government claims that it falls to the jury to consider the allegedly ambiguous words and actions in context and determine whether they reflect an "explicit" deal. (Doc. 276, #6974).

The government has the better of this argument. According to the Sixth Circuit, "[t]he trier of fact is 'quite capable of deciding the intent with which words are spoken or actions taken as well as the reasonable construction given to them by the official and the payor." *United States v. Terry*, 707 F.3d 607, 614 (6th Cir. 2013). In other words, faced with ambiguity, it is the jury's job to construe the language and conduct. Only if the jury's construction is "unreasonable" could this Court intervene. So long as the facts here could reasonably be interpreted to give rise to a finding of intent to enter an explicit deal, that is enough to support the verdict on this element.

The evidence here passes that test. Perhaps the best example relates to the $10,000 contribution that Sittenfeld solicited from Chinedum Ndukwe. (Doc. 266, #6242). In a later call between Sittenfeld and Ndukwe, in which the two were discussing Ndukwe raising funds from his "network," Sittenfeld told Ndukwe, "You

4

don't want me to be like, sorry, Chin, love you but can't." (*Id.*, #6247). Ndukwe testified that he understood that statement as conditioning Sittenfeld's support for his project on receipt of donations. (*Id.* at #6247). A reasonable jury could have reached the same conclusion. The government also showed that the project did not initially have the support of Cincinnati economic development officials but that Sittenfeld, after more than one explicitly corrupt offer had been made, would "shepherd the votes." (Exh. 20D). This is nowhere near all the evidence. The record backs up those statements with hours of recordings and testimony, which the jury also heard.

Sittenfeld argued at trial and continues to argue today that the evidence "falls short of the legal line." (Doc. 270, #6881). In other words, he contends that he never took part in any quid pro quo arrangement, rejected other corrupt offers, and never intended to act illegally. But none of these arguments persuade the Court to overturn the jury's decision. To start, Sittenfeld uses the wrong standard. As noted above, he claims that, so long as there is a "plausible alternative explanation" he cannot be liable. Not so. The Court does not consider whether an alternative explanation exists or whether the jury reasonably could have acquitted on the evidence. Rather, the Court considers whether the jury's actual determination—here, that the evidence presented by the government showed Sittenfeld's guilt beyond a reasonable doubt— was a result that a rational jury could have reached. *Jackson*, 443 U.S. at 319. It was. So this argument fails.

Sittenfeld fares no better by pointing to his exchange with Ndukwe in which Ndukwe pressed for guarantees about the project. Sittenfeld said "nothing can be a quid, quid pro quo [sic]," and further observed that he "kn[e]w that's not what [Ndukwe's] saying either." (Doc. 270, #6883). But such a verbal denial does not matter; no magic words can redeem an illegal action. If a politician agrees to exchange an official act for money, it does not matter if the politician says, "Of course, this isn't a bribe and I know you don't intend it as one." The question is whether a quid pro quo exists, not whether the politician admits to—or conversely disclaims—its existence.

Finally, Sittenfeld argues that the bribe charged in the indictment relates to payments from "Rob" (an undercover FBI agent playing the role of an out-of-town developer), so Sittenfeld's comments to Ndukwe (mainly the "love you, but can't" line above) are irrelevant. Not so. The testimony at trial showed that Rob and Ndukwe were portraying Ndukwe as a sort of go-between for Rob and Sittenfeld. That is, Sittenfeld understood that Ndukwe and Rob were partnering in the real estate development project and that Ndukwe would be raising money for Sittenfeld *from* Rob. Thus, the jury rationally could have concluded that Sittenfeld believed his statements to Ndukwe would also make their way to Rob and provide a basis for Rob contributing to Sittenfeld's campaign.

To reiterate, none of this was a foregone conclusion. Sittenfeld is correct that many of the statements are ambiguous, especially considered in isolation. And the Court agrees that a rational jury could have come out the other way on the existence of a quid pro quo. But that showing does not entitle Sittenfeld to acquittal. Rather,

the sole question is whether a rational jury could have found that an explicit quid pro quo existed here. And the answer to that question is yes.

### 2. A Rational Jury Could Have Found An Official Act.

Sittenfeld next argues that he should be acquitted because the government failed to prove a specific "official act" as required by the statute. Relevant here, the Supreme Court has said that an "'official act' is a decision or action on a 'question, matter, cause, suit, proceeding or controversy.'" *McDonnell v. United States*, 579 U.S. 550, 574 (2016); 18 U.S.C. § 201(a)(3). The question, matter, cause, suit, proceeding, or controversy must involve a "formal exercise of governmental power," but "using [one's] official position to exert pressure on another official to perform an 'official act'" would suffice. *Id.*

The Sixth Circuit has distilled *McDonnell* into a two-part test for an "official act." *United States v. Dotson*, No. 21-2826, 2022 WL 6973397, at *8 (6th Cir. Oct. 12, 2022).[2] First, the government must prove that the question, matter, or other item did (or could have) come before a public-official defendant. *Id.* And second, the government must prove that the defendant "made a decision or took action 'on'" that item. *Id.* (quoting § 201(a)(3)). As to this second element, though, the government need not prove beyond a reasonable doubt that Sittenfeld *took* official action or even exerted pressure on another official to do so. Rather, the question is whether a rational juror could conclude "beyond a reasonable doubt that [Sittenfeld] *agreed* to

---

[2] The Sixth Circuit issued *Dotson* well after the trial had concluded and after some of the motions before the Court had been filed. But *Dotson* does not change any law, it merely deals with the standard set out by the relevant statutes and *McDonnell*.

perform one of those actions in exchange for bribes." *United States v. Lee*, 919 F.3d 340, 356 (6th Cir. 2019) (emphasis added) (citation omitted).

The Court has addressed these arguments from Sittenfeld before. (*See* Doc. 53). Again, the Court concludes that Sittenfeld's arguments do not overcome the Supreme Court's instructions in *McDonnell*. That case precisely said that pressuring another official to perform an official act (or even advising an official to perform an official act when intending such advice to form the basis for it) is enough. *McDonnell*, 579 U.S. at 574.

Certainly, an agreement to vote to approve a development project or agreement would constitute an official act, as would an agreement to pressure other council members in that regard. That is the first element *Dotson* (via *McDonnell*) requires. The question, then, is whether a rational juror could have found Sittenfeld's statements to reflect an agreement to perform that official act—essentially, whether Sittenfeld "made a decision or took action 'on'" it. And in the Court's view, a rational juror could conclude that Sittenfeld promising to "'deliver the votes' could be understood as a promise to pressure or advise other City Council members on how to vote … on the project at issue." (Doc. 53, #530). Could a rational juror have concluded otherwise? Perhaps so. But again, that is not the standard. *See Lee*, 919 F.3d at 356. So, like his quid pro quo argument, Sittenfeld's official act argument fails too.

### 3. 18 U.S.C. § 666 And § 1951 Are Constitutional.

Sittenfeld's final argument is that if 18 U.S.C. § 666 and § 1951 reach his conduct, each is unconstitutional. He believes this is so because (1) the First

8

Amendment protects his behavior, and (2) the statutes are unconstitutionally vague as applied to him.

Sittenfeld's first argument is unpersuasive. The First Amendment does not protect all speech. *See Smith v. FirstEnergy Corp.*, 518 F. Supp. 3d 1118, 1134 (S.D. Ohio 2021). As broad as the First Amendment may be, our legal system still punishes language-based crimes all the time. *See United States v. Jeffries*, 692 F.3d 473, 478 (6th Cir. 2012). True, under cases like *NAACP v. Button*, 371 U.S. 415 (1963), and *Citizens United v. FEC*, 558 U.S. 310 (2010), courts must not endorse rules that chill protected political speech. But Sittenfeld exceeded the bounds of ordinary legal political speech. Here, the government showed evidence of not only monetary donations but also Sittenfeld's statements to Ndukwe that a jury reasonably concluded evinced his corrupt intent. And more, Sittenfeld points to no authority indicating that *his* conduct in *this* case should be protected by the First Amendment, likely because there is none. The First Amendment does not protect bribery, and that is what the jury—after determining Sittenfeld's intent—concluded happened here. *See Smith*, F. Supp. 3d at 1134; *see also United States v. Halloran*, 821 F.3d 321, 340 (2d Cir. 2016).

Sittenfeld's second argument is that a statute is void for vagueness (1) if it fails to give a person with ordinary intelligence notice that their conduct is prohibited, or (2) if it is so indefinite that it encourages arbitrary arrests and convictions. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Northland Fam. Plan. Clinic, Inc. v. Cox*, 487

9

F.3d 323, 341 (6th Cir. 2007). Sittenfeld offers no argument that either statute encourages arbitrary enforcement, so presumably his argument rests on notice.

That argument, though, falls short. Again, federal bribery law prohibits agreeing to undertake official action in exchange for campaign donations. (*See* Doc. 53, #535). No one debates this. Despite Sittenfeld's assertions, the statute and settled case law provide ample notice of what conduct is prohibited. True, the line may be fuzzier here than elsewhere. Or, perhaps more accurately, the conduct at issue—with criminality turning largely on intent—may be tougher to prove on objectively-verifiable bases. As a result, similar conduct *could* lead to different outcomes depending on how the jury in a given case assesses the public official's intent. But that does not render the statute unconstitutionally vague.[3] Stated differently, the Constitution does not require that criminal statutes include safe harbor provisions.

All three of his arguments in this Motion thus lack merit, so the Court **DENIES** Sittenfeld's Motion for Acquittal (Doc. 270).

## B. Motion for New Trial

The Court turns next to Sittenfeld's Motion for a New Trial. (Doc. 271). Federal Rule of Criminal Procedure 33 permits the Court to vacate a judgment and order a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial is "an extraordinary remedy for 'extraordinary circumstances.'" *United States v. VanDemark*, 39 F.4th 318, 322 (6th Cir. 2022) (quoting *United States v. Hughes*, 505

---

[3] The only district court that this Court could identify as holding § 1951 to be unconstitutionally vague was overturned. *See United States v. Williams*, 621 F.2d 123 (5th Cir. 1980).

F.3d 578, 592 (6th Cir. 2007)). The Sixth Circuit has recognized the Court's power to grant a new trial when a jury verdict went "against the manifest weight of the evidence." *Hughes*, 505 F.3d at 592.

Sittenfeld believes he is entitled to a new trial for six reasons. (*See generally* Doc. 271). First, he believes that his convictions ran against the manifest weight of the evidence. (*Id.* at #6897–99). Second, he believes the government "materially deviated" from the Indictment. (*Id.* at #6899–6905). Third, he believes that the Court erred in its jury instructions. (*Id.* at #6905–08). Fourth, he believes the Court erred by preventing him from offering modus operandi evidence. (*Id.* at #6909–10). Fifth, he believes that the Court incorrectly excluded the testimony of his expert witnesses. (*Id.* at #6910–13). And finally, he believes that the Court did not adequately investigate jurors' exposure to extrinsic evidence. (*Id.* at #6913–14). Predictably, the government disagrees across the board. (*See generally* Doc. 277).

1.  **The Verdict Was Not Against The Manifest Weight of the Evidence**

Sittenfeld begins by arguing that his conviction goes against the manifest weight of the evidence. This is not a new argument. He repeats his belief that "the government did not identify a single statement or action … that evinced a corrupt agreement." (Doc. 271, #6898). He also reiterates his belief that declining corrupt bargains previously should serve as evidence of a lack of *any* corrupt bargain.

The Court will grant a motion for new trial on manifest-weight-of-the-evidence grounds "only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *Hughes*, 505 F.3d at 593 (quotation marks omitted).

11

Motions such as this one, however, are "generally disfavored." *United States v. Dowty*, 964 F.3d 703, 708 (8th Cir. 2020); *see also United States v. Bowens*, 938 F.3d 790, 796 (6th Cir. 2019). And just because the evidence could point "to a hypothesis other than guilt" does not mean that a conviction goes against the manifest weight of the evidence. *United States v. Funzie*, 543 F. App'x 545, 549 (6th Cir. 2013). Indeed, "virtually every [Sixth Circuit case] dealing with the weight of the evidence involves affirmances of district court denials of new trial motions." *United States v. Burks*, 974 F.3d 622 (6th Cir. 2020) (citing more than twenty cases). Sittenfeld, thus, faces another uphill battle.

In the Court's view, this case is no different from most of those cited in *Burks*. The jury heard the evidence, weighed it, and judged the credibility of the witnesses. And in the end, the jury voted to convict on some counts and not on others. Sittenfeld's assertion that the government did not provide evidence of "a single statement" suggesting a corrupt agreement here is false and contradicts the extensive evidence put on at trial. The evidence—including hours of recordings and testimony—told a consistent, credible story that a jury could reasonably find constituted a tale of corruption. And on another note, the fact that Sittenfeld declined more overt corrupt offers bears little on his participation in the one that got him convicted here.

Again, the Court does not deny that the jury could have reached a different result. Sittenfeld offered plausible alternative explanations for his comments, under which those statements were not evidence of illegal conduct. But that is not the standard. *See Funzie*, 543 F. App'x at 549. The jury was entitled to weigh the evidence

12

as it saw fit. And Sittenfeld's disagreement with how the jury performed that task does not mean the manifest weight of the evidence is against his convictions. He has not made the requisite showing. So this argument fails.

### 2. Deviation from the Indictment

Sittenfeld next argues that the government unconstitutionally deviated from the indictment by "attempt[ing] to persuade the jury that [he] committed several other, unrelated crimes." (Doc. 271, #6899). Sittenfeld bases this theory mainly on the government's use of the October 30, 2018, statement from Ndukwe and the alleged campaign finance violation arguments made by the Government. (*Id.* at #6899–6904). The government disagrees, believing both events to have been "inextricably intertwined" with the charged conduct. (*See, e.g.*, Doc. 277, #6988).

When there is a difference between the crime an indictment charges and what the government proves at trial, that can present problems. For example, defendants have a Fifth Amendment right to indictment by a grand jury. If the grand jury indicts one crime but the government proves a different one, that could implicate that Fifth Amendment right. But at the same time, not all changes rise to that level.

The Sixth Circuit characterizes changes to the indictment as falling into one of three categories: actual amendment, constructive amendment, or variance. *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007). The first refers to situations where the government secures a new indictment from the grand jury—a setting all agree is not at issue here. Rather, Sittenfeld argues that one of the latter two, or both,

13

occurred: constructive amendment or variance. (Doc. 271, #6900). The Sixth Circuit

has set out the relevant standard for, and ramifications of, each:

> **A constructive amendment** "results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005). Constructive amendments are "per se prejudicial because they infringe on the Fifth Amendment's grand jury guarantee." [*United States v.*] *Hynes*, 467 F.3d [951,] 962 [(6th Cir. 2006)] (internal citations and quotations omitted). Because of the constitutional injury that results from a constructive amendment, when proven, a defendant is entitled to a reversal of his conviction. *Id.*

> **A variance**, however, is "not per se prejudicial." *Budd*, 496 F.3d at 521. Rather, reversal is warranted only where a defendant proves that (1) a variance occurred and (2) that the variance affected a substantial right of the defendant. *United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000). A variance "occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Id.* at 756–57. The substantial rights of the defendant "are affected only when the defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *Hynes*, 467 F.3d at 962 (quoting *United States v. Barrow*, 118 F.3d 482, 488–89 (6th Cir. 1997)).

*United States v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008).

First, Sittenfeld believes that the government constructively amended the

indictment, allowing the jury to convict him of something not charged in the

indictment. Specifically, Sittenfeld argues that the indictment charges him solely

with soliciting a bribe from Rob, based on the government's use of "to wit" in Counts

3 and 4 of the indictment. (*See* Doc. 3, #42). But, at trial, Sittenfeld says, the

14

government instead focused much of its case on the statement that Sittenfeld made *to Ndukwe*—"You don't want me to be like love you, but can't." (Doc. 271, #6901).

This argument fails both on the law and the facts. Start with the former. Sittenfeld argues that the use of the phrase "to wit" in the indictment limits the scope of the crime the government has charged. Admittedly, this issue presents one of the closer calls in this case. For one, Sittenfeld is correct that other appeals courts have vacated cases based on constructive amendments of "to wit" clauses. *See, e.g., United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir. 1994). But the cases Sittenfeld cites to support his argument are almost thirty years old. Newer decisions have noted that viewing indictments as a whole, "to wit" clauses are "properly understood to be illustrative rather than definitional." *United States v. Agarwal*, 726 F.3d 235 (2d Cir. 2013). And the Sixth Circuit has recently rejected narrow readings of an indictment. *United States v. Bradley*, 917 F.3d 493, 503 (6th Cir. 2019). This Court, then, will do the same. In stating the relevant date range and the conduct at issue (including the statement to Ndukwe) in the background portion of the Indictment (*see* Doc. 3, #42), the Indictment put Sittenfeld on notice that conduct potentially outside that expressly mentioned in the "to wit" clauses in Counts 3 and 4 may form part of those charges. That was enough.

On to the facts. Assume Sittenfeld is right that a "to wit" clause is definitional rather than illustrative. On the facts here, the statement about which Sittenfeld complains ("love you, but can't") could be understood as reflecting an intent to obtain a bribe from UCE-1 (i.e., Rob). Or at least the government was free to argue that it

15

did, and the jury was free to agree. As noted above, from Sittenfeld's perspective, Rob and Ndukwe were the same when it came to the real estate development project—and the alleged bribe—at issue. Sittenfeld thus would have reasonably understood his statement to Ndukwe to be one that Ndukwe would pass along to his investment partner, Rob.

In short, given Sittenfeld's understanding of the arrangement, soliciting from Ndukwe was indistinguishable from soliciting from Rob. The two were, as the government suggests, "inextricably intertwined." (Doc. 277, #6998). Thus, the government's reliance on the statement to Ndukwe did not involve a separate crime, as Sittenfeld claims, but rather a part of the overall scheme.

The Court likewise is not persuaded by Sittenfeld's assertions that *Stirone v. United States*, 361 U.S. 212 (1960), requires a new trial here. In that case, the Supreme Court found that it could not be said "with certainty" that the jury convicted the defendant "solely on the charge made in the indictment." *Id.* at 217. Indeed, the indictment did not address part of the later-alleged conduct (sand shipments vs. steel shipments). Here, the government included the allegations of Sittenfeld's solicitations of Ndukwe and incorporated them into Counts 3 and 4, which, as noted above, fit with, and are part of, the allegations involving Rob. The Court finds no constructive amendment here.

Similarly, the government did not vary from the indictment by arguing that Sittenfeld "violated the campaign finance laws," as he claims. (Doc. 271, #6904). Rather, the evidence presented added to the charged, convictable conduct. Both the

evidence that Sittenfeld sought to extort donors who had "hedged" on his candidacy and the straw donor evidence went directly to Sittenfeld's intent, a crucial issue in the case. (*See* Doc. 265. #5946–47). This cannot have surprised Sittenfeld. Indeed, the government expressly mentioned some of that conduct in the Indictment. (*See* Doc. 3, #36–38). And in many ways, as the government notes, it was Sittenfeld, not the government, who continued to interject campaign finance issues into the trial. (Doc. 277, #6999). So the Court is not persuaded by Sittenfeld's contention that the government bringing up conduct that may have violated campaign finance laws meant that the government varied from the indictment.

Separately, as the government also points out, even if Sittenfeld could show a variance from the indictment, he has not shown that it affected a substantial right. *Prince*, 214 F.3d at 757. The Court's jury instructions made it clear multiple times (*see* Doc. 251, #4985–87 *and* Doc. 202, #3232–36) that Sittenfeld was not facing charges for, and could not be convicted of, campaign finance violations. Sittenfeld thinks the jury "may have understood the Court's explanation" of campaign finance law to invite speculation. (Doc. 271, #6905). But Sittenfeld does not connect the dots about how this speculation could have arisen, or how it would have harmed him. And there is no suggestion anywhere that a juror in fact speculated or did not understand the Court's instructions. Instead, Sittenfeld again turns to false depictions of the government's case involving "innuendo and circumstantial evidence." (*Id.*). The variance argument fails as well.

### 3. Jury Instructions

Sittenfeld next argues that the Court should order a new trial based on its jury instructions. Specifically, he believes the Court erred in instructing that the government could satisfy the elements of Counts Three and Four concerning "another person," omitting a clarifying instruction on what constituted an "official action," and omitting a "good faith" instruction. The government again disagrees, believing that Sittenfeld failed to preserve the "another person" and "good faith" claims and that the "official action" claim fails on the merits.

The Court notes that Sittenfeld did not raise his "another person" and "good faith" objections at the charge conference or trial. But he raised them in his initial objections to the government's proposed instructions (Doc. 107, #1181).

This leaves the Court a bit confused about what (if any) review it should perform. Some courts in this District have found that failure to object to an instruction constitutes a waiver that precludes a party from relying on that flaw as the basis for seeking a new trial. *See Lees v. Thermo Electron Corp.*, No. 2:06-cv-984, 2008 WL 5212224, at *4 (S.D. Ohio Dec. 12, 2008) ("Plaintiff's failure to object to the jury instructions resulted in a waiver of any objection, and for that reason alone, Plaintiff is not entitled to a new trial."). And the Sixth Circuit has seemingly endorsed that approach. *See United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990) ("An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course."). But the Sixth Circuit has also explicitly declined to confirm that principle in recent years. *See United States v.*

*Watson*, 852 F. App'x 164, 169 (6th Cir. 2021).[4] But even assuming that Sittenfeld has not waived review, such review ordinarily would be for plain error. *United States v. Vasquez*, 560 F.3d 461, 470 (6th Cir. 2009). And, like the claims in *Watson*, Sittenfeld's claims fail under plain error review, so this Court need not decide whether waiver forecloses review.

First, the Court did not plainly err with its "another person" instruction, an instruction to which neither party objected. Sittenfeld now argues that the instruction enabled the jury to convict him of uncharged conduct, specifically that the jury could have convicted him based on statements to Ndukwe and not Rob. But the Court's instructions mirrored the statute and language from similar trials. *See* 18 U.S.C. § 666; *United States v. Inman*, 39 F.4th 357, 362 (6th Cir. 2022). Other circuits may have different versions of this instruction, but the evidence here supported the instruction, which accurately stated the law. *See United States v. Reichert*, 747 F.3d 445, 451 (6th Cir. 2014). This does not constitute plain error.

Second, the Court did not plainly err when it declined to give a "good faith" instruction, another decision to which neither party objected. Indeed, the Court directly invited Sittenfeld at the Final Pretrial Conference to explain the need for a

---

[4] In *Watson*, the panel noted that

> [t]his Court recently confronted this exact issue—whether an express agreement by trial counsel with the district court's jury instructions makes any challenge to those instructions unreviewable—and held that "we need not declare a winner on the standard-of-review point" because the defendant's "claim fails even on plain-error review." *United States v. Buchanan*, 933 F.3d 501, 509 (6th Cir. 2019). Because Watson's claim also fails on plain error review, we similarly decline to decide this standard of review dispute.

852 F. App'x at 169.

good faith instruction and to what such an instruction would apply. (Doc. 149, #2589–90). Sittenfeld never raised the issue again. The Sixth Circuit's pattern instructions specify that there is no "general good faith defense" to be made here. Sixth Cir. Patt. Instr. 6.08, Comm. And neither ignorance nor mistake can give rise to such a defense. *See United States v. Blagojevich*, 794 F.3d 729 (7th Cir. 2015). Sittenfeld is correct that the Court can give a good faith instruction when warranted. But, from the Court's vantage, nothing in the record warranted such an instruction here. And when asked to elaborate, Sittenfeld declined. This, then, does not constitute plain error either.

Finally, the parties agree that Sittenfeld preserved his objection to the Court's "official action" (or "expressing support") instruction. When an objection has been preserved, jury instruction review comes down to whether the instructions "fairly and adequately submitted the issues and applicable law to the jury." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 404 (6th Cir. 2003). A new trial is not required unless the jury instructions, "taken as a whole, are misleading or give an inadequate understanding of the law." *Morgan v. New York Life Ins. Co.*, 559 F.3d 425, 434 (6th Cir. 2009).

The Court's "official action" instruction was correct. For one, it mirrors *McDonnell* (and the Sixth Circuit Pattern Instructions). *See* 579 U.S. at 567–74; *see also* Sixth Cir. Patt. Instr. 17.02(2)(D). *McDonnell* requires three clarifying instructions in cases such as these, all of which the Court included. (Doc. 202, # 3228–30). *See McDonnell*, 579 U.S. at 577–579; *see also Dimora v. United States*, 973 F.3d 496, 503 (6th Cir. 2020).

Sittenfeld thinks that an instruction should have been given indicating that merely "expressing support" for a project did not violate the law, as it did not constitute official action. But the facts here rendered Sittenfeld's preferred language problematic. For one, the government never indicated that expressing support *alone* constituted official action. (*See* Doc. 277, #7002). And separately, as the Court noted in the final pretrial conference, "expressing support, depending on the way in which that support is expressed … may make the expression of support count as an official act." (Doc. 272. #6935). For this instruction, the Court used the Sixth Circuit Pattern Instruction combined with the standard in *McDonnell* (as articulated in *Dimora*). The instruction accurately stated the law and did not mislead the jury on what the government had to prove for them to convict Sittenfeld. Such an omission did not impair Sittenfeld's theory of the case. So this argument fails.

### 4. Modus Operandi Evidence

Sittenfeld next argues that this Court abused its discretion by refusing to let him offer modus operandi evidence, believing he could rebut the government's evidence with evidence about his normal behavior. Sittenfeld once again falsely states that the government lacks "any clear or direct evidence of wrongdoing" and that any wrongdoing was out of character for him.

The Court did not forbid Sittenfeld from introducing modus operandi evidence. Instead, it expressly permitted him to present testimony related to his "demonstrated views on development." (Doc. 190, #2949). And the Court later confirmed that it would "allow other-acts evidence, both good and bad, but only with regard to substantially

21

similar types of situations." (Doc. 267, #6417). Indeed, the Court also confirmed that Sittenfeld would be permitted to call witnesses on specific projects he requested, but Sittenfeld chose not to call them. (*Id.* at #6631).

To the extent Sittenfeld wanted to testify (or put evidence on) regarding good acts more generally, to show his predisposition as a "good guy," recent Sixth Circuit caselaw foreclosed that approach. *See United States v. Dimora*, 750 F.3d 619, 630–31 (6th Cir. 2014). And more, as noted above, the Court cannot see the relevance of pointing out that—other than the criminal conduct here—Sittenfeld avoided other opportunities to engage in criminal behavior. After all, those other opportunities are not at issue here. This argument fails as well.

### 5. Exclusion of Sittenfeld's Expert Witnesses

Sittenfeld next argues that this Court erred in its "exclusion" of experts Caleb Burns and Edward Fitzgerald. The exclusion argument warrants quotes here because it is far from clear that the Court excluded anyone Sittenfeld tried to call to the stand. Sure, the government did move before trial to exclude Burns and Fitzgerald. But the Court declined to rule on that motion, saying it would not do so until after completing a voir dire with the experts. (Doc. 190, #2965). And the Court's only ruling on that motion later denied it as moot. (*See* Notation Order, July 21, 2022).

Let's take a closer look at each expert, starting with Burns. Sittenfeld wanted Burns to testify on two topics: (1) campaign finance law, and (2) what happens in the real world, whether consistent with the law or not. While the Court expressed concerns about both, it never made a call as to whether Burns could testify.

22

Rather, when it came time during trial to discuss calling Burns, the Court explored with the parties the topics on which Sittenfeld intended to elicit testimony from Burns. (Doc. 266, #6189–6194). For example, Sittenfeld wanted Burns to clarify that, as a matter of campaign finance law, Sittenfeld's conduct in various respects had not been illegal (e.g., using a PAC that did not have his name associated with it, which campaign finance law requires for certain PACs). Once the Court had identified all such issues, the Court inquired:

> Well, isn't the easiest and quickest way to shortcut all of this for me to just instruct the jury that there's nothing inherently wrong with contributing money to a PAC. There's nothing inherently wrong with a political candidate accepting checks directly from donors or bundlers who are bringing checks from people. There's nothing wrong with those checks being accepted by hand. There's nothing wrong with LLC contributions up to the campaign limit, which everybody agrees in this case for a PAC is $5,000.
>
> Isn't it just like three or four points that I think everybody agrees with?

(*Id.* at #6194–95). Mr. Sittenfeld's attorneys responded "Yes." (*Id.* at #6195). One of them added:

> The other thing is that his name was not associated with the PAC. *If the Court clears that up also, then we're fine.*

(*Id.* (emphasis added)). Consistent with that approach, the Court drafted a proposed instruction explaining what campaign finance law requires on the relevant issues. (*Id.* at #6197 (Court informing parties it would draft up a proposed instruction for the parties' review)). Later that evening, the Court went line by line through that proposed draft modifying it with the parties' input. (*Id.* at #6389–402). As the Court understood it, that obviated the need to call Burns on that topic.

If Sittenfeld's complaint is instead that Burns would have testified about politicians' regular fundraising practices, and that Sittenfeld's conduct here comported with such regular practices, such testimony is not relevant to any permissible defense. Just because someone—or even everyone—else is breaking the law would not mean that Sittenfeld could too. *See Koch v. Jerry W. Bailey Trucking, Inc.*, 482 F. Supp. 3d 784, 789 (N.D. Ind. 2020) (noting that the "everyone else is doing it" excuse "has not worked on a mother in recorded history and, as it turns out, is no more effective when explaining away" illegal conduct). So neither of these reasons would have led to Burns offering much on the stand. And, in any event, Sittenfeld never attempted to call Burns at trial.

As for Fitzgerald, the Court never excluded him. Sittenfeld mentioned Fitzgerald before trial, where the Court expressed some confusion about the relevance of Fitzgerald's proposed testimony. But the Court said only that it would need more information about his proposed testimony and its foundation if the defense wanted him to testify. Sittenfeld never followed up on the matter and did not indicate during the charge conference, or at trial, that he desired to have Fitzgerald testify. It cannot be error to "exclude" experts no one ever attempted to call. This argument fails too.

### 6. Investigation of Jurors' Exposure to Extrinsic Evidence

Sittenfeld's last argument is that the Court wrongly limited his ability to investigate potential juror exposure to extrinsic evidence. He believes the Court should have further explored whether any jurors were tainted. The government

disagrees, believing that Sittenfeld wants to continue conducting a fishing expedition for evidence to support his claims of juror misconduct.

To start, the Court notes (and appreciates) Sittenfeld's recognition that the Sixth Circuit has already affirmed this Court's refusal to order a forensic examination of a juror's cell phone. *See In re Sittenfeld*, 49 F.4th 1061 (6th Cir. 2022). Indeed, the Sixth Circuit said quite plainly that the Court lacked authority even to entertain such a request. *Id.* at 1079 ("in conducting a *Remmer* hearing, a court cannot order a juror to hand over his or her cellphone, computer, or other electronic devices, nor order a search or forensic examination of a juror's devices").

That leaves only Sittenfeld's claim that the Court should have let him investigate whether other jurors heard potentially prejudicial comments on their way into or out of the courtroom. (Doc. 271, #6913). Presumably, this means Sittenfeld wanted to talk to more jurors than the four with whom he has already spoken.[5] The Court already has rejected this request once. (Doc. 249, #4909–10). In response, Sittenfeld includes two new affidavits here. One of those comes from an attorney at one of the firms defending him. (Doc. 271-1, #6926–27). The other comes from someone who appears to be an attendee at the trial. (*Id.* at #6928–29).

Sittenfeld is correct that the government has identified no authority preventing him from attaching new affidavits at this stage; the Court has not identified any either. But the Supreme Court has explicitly stated that "[a]llegations of juror misconduct … raised for the first time days, weeks, or months after the

---

[5] Of course, this investigation could not include the jurors' personal devices. *See Sittenfeld*, 49 F.4th at 1079.

verdict, seriously disrupt the finality of the process." *Tanner v. United States*, 483 U.S. 107, 127 (1987). The Supreme Court's observation was undoubtedly true when made, and it may be all the more accurate in today's social media age.

The Court stands on its earlier findings from the *Remmer* hearing. None of the four jurors the Court has investigated indicated that the allegedly troubling statements from the press in the hallway warranted deeper investigation of their counterparts on the jury. And these new affidavits do not warrant further disrupting "the finality of the process." Sittenfeld bears the burden of proving any bias. *United States v. Lanier*, 988 F.3d 284 (6th Cir. 2021). He has not done so. So the Court declines to reopen its investigation or order a new trial on this basis.

In sum, all six of Sittenfeld's arguments in this Motion lack merit, so the Court **DENIES** Sittenfeld's Motion for a New Trial (Doc. 271).

**CONCLUSION**

Sittenfeld has not put forth any persuasive arguments supporting either his Motion for Acquittal (Doc. 270) or his Motion for a New Trial (Doc. 271). For these reasons, the Court **DENIES** both motions.

**SO ORDERED.**

April 17, 2023

**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**