## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALEXANDER SITTENFELD,<br>a/k/a "P.G. Sittenfeld"<br><br>Defendant. | Case No. 1:20-cr-142<br><br>Hon. Douglas R. Cole |

## DEFENDANT'S OPPOSED MOTION
## FOR RELEASE PENDING APPEAL

Defendant Alexander "P.G." Sittenfeld respectfully moves for release pending appeal pursuant to 18 U.S.C. § 3143(b).

Respectfully Submitted,

Yaakov M. Roth
Harry S. Graver
Jones Day
51 Louisiana Ave. N.W.
Washington, DC 20001
(202) 879-7658
yroth@jonesday.com

Justin E. Herdman
Jones Day
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-7113
jherdman@jonesday.com

Alexander V. Maugeri
Jones Day
250 Vesey St.
New York, NY 10281
(202) 326-3939
amaugeri@jonesday.com

*/s/ Neal D. Schuett*
Charles H. Rittgers
Charles M. Rittgers
Neal D. Schuett
Gus J. Lazares
Rittgers & Rittgers
12 East Warren Street
Lebanon, OH 45036
 (513) 932-2115
neal@rittgers.com

James M. Burnham
King Street Legal, PLLC
800 Connecticut Ave., NW
Suite 300
Washington, DC 20006
(602) 501-5469
james@kingstlegal.com

*Counsel for the Defendant*

**<ins>DEFENDANT ALEXANDER SITTENFELD'S MEMORANDUM OF LAW</ins>**
**<ins>IN SUPPORT OF HIS OPPOSED MOTION FOR RELEASE PENDING APPEAL</ins>**

**<ins>INTRODUCTION</ins>**

Mr. Sittenfeld has requested and provided ample basis for a non-custodial sentence. For a case that strikes out singularly aggressive prosecutorial terrain—as well as for the reasons detailed in Mr. Sittenfeld's sentencing memorandum—a non-custodial sentence best serves and promotes the cause of justice. Should the Court impose the sentence Mr. Sittenfeld has requested, he will withdraw this motion and abide by any period of home-confinement this Court directs, as well as perform any community service the Court orders. Should the Court impose a period of custody in a federal prison facility, however, Mr. Sittenfeld respectfully asks that the Court allow him to remain free until the appellate process concludes, as he has been for nearly three years since his indictment and well over a year since his convictions. Mr. Sittenfeld files this motion before sentencing to facilitate an orderly briefing process should this motion prove necessary.

Under 18 U.S.C. § 3143(b), the court "shall" grant release pending appeal if a defendant makes two showings. *First*, the defendant must establish that he does not present a danger to the community or a flight risk. *Second*, the defendant must show that his appeal is not for purposes of delay, but rather presents "substantial" questions that—if resolved in his favor on appeal— would result in acquittal, a new trial, or a shorter sentence. Of course, the latter element does not require this Court to confess error—otherwise, release pending appeal would never be granted. Rather, the standard is met as long as the questions are "close" or *could be* decided the other way.

Applying that standard, courts in this Circuit and across the country regularly grant release pending appeal in cases that, like this one, involve novel applications of the public corruption laws.

Mr. Sittenfeld is entitled to continued release. It goes without saying that he is neither a flight risk nor dangerous, and his appeal will present at least two "substantial" questions. First, there is a substantial question whether the government proved an "explicit" *quid pro quo* within the meaning of *McCormick v. United States*, 500 U.S. 257 (1991). This Court held that juries may infer an *explicit* agreement from *ambiguous* conduct. But federal courts have disagreed on the reach of *McCormick*, the Sixth Circuit has yet to address what is required to satisfy *McCormick*'s elevated burden of proof, and multiple federal court decisions have adopted Mr. Sittenfeld's view of what that burden requires. Those decisions demonstrate that a reasonable jurist *could* decide this issue in his favor. And if Mr. Sittenfeld prevails on this issue, he will receive a full acquittal.

Mr. Sittenfeld's appeal will also raise a substantial question under the Fifth Amendment. This Court held that the government did not constructively amend the indictment in this case by prosecuting Mr. Sittenfeld for a purported bribe involving Chinedum Ndukwe—even though his indictment charged only a bribe involving Rob. But the Court readily acknowledged that this issue presented a "close[] call"—all but deeming the standard for continued release satisfied. And decisions within both the Sixth Circuit and the other courts of appeals make clear that a reasonable jurist *could* find a constructive amendment on these facts. *See, e.g.*, *United States v. Cusmano*, 659 F.2d 714 (6th Cir. 1981). In the alternative, this Court also held that Mr. Sittenfeld viewed Mr. Ndukwe as a conduit to Rob, such that soliciting a bribe from Mr. Ndukwe *also* solicited a bribe from Rob. But Mr. Sittenfeld had no reason to view Mr. Ndukwe as a conduit during the critical exchange on October 30, 2018. Nor is it clear the government can rely on this conduit

1

theory, having neither charged it in the indictment nor argued it before the jury. Here too, if Mr. Sittenfeld prevails on this argument, he will be entitled to a new trial on both remaining counts.

In short, Mr. Sittenfeld's appeal presents at least two close legal issues that could lead the Sixth Circuit to vacate his conviction. Neither the government nor the public would suffer any harm from allowing Mr. Sittenfeld to remain free pending appeal, as he will serve his full sentence if the convictions are affirmed. The Court should grant Mr. Sittenfeld's motion for release.

## **LEGAL STANDARD**

Under 18 U.S.C. § 3143(b), a court "shall" order release on bond of a criminal defendant, pending appeal, if (i) the defendant is "not likely to flee or pose a danger to the safety of any other person," *id.* § 3143(b)(1)(A), and (ii) his appeal is "not for the purpose of delay" but rather "raises a substantial question of law or fact" that, if resolved in his favor, will "likely" result in reversal, a new trial, or a sentence shorter than the expected duration of the appeal, *id.* § 3143(b)(1)(B). The "substantial" question must also be one that, if decided in the defense's favor, is "likely to result in" reversal, a new trial, or a materially shorter sentence. *Id.* § 3143(b)(1)(B). Satisfying both prongs of § 3143(b) creates an "entitlement to release from custody pending appeal," subject to any appropriate conditions of bond. *United States v. Zimny*, 857 F.3d 97, 101 (1st Cir. 2017).

Granting relief under § 3143(b) "does not require the district court to find that it committed reversible error." *United States v. Pollard*, 778 F.2d 1177, 1181–82 (6th Cir. 1985). Rather, release is warranted when a case "presents a close question or one that could go either way," and when "it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Id.* at 1182 (citation omitted).

Two additional points relevant to Mr. Sittenfeld's case bear mention. *First*, it is common for courts to grant release pending appeal in federal corruption cases. The federal corruption laws are notoriously murky, and frequently give rise to debatable legal questions that require appellate

intervention—including by the Supreme Court. *See, e.g.*, *Percoco v. United States*, 598 U.S. 319 (2023) (overturning honest-services fraud convictions); *Ciminelli v. United States*, 598 U.S. 306 (2023) ("right to control" fraud); *Kelly v. United States*, 140 S. Ct. 1565 (2020) ("Bridgegate" fraud); *McDonnell v. United States*, 579 U.S. 550 (2016) (novel bribery).

Lower courts have followed the Supreme Court's lead when ruling on motions for release pending appeal. In *United States v. Abbey*, a district court in this Circuit granted continued release pending appeal based on the appellant's argument that 18 U.S.C. § 666 and the Hobbs Act require an explicit *quid pro quo* outside the campaign contributions context. *See* 560 F.3d 513, 516–21 (6th Cir. 2009); No. 4:06-cr-20286-PVG, (E.D. Mich. Oct. 4, 2007), ECF 86 (granting bond). Similarly, in many of the most high-profile bribery and fraud cases of recent years, courts in other Circuits have also granted continued release pending appeal, including at the appellate level when the trial courts initially denied relief. *See, e.g.*, Order, *United States v. Porat*, 76 F.4th 213 (3d Cir. 2023) (No. 22-1560), ECF 17 (wire fraud case against Temple University dean); Order, *United States v. Wilson*, 19-cr-10080-NMG-17 (May 19, 2022), ECF 2624 ("Varsity Blues" bribery case); Order, *United States v. McDonnell*, 792 F.3d 478 (4th Cir. 2015) (No. 15-4019), ECF 39 (bribery case against Virginia Governor); Order at 3, *United States v. Ring*, 47 F. Supp. 3d 38 (D.D.C. 2014) (No. 08-CR-274), ECF 297 (case arising out of Jack Abramoff controversy); Mar. 27, 2008 Order at 1–2, 4, *United States v. Siegelman*, 561 F.3d 1215 (11th Cir. 2009) (No. 07-13163-BB) (bribery case against Alabama Governor); Order, *United States v. Gilbert*, 355 F. Supp. 3d 1168 (N.D. Ala. 2018) (No. 17-CR-00419), ECF 324 (bribery case involving Alabama state legislator). Critically, the courts in the above cases granted release even though the circuit courts ultimately

rejected all but one of the appeals on the merits.[1]  These cases thus underscore that the standard for release pending appeal is distinctly lower than finding that the defendant will ultimately prevail.

*Second*, there is widespread agreement that, if the lower courts have disagreed about the issues presented in the appeal, those issues are necessarily "close" enough to warrant release pending appeal.  If a question *has been* decided in the defendant's favor, it follows *a fortiori* that the question "could" be decided that way.  *Pollard*, 778 F.2d at 1182.  Accordingly, the Fifth Circuit recently granted release pending appeal because there was a "circuit split[]" on whether a defendant's conviction was "constitutional in light of . . . *McCormick v. United States*."  Order at 2, *United States v. Hamilton*, 46 F.4th 389 (5th Cir. 2022) (No. 21-11157) (July 15, 2022), ECF 107.  Likewise, in *United States v. Roth*, a district court found that the *mens rea* for an export control violation was "a substantial question" "because there is a circuit split and the Sixth Circuit has not decided the issue."  642 F. Supp. 2d 796, 799 (E.D. Tenn. 2009).

## ARGUMENT

This is a quintessential case for release pending appeal.  Mr. Sittenfeld has no previous criminal record and plainly presents no danger or flight risk.  He has been free without incident for over a year since his convictions.  And his appeal will present at least two close and important constitutional questions that have divided judges across the country.  Courts routinely grant continued release in cases like this, and this Court should do so here.

---

[1] *See Porat*, 76 F.4th at 223; *McDonnell*, 792 F.3d at 520, *rev'd*, 136 S. Ct. 2355; *United States v. Ring*, 706 F.3d 460, 474 (D.C. Cir. 2013); *United States v. Siegelman*, 640 F.3d 1159, 1190 (11th Cir. 2011); *United States v. Roberson*, 998 F.3d 1237, 1242 (11th Cir. 2021); *Abbey*, 560 F.3d at 523; *but see United States v. Abdelaziz*, 68 F.4th 1, 74 (1st Cir. 2023) (reversing all but one of the defendant's convictions).

I. **MR. SITTENFELD'S APPEAL PRESENTS "SUBSTANTIAL" QUESTIONS THAT, IF RESOLVED IN HIS FAVOR, WOULD RESULT IN REVERSAL OR A NEW TRIAL.**

Mr. Sittenfeld satisfies the first prong of § 3143(b) if his appeal will raise at least one substantial and material question. As explained below, it will raise at least two.

A. **There Is A Substantial Question About the Government's Theory of Guilt.**

The first critical question in this case is whether the government proved an "explicit" *quid pro quo* as required by *McCormick v. United States*, 500 U.S. 257, 273 (1991). The government maintains that a jury can infer an explicit *quid pro quo* from ambiguous evidence. And although the Court sustained that theory, Mr. Sittenfeld's conviction presents a substantial question for appeal given that his convictions conflict with decisions of other courts, and hazard significant practical repercussions for everyday politics.

In *McCormick*, the Supreme Court held that something more is needed to prove bribery where the *quid* is a campaign donation. 500 U.S. at 273; *see also Abbey*, 560 F.3d at 517–18; *United States v. Ring*, 706 F.3d 460, 466 (D.C. Cir. 2013); *United States v. Salahuddin*, 765 F.3d 329, 343 (3d Cir. 2014). Before this Court, Mr. Sittenfeld argued this required *unambiguous* evidence of an illicit deal; anything less would fall below the "explicit" *quid pro quo* demanded by *McCormick*. For its part, the government argued that ambiguous evidence can still satisfy *McCormick*, so long as a jury infers nefarious intent. While recognizing that the trial evidence was susceptible to a "plausible" explanation sounding in lawful politics, the Court agreed with the government that the jury was nonetheless permitted to infer an "explicit" bribery agreement. Op. at 12.

To start, whatever else might be said of the government's position, it is an expansion of existing law. With respect to campaign-contribution bribery, the government has not identified a *single case* in *any jurisdiction* that sustains a comparable prosecution. By contrast, every

5

campaign contribution decision the government has invoked so far contains *unambiguous* evidence of criminal intent. *See, e.g.*, *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 731–32 (7th Cir. 2014) (defendant told a donor that he would not sign a bill until he received a donation); *United States v. Siegelman*, 640 F.3d 1159, 1166–67 (11th Cir. 2011) (defendant expressly acknowledged his agreement to sell a seat on a state board for donation); *United States v. Pawlowski*, 27 F.4th 897, 905–07 (3d Cir. 2022) (defendant refused to "officially sign[]" a government contract until he received a sizable "campaign contribution," entered an express agreement with a law firm to sell a different contract for literal "stack of cash," and demanded a donor give him "tickets to a Philadelphia Eagles playoff game"); *United States v. Carpenter*, 961 F.2d 824, 828–29 (9th Cir. 1992) (defendant refused to discuss legislation without contribution).

Likewise, Mr. Sittenfeld has not found *a single example* of a campaign-contribution case that permitted a jury to infer an "explicit" agreement from ambiguous evidence. Instead, as above, he has only found sustained convictions that have rested on unambiguous evidence of corruption. *See, e.g.*, *United States v. Menendez*, 291 F. Supp. 3d 606, 629 (D.N.J. 2015) (collecting cases).

The Sixth Circuit is no exception. In *United States v. Terry*, for instance, the Sixth Circuit noted the general principle that a jury can find an explicit agreement—like any element of any crime—based on what individuals "say, mean, and do." 707 F.3d 607, 613 (6th Cir. 2013). But *Terry* did not confront the issue here because that case (like those above) had unambiguous evidence of an express *quid pro quo*: Specifically, the political patron and bribe-payor in *Terry* spoke to the defendant (a state judge) over the phone and "straight up asked [him] to deny [a] bank's motions for summary judgment in [] two cases." *Id.* at 615. The defendant agreed (on tape) "to do just that," then followed through on that promise "within hours of the conversation." *Id.* "No subtle winks and nods were needed" to convict. *Id.* *Terry* thus had no opportunity to

address—and indeed expressly declined to address—the context presented here, where the evidence is concededly explicable as lawful politics instead of illicit bribery.[2]

Nor did the Supreme Court address this issue in *Evans v. United States*, 504 U.S. 255 (1992). This Court cited *Evans* for the notion that a public official commits extortion by "obtain[ing] a payment to which he was not entitled, knowing that the payment was made in return for official acts." Op. of April 17, 2023 at 3, Dkt. 283 (quoting *Evans*, 504 U.S. at 268). But *Evans* simply held that "fulfillment of the *quid pro quo* is not an element" of bribery. 504 U.S. at 268. It did not purport to define—much less redefine—what makes a *quid pro quo* explicit under *McCormick*. As the Sixth Circuit has explained, *Evans* fully defines bribery only "in non-campaign contribution cases," where the necessary "quid-pro-quo promise" need not be "*explicit*." *Abbey*, 560 F.3d at 517–18.

That all said, outside of this Circuit, where the federal courts *have* encountered prosecutions like this one, they have uniformly agreed with Mr. Sittenfeld, and halted prosecutions when the government fails to present unambiguous evidence of a *quid pro quo*. For example, the government alleged in *United States v. Benjamin* that the defendant-legislator funneled state funds to a potential donor and used them as leverage to obtain campaign contributions. 2022 WL 17417038, at *1–3 (S.D.N.Y. Dec. 5, 2022). It further alleged the defendant had the ability to withdraw the state funds during his solicitation, that he watched the donor make contributions in other peoples' names, and that he lied about the contributions on a state form. *See id.* *Benjamin*

---

[2] The district court in *Terry* denied release pending appeal for three reasons that do not apply here: (1) the defendant raised his *McCormick* argument "for the first time" in his motion for release, (2) the case contained unambiguous evidence of an express *quid pro quo*, and (3) even *prevailing* on his *McCormick* argument would not have reduced the defendant's sentence below the "expected duration of the appeal process." *United States v. Terry*, 2011 WL 5008415, at *3–5 (N.D. Ohio Oct. 19, 2011).

nonetheless dismissed those counts before trial, holding that these allegations did not describe "a clear, controlling agreement" between defendant and donor. *Id.* at *17.

*Menendez* ordered acquittal for the same reasons. There, the government had introduced evidence that Senator Bob Menendez had (i) pursued a donor's priorities in "close temporal proximity" to his campaign contributions, (ii) pursued those priorities "more zealously" than before the contributions, (iii) withheld information about this advocacy from his staff, (iv) advocated through "unusual" means, such as demanding a meeting with the Secretary of Health and Human Services regarding his donor's Medicare billing dispute, and (v) otherwise engaged in a longstanding "pattern of corrupt activity and concealment." 291 F. Supp. 3d at 627–35. The court nonetheless found that this pattern of "context, chronology, escalation, [and] concealment" was legally insufficient to prove an explicit agreement, *id.* at 633, as the government had "not introduced any evidence connecting" the alleged quid to the alleged quo, *id.* at 629–30.

Similarly, the district court in *United States v. Inzunza* found a seedy and extensive effort to recruit a councilman into deregulating San Diego's "adult entertainment" industry to be insufficient evidence of an explicit agreement. *United States v. Zucchet*, 2005 WL 8160882, at *2–5 (S.D. Cal. Nov. 10, 2005). In affirming, the Ninth Circuit emphasized that the defendant's conduct "could just as easily have been an innocent political act." *United States v. Inzunza*, 638 F.3d 1006, 1025 (9th Cir. 2011).

As this Court recognized, the prosecution below rested on ambiguous evidence. *See* Op. at 12 (accepting Mr. Sittenfeld "offered plausible alternative explanations for his comments, under which those statements were not evidence of illegal conduct."). And although the Court held that was sufficient for campaign-contribution bribery, what the above reveals is the Court's decision is in a class of one. At minimum, there has *never* been a similar federal bribery conviction sustained

on that basis—and in this Circuit, whether doing so is feasible under *McCormick* is an open question over which reasonable minds can differ. To the contrary, courts have uniformly *vacated* such convictions.

Finally, as this Court has acknowledged, and as even the government accepts, the government's position here would have stark practical consequences. At oral argument, the Court asked the government whether any "politician can accept money from anybody who is going to have business coming before them [without] leaving it up to twelve of their peers to decide whether . . . an inference could be drawn that there was some illicit deal." Hearing Tr. of Dec. 5, 2022, at 62. And in response, the government accepted that as a consequence of its view. *Id.* at 62–63.

But the Supreme Court has cautioned time and again that both prosecutors and federal courts should think twice (and maybe a third time) before adopting an interpretation of the federal corruption laws that would cast a "pall of potential prosecution" over everyday politics. *McDonell*, 579 U.S. at 575. Indeed, just last year, the Court rejected the government's theory that a private citizen's informal influence over governmental decision-making could constitute honest-services fraud, because that would criminalize the typical acts of "particularly well-connected and effective lobbyists." *Percoco*, 598 U.S. at 331; *see also Ciminelli*, 598 U.S. at 316 (rejecting the government's overbroad theory of wire fraud because it would permit "federal prosecutors . . . to set standards of disclosure and good government for state and local officials").

The government's sweeping theory erases the clear line between everyday campaign contributions and felony corruption. After all, if twelve jurors can infer an explicit agreement from ambiguous statements and conduct, then every conversation between a donor and an elected official opens the door to prosecution. That interpretation of the federal bribery laws would chill contributions "long been thought to be well within the law"—*the* core concern in *McCormick*. 500

U.S. at 272. And it would also "deter the type of open exchange and constituent service that courts have long recognized to be essential to democracy," as state lawmakers explained in a case before the Second Circuit. Brief of *Amicus Curiae* in Support of Appellee at 5, *United States v. Benjamin*, No. 22-3091 (2d Cir. March 24, 2023), Dkt. 57.

In so many words, and as all seem to agree, the government's position here would cast a pall of prosecution over every official at every level of government who "act[s] for the benefit of constituents or support legislation furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries." *McCormick*, 500 U.S. at 272. For the last thirty years—without exception—when prosecutors have pressed theories that create similar results, the Supreme Court has vacated the conviction. To be sure, perhaps the government bucks that trend here—but at the least, whether it has found the first broad reading of the corruption laws in a generation to survive such scrutiny is a "close" call.

\* \* \*

In sum, the government's theory of guilt presents a substantial question over which reasonable jurists could disagree. The government's novel theory has never been affirmed by any other federal court; and where it has been addressed, it has been rejected. That is sufficient for this Court to find the first issue here "close," thus warranting release. All the more so given the stakes here, and the repercussions for ordinary politics that the government's position portends. Mr. Sittenfeld will raise all of these points in his appeal. And in light of the above, it is inescapable that the Sixth Circuit will face—at the very least—a "close" question in resolving them.

### B.      Mr. Sittenfeld Will Raise a Substantial Question Under the Fifth Amendment.

Mr. Sittenfeld's appeal will also raise a substantial question under the Fifth Amendment. As the Court is aware, the charging language in Mr. Sittenfeld's indictment alleged that he corruptly solicited payments "to wit . . . from UCE-1" (Rob). The government nonetheless asserted

in its closing argument that the jury could convict him based on his purported solicitation of *Mr. Ndukwe* on October 30, 2018.  The Court deemed the government's assertion to be consistent with the indictment, but recognized in doing so that this issue presented "one of the closer calls in this case."  Order at 15.  That "close call" presents a "close" question on appeal, and that is enough to warrant release pending appeal.

### 1. There Is a Substantial Question Whether the Government Was Required to Prove a Bribe Involving Rob.

To start, the Sixth Circuit may well hold that the "to wit" clause in Mr. Sittenfeld's indictment is definitional and not merely "illustrative."  Op. at 15.  The plain meaning of "to wit" is "namely" or "[t]hat is to say."  *To Wit*, Black's Law Dictionary (11th ed. 2019); *see also To Wit*, Oxford English Dictionary (3d ed. 2020) ("that is, namely").  This strongly suggests that the "to wit" clause in Mr. Sittenfeld's indictment serves to *specify* the charged offense, not merely *illustrate* the potential evidence at trial.  The Sixth Circuit has previously read an indictment's "to wit" clause in this way, as have most other circuits that have faced the question.

Mr. Sittenfeld has (at minimum) a reasonable prospect of showing that Sixth Circuit precedent *itself* requires treating "to wit" clauses as definitional.  In *United States* v. *Cusmano*, the Sixth Circuit held that an indictment for Hobbs Act extortion, "to-wit: by threats of economic loss," forbade the government from proving extortion by physical threats.  659 F.2d at 715, 719.  The Circuit began its analysis by reproducing the indictment's charging language in full, including its "to wit" clause.  *See id.* at 715.  The Circuit then deemed it "clear that the indictment allege[d] only one means of extortion: threats of economic loss."  *Id.*  That conclusion necessarily depended on the indictment's "to wit" clause, as that clause was the only part of the charging language to concern "threats of economic loss."  *Id.*  And that conclusion was necessary to the court's holding that the "events at [the defendant's] trial effectively altered the charging terms of the indictment,

11

thus destroying his right to be tried only on the charges set forth in the indictment." *Id.* at 719. *Cusmano* thus held that prosecutors may not depart from the specific charges in "to wit" clauses.

*Cusmano* is the law of the Circuit "unless overruled or abrogated en banc or by the Supreme Court." *Freed v. Thomas*, 976 F.3d 729, 738 (6th Cir. 2020). Even assuming this Court was right that some "[n]ewer decisions" *in other circuits* have read "to wit" clauses differently, Op. at 15, neither this Court nor the government identified any Supreme Court or en banc authority establishing that *Cusmano* no longer controls.

The Sixth Circuit's decision in *United States v. Bradley* does not, as this Court suggested, support a different result—and at minimum, does not foreclose the "closeness" of the issue on appeal. 917 F.3d 493 (6th Cir. 2019); *see* Op. at 15. Unlike in this case, the indictment in *Bradley* neither limited nor specified the exact charges against the defendant. *See* Superseding Indictment, *United States v. Bradley*, No. 14-cr-20216 (E.D. Mich. Apr. 23, 2014), Dkt. 22. Rather, the indictment simply charged a conspiracy and alleged several overt acts "in furtherance of" that conspiracy. *See id.* The Sixth Circuit held that such an open-ended charge did not bar the government from proving a conspiracy through other overt acts, as the "proof offered at trial" may ordinarily go "beyond conduct alleged in the indictment." *Bradley*, 917 F.3d at 502. The Circuit also relied (*see id.*) on two cases that found the lack of limiting language in other conspiracy counts to support the same conclusion. *See United States v. Hynes*, 467 F.3d 951, 963 (6th Cir. 2006) (emphasizing that an indictment "neither stated nor implied that [its] overt acts . . . comprised an exhaustive list"); *United States v. Rashid*, 274 F.3d 407, 414 (6th Cir. 2001) (emphasizing that the charged overt acts included the phrase "not limited to"). *Bradley* thus arguably has no application here, where Mr. Sittenfeld's indictment *does* limit his charge to a bribe involving UCE-1.

Regardless, even if *Cusmano* were not dispositive, Mr. Sittenfeld would still raise a close question, because most circuits facing the issue have read "to wit" clauses as definitional. As this Court recognized, several "appeals courts" outside this Circuit "have vacated cases based on constructive amendments of 'to wit' clauses." Op. at 15; *see* Reply in Supp. of Def.'s Mot. for a New Trial at 5, Dkt. 279 (discussing those cases). Although the Court expressed concern that the cases it noted "are almost thirty years old," *id.*, no developments in the law have made them bad authority. To the contrary, it remains the "settled" rule that where "an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with those particulars." *United States v. Farr*, 536 F.3d 1174, 1181 (10th Cir. 2008) (Gorsuch, J.) (internal quotation marks and brackets omitted). Further, more recent decisions have continued to find constructive amendments by reading "to wit" clauses as definitional. *See, e.g.*, *United States v. Davis*, 854 F.3d 601, 604–05 (9th Cir. 2017); *United States v. Choi*, 408 F.3d 237, 241–47 (5th Cir. 2005); *United States v. Choy*, 309 F.3d 602, 607 (9th Cir. 2002). The Second Circuit's contrary view, *see* Op. at 15, is an outlier and cannot on its own render Mr. Sittenfeld's ground for appeal insubstantial.

In light of the above, it is plain that a reasonable jurist could hold that the "to wit" clauses in Mr. Sittenfeld's indictment "[made] what follows an essential part of the charged offense[s]." *United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir. 1994). There is thus a substantial question whether the government was required to prove a bribe involving Rob, rather than Mr. Ndukwe.

### 2. It Is a Close Question Whether The Government Could Sustain Its Convictions on a Conduit Theory.

The Court separately denied Mr. Sittenfeld's motion on the ground that his exchange with Mr. Ndukwe on October 30, 2018 ("love you, but can't") could be understood as soliciting a bribe from Rob. *See* Op. at 15–16. The Court reasoned that Mr. Sittenfeld could have viewed Mr.

13

Ndukwe as a conduit to Rob, such that requesting a bribe from the former was really requesting one from the latter. Because the government did not raise this argument until the motions hearing on December 5, 2022, this filing is Mr. Sittenfeld's first opportunity to address it in writing. The argument fails for three independent reasons—and by no means renders the issue here not "close."

*First*, the conduit theory is inconsistent with the indictment. The body of Mr. Sittenfeld's indictment consistently distinguishes between "CW" (Mr. Ndukwe) and "UCE-1" (Rob). *See* Indictment, Dkt. 3. It also alleges that Mr. Sittenfeld used the "love you, but can't" statement as an effort to get "*CW* to support him financially," with no mention of UCE-1. *Id.* ¶ 13 (emphasis added). The indictment's charging language then specifies different bribery victims with respect to different counts. In particular, whereas counts 5 and 6 charge payments "from [multiple] UCEs," *id.* ¶¶ 46, 48, counts 3 and 4 charge payments solely "from UCE-1," *id.* ¶¶ 42, 44. That varied language expressly ties specific counts to specific bribery victims—none of them "CW." In that context, the charge of soliciting a bribe "from UCE-1" cannot be reasonably read to encompass the "love you, but can't" remark to "CW." *See United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (noting "the indictment must be read as a whole").

*Second*, the conduit theory was never submitted to the jury. In "parsing of the language of an indictment" after a defendant's trial, courts must consider "what charges actually were lodged against him, tried, and submitted to the jury." *Allen v. United States*, 867 F.2d 969, 972 (6th Cir. 1989). This review is important because the courts may not sustain a conviction on "legal and factual grounds that were never submitted to the jury." *McCormick*, 500 U.S. at 269. Instead, the courts may consider only those legal theories on which the prosecution "built its case," *Dunn v. United States*, 442 U.S. 100, 107 (1979), and that were "presented in a focused or otherwise

cognizable sense," *Cola v. Reardon*, 787 F.2d 681, 693 (1st Cir. 1986). Otherwise, the Court would "assume … the function … of a jury." *Ciminelli*, 598 U.S. at 317.

Here, the trial transcripts make clear that the government never once argued that the "love you, but can't" comment was a solicitation of *Rob*. Instead, the government and its witnesses presented that comment as a straightforward solicitation of *Mr. Ndukwe*:

- The government argued in its opening statement that Mr. Sittenfeld "told Chin that Chin needed to financially support him." Dkt. 262 at 39, PageID#5457. The government did not argue that this "financial[] support" was to come from Rob. *See id.*

- Agent Holbrook testified that he understood the "love you, but can't" statement to "mean that Mr. Sittenfeld was trying to raise funds from Mr. Ndukwe." Dkt. 265 at 83, PageID#6010. Agent Holbrook continued, "[Mr. Sittenfeld] wanted Mr. Ndukwe to provide multiple LLC checks before the Issue 13 was voted on." *Id.* at 84, PageID #6011.

- Mr. Ndukwe testified that he viewed "love you, but can't" to mean that "[he] needed to go out and get people to put money into LLCs." Dkt. 266 at 64, PageID#6247. He did not identify these "people" to include the UCEs. *See id.*

- The government argued in its closing statement that "love you, but can't" solicited funds from Mr. Ndukwe. *See* Dkt. 251, at 63, PageID#5003 ("The implication is clear and confirmed by Ndukwe. Support him, that's what he wants; but don't support him, love you but can't."). The government did not argue that this "[s]upport" would come from Rob. *See id.*

Accordingly, because the government never argued that "love you, but can't" solicited Rob, it cannot rely on that theory to sustain its conviction. *See McCormick*, 500 U.S. at 269; *Dunn*, 442 U.S. at 107; *Cola*, 787 F.2d at 693.

This Court reached a contrary conclusion because it deemed Rob and Mr. Ndukwe to be "the same when it came to the real estate development project." Op. at 16. The Court is correct that the government presented Mr. Ndukwe as a conduit to Rob in certain contexts, beginning with the phone call on November 2, 2018. *See* Dkt. 269 at 146, PageID#6782 (identifying that call as "Ndukwe delivering a message on behalf of Rob"). Rob also presented himself as intertwined with Mr. Ndukwe on November 7. *See* Gov't Ex. 13B at 38 (stating "Chin wants to get that

development agreement"). But here, the government told the jury it could prove its case through the "love you, but can't" comment *on October 30*. To sustain its conduit theory, the government would thus need to show that Mr. Sittenfeld "underst[ood]" *on October 30*—before these interactions—that "soliciting from Ndukwe [to be] indistinguishable from soliciting from Rob." Op. at 16. The government never made *that* argument. The government cannot prove Mr. Sittenfeld's "understanding" (*id.*) in *October* based on information he learned in *November*.

At minimum, the government's and its witnesses' statements that "love you, but can't" solicited Ndukwe directly make it *possible* that the jury convicted on that uncharged theory. Because "it cannot be said *with certainty*" that Mr. Sittenfeld was convicted "solely on the charge made in the indictment," as opposed to a "new basis for conviction," Mr. Sittenfeld's convictions at least arguably must be reversed. *United States v. Stirone*, 361 U.S. 212, 217 (emphasis added); *United States v. Miller*, 471 U.S. 130, 138 (1985); *United States v. Sosa-Baladron*, 800 F. App'x 313, 320 (6th Cir. 2020).

*Third*, regardless of the arguments made at trial, no rational juror could find that Mr. Sittenfeld saw Mr. Ndukwe as a conduit to Rob on October 30, 2018—the time of the supposed solicitation. At that time, Mr. Sittenfeld had only met Rob once (in February 2018), and Mr. Ndukwe was not involved with that meeting. *See* Dkt. 263 at 52–53, # 5697–98. Mr. Ndukwe had mentioned the UCEs to Mr. Sittenfeld on just one prior occasion (October 26, 2018), where he said only that the UCEs (a) support the 435 Elm Project, (b) have multiple LLCs, and (c) could meet with Mr. Sittenfeld in the coming weeks. *See* Gov't Ex. 12B at 2–3. Mr. Ndukwe mentioned Rob only briefly on October 30, 2018, to say that Rob was available on two days in November. *See* Gov't Ex. 13B at 1, 3. He spent most of that phone call discussing potential donations from his "friends up in Columbus." *Id.* at 2. (As the Court is aware, Rob was presented

16

as being from out of state—*not* Columbus—and thus Rob could not be understood to fall within the reference to "friends up in Columbus." Dkt. 269 at 101.) Mr. Sittenfeld specifically mentioned those "friends up in Columbus" in the same breath as his much-discussed comment, "love you, but can't." *Id.* at 2–3. Then, Mr. Sittenfeld followed up to ask whether the "Columbus people" could "round up five LLCs before next Tuesday." *Id.* at 3. Putting aside whether a rational juror could view "love you, but can't" as soliciting either Mr. Ndukwe or the "Columbus people," the comment obviously did not solicit *Rob*.[3]

### C. Both Appellate Issues Independently Control the Validity of the Convictions.

Each of the substantial questions discussed above independently satisfies the second element of § 3143(b). "[O]n the assumption that the substantial question of law or fact 'is determined favorably to defendant on appeal,'" neither of these errors is remotely "harmless." *Zimny*, 857 F.3d at 100–01. First, if the Court of Appeals agrees that the government failed to introduce sufficient evidence of an explicit agreement, Mr. Sittenfeld would be legally innocent on all counts. Similarly, if the Court of Appeals agrees that the government constructively amended the indictment, Mr. Sittenfeld would be entitled to a new trial on both remaining counts. *See United States v. Ford*, 872 F.2d 1231, 1237 (6th Cir. 1989). Those circumstances clearly satisfy the requirement that the "substantial issues" be material, within the meaning of § 3143(b)(B).

*                *                *

---

[3] The phrase "Columbus people" cannot be understood to describe Rob and Brian. Mr. Ndukwe never identified the UCEs as hailing from Columbus. Moreover, Mr. Ndukwe agreed to "work on" bundling donations from the "Columbus people" "before next Tuesday" (November 6, 2018), Gov't Ex. 13B at 3—a date that preceded Mr. Sittenfeld's first meeting with Rob and Brian (November 7, 2018). Finally, Mr. Ndukwe began to discuss the "Columbus people" only after Mr. Sittenfeld noted that he could not meet Rob until after "the deadline" for a change in Cincinnati's campaign finance laws. *Id.* at 2. This context makes clear that Rob was not one of the "Columbus people."

The question before the Court is not whether any of its rulings were wrong, but whether reasonable jurists could reach a different conclusion. There is an easy answer, as reasonable jurists *have* reached different conclusions in similar campaign contribution cases (*Benjamin*, *Menendez*, *Inzunza*), as well as with similar constructive amendments (*Cusmano*, *Ford*, *Miller*). Mr. Sittenfeld will accordingly present substantial issues on appeal, and § 3143(b) thus entitles him to assist with the preparation of that appeal under his current conditions of release.

## II.    MR. SITTENFELD PRESENTS NO FLIGHT RISK OR DANGER TO THE PUBLIC.

The other prong under § 3143(b) is indisputably satisfied. Mr. Sittenfeld has been free for over a year following his convictions without incident, is a married father of two with no criminal history, and obviously has no propensity toward violence or crime. He has participated fully in pre-trial, trial, and post-trial proceedings. As the pre-sentence report reflects, there is no risk that Mr. Sittenfeld will commit further crimes, and he is committed to vindicating himself, restoring his reputation, and living the rest of his life as a model citizen. He plainly "is not likely to flee or pose a danger to the safety of any other person or the community if released," 18 U.S.C. § 1343(b)(1)(A), and is accordingly entitled to continued release.

## CONCLUSION

Should this Court sentence Mr. Sittenfeld to a custodial sentence, it should grant him continued release pending appeal, subject to the same conditions that have been in place for nearly three years.

                                         Respectfully submitted,

Yaakov M. Roth                           yroth@jonesday.com
Harry S. Graver
Jones Day
51 Louisiana Ave. N.W.
Washington, DC 20001
(202) 879-7658

Justin E. Herdman
Jones Day
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-7113
jherdman@jonesday.com

Alexander V. Maugeri
Jones Day
250 Vesey St.
New York, NY 10281
(202) 326-3939
amaugeri@jonesday.com

*/s/ Neal D. Schuett*
Charles H. Rittgers
Charles M. Rittgers

Neal D. Schuett
Gus J. Lazares
Rittgers & Rittgers
12 East Warren Street
Lebanon, OH 45036
 (513) 932-2115
neal@rittgers.com

James M. Burnham
King Street Legal, PLLC
800 Connecticut Ave., NW
Suite 300
Washington, DC 20006
(602) 501-5469
james@kingstlegal.com

*Counsel for the Defendant*

1

## **CERTIFICATE OF SERVICE**

I, Neal D. Schuett, hereby certify that on this date I electronically filed the foregoing document with the CM/ECF system, which accomplishes service upon all parties to this action. The foregoing document is available for viewing and downloading from the ECF system.

October 3, 2023

_/s/ Neal D. Schuett_